THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL, | ) ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| COALITION OF AMERICAN CHASSIS MANUFACTURERS, | ) ) Court No. 24-00030 ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

**RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("USCIT"), Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal ("Plaintiff" or "Pitts") hereby submits this Motion for Judgment on the Agency Record in this action. This action challenges the U.S. Department of Commerce's ("Commerce") scope determination in an unpublished decision memorandum, Memorandum, from Dusten Hom, Int'l Trade Compliance Analyst, Off. I, AD/CVD Operations, to James Maeder, Deputy Assistant Secretary for AD/CVD Operations, Subject: Chassis and Subassemblies from the People's Republic of China: Final Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle and Landing Gear Components (Jan. 10, 2024), ("*Final Scope Ruling*"), that Plaintiff's imported chassis from Vietnam containing Chinese-origin component axles and landing gear leg components, are covered by the scope of the companion antidumping duty ("AD") and countervailing duty ("CVD") orders on certain

1

chassis and subassemblies thereof from China. Appx2623-2636.

For the reasons set forth in the accompanying Brief in Support of Plaintiff's Rule 56.2 Motion for Judgement on the Agency Record, Commerce's scope ruling finding that Pitts' imported chassis from Vietnam containing Chinese-origin axle and landing gear leg components constitutes an unlawful expansion of the scope of the AD and CVD orders, is not supported by substantial evidence on the record, and is otherwise not in accordance with law. Moreover, Commerce's imposition of AD and CVD retroactively, and imposed on the chassis in their entirety is unsupported by substantial evidence and otherwise not in accordance with law.

Pitts respectfully requests that this Court enter an order (1) holding that Commerce's *Final Scope Ruling* constitutes an unlawful expansion of the scope of the underlying AD and CVD orders (2) remanding the *Final Scope Ruling* with instructions for Commerce to render a redetermination consistent with the Court's opinion, (3) and granting such other relief as this Court may deem just and proper. A proposed order accompanies this motion.

Respectfully submitted,


/s/ Emily Lawson
Emily Lawson
Edmund W. Sim

APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.*
*dba Dorsey Intermodal*

Dated: August 21, 2024

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| COALITION OF AMERICAN CHASSIS MANUFACTURERS, | ) ) ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Court No. 24-00030

## PLAINTIFF'S BRIEF IN SUPPORT OF
## RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Emily Lawson
Edmund W. Sim

APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.
dba Dorsey Intermodal*

Dated: August 21, 2024

# TABLE OF CONTENTS

**Page**

I.   RULE 56.2 STATEMENT .................................................................................. 1

     A.   Administrative Determination Under Review ....................................... 1

     B.   Issues of Law Presented...................................................................... 1

     C.   Statement of Reasons for Vacating Commerce's Scope Determination ................ 2

II.  STATEMENT OF FACTS ............................................................................... 2

     A.   The Initial AD and CVD Investigations and Orders................................ 2

     B.   Pitts' Imported Vietnamese Chassis and Commerce's Scope Ruling ................... 6

III. SUMMARY OF ARGUMENT ...................................................................... 10

IV.  ARGUMENT.................................................................................................. 14

     A.   Standard of Review............................................................................. 14

     B.   Legal Framework for Scope Order Determinations................................ 15

     C.   Commerce Impermissibly Defines Unfinished Chassis and Expands the Scope of
          the *Orders* Contrary to Law .............................................................. 18

          1.   Commerce Did Not Interpret the Scope Language "Unassembled
               Subassemblies" But Altered the Scope *Orders* Contrary to Law ............. 20

          2.   Commerce's Own Regulation and Court Precedent Require Commerce
               Consider the Scope Language Including Merchandise Excluded from the
               Scope...................................................................................... 24

     D.   Commerce Did Not Conduct a Lawful (k)(1) Scope Determination ................... 27

     E.   Scope Interpretative Sources Confirm the Vietnamese Chassis at Issue Are
          Outside the Scope of the *Orders* ........................................................ 28

     F.   Commerce's Plain Language Scope Determination Applies the Wrong Legal
          Analytical Framework, is Contrary to Law and Unsupported............................ 32

i

1.    Commerce's Scope Ruling on Finished Chassis from Vietnam Impermissibly Finds Merchandise Outside the *Orders* Subject Merchandise ............................................................................. 33

2.    Commerce's Scope Ruling Finding the Finished Chassis from Vietnam are Subject Merchandise Is Contrary to Commerce's Own Regulation and Unsupported By Substantial Evidence...................................................... 36

G.    Commerce's Scope Ruling is Impermissibly Imposed Retroactively.................. 40

H.    Commerce's Scope Ruling Impermissibly Imposed AD and CVD on Non-Subject Country Subassemblies ........................................................................... 44

V.    CONCLUSION.............................................................................................. 45

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alsthom Atlantique, et al. v. United States,*
    787 F.2d 565 (Fed. Cir. 1986)............................................................................... 19

*AMS Associates, Inc. v. United States,*
    737 F. 3d 1338 (Fed. Cir. 2013)........................................................................... 37

*ArcelorMittal Stainless Belgium N.V. v. United States,*
    694 F.3d 82 (Fed. Cir. 2012) ............................................................................... 40

*Bell Supply Company, LLC* v. *United States,*
    888 F.3d 1222 (Fed. Cir. 2018)................................................................. 34, 36, 37

*Consolidated Edison Co. v. NLRB,*
    305 U.S. 197 (1938)............................................................................................. 15

*Dorbest Ltd. v. United States,*
    755 F. Supp. 2d 1291 (Ct. Int'l Trade 201) ........................................................ 26

*Duferco Steel, Inc. v. United States,*
    296 F.3d 1087 (Fed Cir. 2002) ................................................................. 15, 19, 28

*Eckstrom Indus., Inc. v. United States,*
    254 F.3d 1068 (Fed. Cir. 2001)................................................................... 22, 27

*Ericsson GE Mobile Communications, Inc. v. United States,*
    60 F.3d 778 (Fed. Cir. 1995)............................................................................... 21

*Gallant Ocean (Thailand) Co. v. United States,*
    602 F.3d 1319 (Fed. Cir. 2010)........................................................................... 15

*Global Commodity Group LLC v. United States,*
    709 F.3d 1134 (Fed. Cir. 2013) ................................................................. 14, 16, 44

*Gold East Paper (Jiangsu) Co. v. United States,*
    991 F. Supp.2d 1357 (Ct. Int'l Trade 2014) ....................................................... 26

*King Supply Co. v. United States*,
    674 F.3d 1343 (Fed. Cir. 2012) ........................................................................... 32

*Lengerich v. Dep't of Interior*,
    454 F.3d 1367 (Fed. Cir. 2006).............................................................................. 22

*Litton Systems, Inc. v. Honeywell, Inc.*,
    87 F.3d 1559 (Fed. Cir. 1996) .............................................................................. 14

*Meridian Products, LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) ...................................................................... 15, 18

*Mid Continent Nail Corp. v. United States*,
    770 F. Supp. 2d 1372 (Ct. Int'l Trade 2011) ........................................................ 32

*Mitsubishi Polyester Film, Inc. v. United States*,
    228 F. Supp. 3d 1359 (Ct. Int'l Trade 2017) ........................................................ 32

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).................................................................................................. 38

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ............................................................................ 15

*NLRB v. Federbush Co.*,
    121 F.2d 954 (2d Cir. 1941) ................................................................................. 22

*NSK Ltd. v. United States*,
    910 F. Supp. 663 (Ct. Int'l Trade 1995) ............................................................... 26

*OMG Inc. v. United States*,
    321 F. Supp. 3d 1262 (Ct. Int'l Trade 2018) ........................................................ 18

*OMG Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) ...................................................... 18, 23, 28, 40

*Peer Bearing Co.-Changshan v. United States*,
    986 F. Supp.2d 1389 (Ct. Int'l Trade 2014) ........................................................ 33

*Saha Thai Steel Pipe Public Company Limited v. United States*,
    101 F. 4th 1310 (Fed. Cir. 2024) .......................................................................... 24

*Sango Int'l L.P. v. United States*,
    484 F.3d 1371 (Fed. Cir. 2007)............................................................................. 14

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016) ........................................................ 22, 24, 27, 38

*SMA Surfaces, Inc. v. United States*,
   617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) .................................................... 18, 22

*Smith Corona Corp. v. United States*,
   915 F.2d 683 (Fed. Cir. 1990) ...................................................................................... 24

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
   983 F.3d 487 (Fed. Cir. 2020) ...................................................................................... 41

*Timken Co. v. United States*,
   913 F. Supp. 580 (Ct. Int'l Trade 1996) ................................................................... 17

*Trade Association Group Ltd. v. United States*,
   961 F. Supp. 2d 1306 (Ct. Int'l Trade 2014) ......................................................... 27

*Trans Texas Tire, LLC v. United States*,
   519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ..................................................... 40, 41

*Trans Texas Tire, LLC v. United* States,
   519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021) ..................................................... 40, 41

*Trans Texas Tire, LLC v. United States*,
   545 F. Supp. 3d 1374 (Ct. Int'l Trade 2021) ......................................................... 40

*Trans Texas Tire, LLC v. United States*,
   545 F. Supp. 3d 1378 (Ct. Int'l Trade 2021) ......................................................... 40

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ......................................................................................................... 27

*Ugine & ALZ Belg., N.V. v. United States*,
   517 F. Supp. 2d 1333 (Ct. Int'l Trade 2007) ..................................................... 16, 25

*U.K. Carbon and Graphic Co. Ltd. v. United States*,
   931 F. Supp.2d 1322 (Ct. Int'l Trade 2014) ........................................................... 35

*United States Steel Corp. v. United States*,
   97 F.4th 1364 (Fed. Cir. 2024) .................................................................................... 32

*United States v. Wanxiang American Corp.*,
   654 F. Supp.3d 1279 (Ct. Int'l Trade 2023) ........................................................... 40

*United Steel and Fasteners, Inc. v. United States,*
    947 F.3d 794 (Fed. Cir. 2020) ..................................................................... 43

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) .................................................................................... 15

*Wheatland Tube Co. v. United States,*
    973 F. Supp. 149 (Ct. Int'l Trade 1997) ..................................................... 17

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998) ................................................................. 17

*Whirlpool Corp. v. United States,*
    890 F.3d 1302 (Fed. Cir. 2018) .......................................................... 14, 15

## STATUTES

19 U.S.C. § 1516a(a)(2)(A)(ii) ........................................................................ 14

19 U.S.C. § 1516a(a)(2)(B)(vi) ................................................................. 14, 18

19 U.S.C. § 1516a(b)(1)(B) ............................................................................ 14

19 U.S.C. § 1516a(b)(1)(B)(i) .................................................................. 15, 32

19 U.S.C. § 1517 ............................................................................................... 6

19 U.S.C. § 1671 ................................................................................. 17, 25, 44

19 U.S.C. § 1671(a)(1) ............................................................................. 16, 33

19 U.S.C. § 1671(a)(2) ................................................................................... 17

19 U.S.C. § 1671a(b) ..................................................................................... 16

19 U.S.C. § 1671d(c) ..................................................................................... 17

19 U.S.C. § 1671e ........................................................................................... 17

19 U.S.C. § 1673 ................................................................................. 17, 25, 44

19 U.S.C. § 1673(1) ................................................................................. 16, 33

19 U.S.C. § 1673(2) ....................................................................................... 17

19 U.S.C. § 1673a(b) ................................................................................................ 16

19 U.S.C.§ 1673d(c) ................................................................................................ 17

19 U.S.C. § 1673e .................................................................................................... 17

19 U.S.C. § 1677(25) ............................................................................................... 16

19 U.S.C.§ 1677j ................................................................................................ 33, 36

19 U.S.C. § 1677j(b) ............................................................................. 17, 18, 33, 34

19 U.S.C. § 1677j(b)(1)(A) ...................................................................................... 33

19 U.S.C. § 1677j(b)(1)(B) ...................................................................................... 33

19 U.S.C. § 1677j(b)(1)(C) ................................................................................. 33, 35

19 U.S.C. § 1677j(b)(1)(D) ...................................................................................... 33

19 U.S.C. § 1677j(b)(1)(E) ...................................................................................... 33

19 U.S.C. § 1677j(b)(2)(A) ...................................................................................... 35

19 U.S.C. § 1677j(b)(2)(B) ...................................................................................... 35

19 U.S.C. § 1677j(b)(2)(C) ...................................................................................... 35

19 U.S.C. § 1677j(b)(2)(D) ...................................................................................... 35

19 U.S.C. § 1677j(b)(2)(E) ...................................................................................... 35

19 U.S.C. § 1677j(b)(3) ........................................................................................... 35

19 U.S.C. § 1677j(e) ................................................................................................ 34

**REGULATIONS**

19 C.F.R. § 159.1 .................................................................................................... 41

19 C.F.R. § 351.202(b)(5) .................................................................................... 4, 16

19 C.F.R. § 351.202(b)(6) .................................................................................... 4, 16

19 C.F.R. § 351.225 ................................................................................................... 8

19 C.F.R. § 351.225(e)(1) ........................................................................................ 8

19 C.F.R. § 351.225(e)(2)(i) ..................................................................................... 8

19 C.F.R. § 351.225(j) ............................................................................... 17, 36, 40

19 C.F.R. § 351.225(j)(1) ....................................................................................... 18

19 C.F.R. § 351.225(j)(1)(i) ................................................................................... 37

19 C.F.R. § 351.225(j)(1)(ii) .................................................................................. 37

19 C.F.R. § 351.225(j)(1)(iii) ................................................................................. 37

19 C.F.R. § 351.225(j)(1)(iv) ................................................................................. 37

19 C.F.R. § 351.225(j)(1)(v) .................................................................................. 37

19 C.F.R. § 351.225(j)(1)(vi) ................................................................................. 37

19 C.F.R. § 351.225(k) ........................................................................................... 18

19 C.F.R. § 351.225(k)(1) ........................................................................... 18, 24, 28

19 C.F.R. § 351.225(k)(1)(i) ............................................................................. 20, 28

19 C.F.R. § 351.225(k)(1)(i)(A) ............................................................................. 28

19 C.F.R. § 351.225(k)(1)(i)(B) ............................................................................. 28

19 C.F.R. § 351.225(k)(1)(i)(C) ............................................................................. 28

19 C.F.R. § 351.225(k)(1)(i)(D) ............................................................................. 28

19 C.F.R. § 351.225(k)(1)(ii) ........................................................................... 20, 23

19 C.F.R. § 351.225(k)(2) ....................................................................................... 18

19 C.F.R. § 351.225(l)(2) & (3) (2020) .................................................................. 43

19 C.F.R. § 351.225(l)(2)(iii)(B) ................................................................... 9, 42, 43

19 C.F.R. § 351.225(l)(3)(iii)(B) ..................................................................... 42, 43

19 C.F.R. § 351.226 ................................................................................................ 17

19 C.F.R. § 351.226(i) ..................................................................... 33

19 C.F.R. § 351.226(l)(2)(ii) ........................................................... 34

## ADMINSTRATIVE DETERMINATIONS

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
    *Antidumping Duty Order*,
    86 Fed. Reg. 36093 (Dep't of Commerce Jul. 8, 2021) .................................................. passim

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
    *Countervailing Duty Order and Amended Final Affirmative*
    *Countervailing Duty Determination*,
    86 Fed. Reg. 24844 (Dep't of Commerce May 10, 2021) ............................................... passim

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
    *Final Affirmative Determination of Sales at Less Than Fair Value*,
    86 Fed. Reg. 26694 (Dep't of Commerce May 17, 2021) ........................................................ 6

Memorandum, from Dusten Hom, Int'l Trade Compliance Analyst, Off. I, AD/CVD Operations,
    to James Maeder, Deputy Assistant Secretary for AD/CVD Operations, Subject: Chassis and
    Subassemblies from the People's Republic of China: Final Scope Ruling on Pitts Enterprises,
    Inc. dba Dorsey Intermodal's Axle and Landing Gear Components (Jan. 10, 2024) ........ passim

## OTHER AUTHORITIES

*Antidumping Duties; Countervailing Duties: Final Rule*,
    62 Fed. Reg. 27296, 27328 (Dep't of Commerce May 19, 1997) .......................................... 42

Conference Report accompanying the Omnibus Trade and Competitiveness Act of 1988, Pub. L.
    No. 100-418, 102 Stat. 1107 (1988) ......................................................................... 34

*Regulations To Improve Administration and Enforcement of*
    *Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20, 2021) ...................................... 8, 9, 34, 43

*Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the*
    *Administration of the Antidumping and Countervailing Duty Laws*,
    89 Fed. Reg. 20766, (Dep't of Commerce Mar. 25, 2024) ...................................................... 34

Rule 56.2(c) of the Rules of the U.S. Court of International Trade ................................................ 1

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R.Rep. No. 103-316 893 (1994), *reprinted in* 1994 U.S.C.C.A.N ...................................... 35

## PLAINTIFF'S BRIEF IN SUPPORT OF
## RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal ("Plaintiff" or "Pitts"), by and

through its attorneys, hereby submits the following brief in accordance with Rule 56.2(c) of the

Rules of the U.S. Court of International Trade.

## I.    RULE 56.2 STATEMENT

### A.    Administrative Determination Under Review

Plaintiff, Pitts, challenges the U.S. Department of Commerce ("Commerce")

determination in an unpublished decision memorandum, Memorandum, from Dusten Hom, Int'l

Trade Compliance Analyst, Off. I, AD/CVD Operations, to James Maeder, Deputy Assistant

Secretary for AD/CVD Operations, Subject: Chassis and Subassemblies from the People's

Republic of China: Final Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle

and Landing Gear Components (Jan. 10, 2024), ("*Final Scope Ruling*"), that Plaintiff's finished

chassis imported from Vietnam manufactured from raw materials, components and parts from

Vietnam and imported in Vietnam, including Chinese-origin individual component axles and

landing gear leg components, are covered by the scope of the companion antidumping duty

("AD") and countervailing duty ("CVD") orders on certain chassis and subassemblies thereof

from China (collectively referred to as the "*Orders*"). Appx2623-2636.[1]

### B.    Issues of Law Presented

1.    Whether Commerce's plain language final scope determination is
otherwise not in accordance with law because it defines the term
"unassembled subassembly" and thereby "unfinished chassis" contrary to
the plain scope language and does not clarify but alters, and thus, expands
the scope of the *Orders*.

---

[1] Per *Joint Appendix Preparation in § 1581(c) Cases Assigned to Judge Vaden*, all record
citations are to Bates-numbered appendix pages.

2.     Whether Commerce's plain language final scope determination is otherwise not in accordance with law because Commerce fails to give explicit scope exclusion language for "individual components" meaning and expands the scope *Orders*.

3.     Whether Commerce made a lawful (k)(1) plain language analysis of the scope where Commerce ruled (k)(1)(i) factors were not necessary to support its ruling but relied upon (k)(1)(i) factors as basis for the scope determination.

4.     Whether Commerce's final scope determination is unsupported by substantial evidence and is otherwise not in accordance with law because it is directly contrary to the description of subject merchandise set forth in scope interpretative sources, including the petition, initial investigation documents, other proceedings conducted by Commerce, and Petitioner intent.

5.     Whether Commerce's final scope determination is unsupported by substantial evidence and otherwise not in accordance with law because it failed to follow the legal analytical framework to bring Vietnamese finished chassis imported in the United States within the scope and expanded the existing *Orders*.

6.     Whether Commerce's imposition of retroactive AD and CVD on the finished chassis merchandise is impermissible error for failure to provide adequate notice, and consideration of the significant impact on the business of U.S. importers.

7.     Whether Commerce's imposition of AD and CVD on finished chassis imported in their entirety is not in accordance with law because the final scope determination does not account for non-scope country components and components and subassemblies produced in Vietnam.

**C.     Statement of Reasons for Vacating Commerce's Scope Determination**

The Commerce *Final Scope Ruling* should be vacated because it is not in accordance with law and is not supported by substantial evidence. The reasons are set forth below.

**II.     STATEMENT OF FACTS**

**A.     The Initial AD and CVD Investigations and Orders**

Certain AD and CVD orders cover chassis and subassemblies thereof from China. *See Certain Chassis and Subassemblies Thereof From the People's Republic of China: Antidumping*

2

*Duty Order*, 86 Fed. Reg. 36093 (Dep't of Commerce Jul. 8, 2021) ("*AD Order*") and *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 24844 (Dep't of Commerce May 10, 2021) ("*CVD Order*") (collectively "*Orders*"). The scope of the companion *Orders* is identical.

Plaintiff is a worker-owned U.S. manufacturer of chassis and member of the Coalition of American Chassis Manufacturers (the "Coalition" or "Petitioner"), the plaintiff-intervenor, and the association of U.S. chassis producers that submitted the AD and CVD investigation petitions to Commerce and the International Trade Commission ("ITC"). *See id*.

Plaintiff was also an importer of chassis from a non-subject source country, Vietnam. Pitts' importer status was prior to the filing of the AD and CVD petitions, a fact noted in the initial investigation record before the ITC. *See* Appx80255-80256.

The certain chassis merchandise of the AD and CVD investigations are skeletal rectangular framed semi-trailers for transporting shipping cargo containers. The chassis are manufactured from steel raw materials to make the frames and parts, together with numerous components that are themselves produced by third party suppliers and not by chassis manufacturers. Appx80120-80122, Appx80170-80171, Appx80232-80239. The chassis frame is only used in chassis production, while many of the other components, *e.g.*, landing gear legs, air brakes, axles, suspension, etc., are parts that could be used in other types of trailers. Appx80228. Of the numerous components in a finished chassis, axles and landing gear legs are individual components. *Id.*, Appx80232; *see also AD Order* at 36094; *CVD Order* at 24845. The subassemblies of chassis are also included in the scope. Subassemblies are fabricated from

individual components, and then the downstream subassemblies are interconnected and installed

on the steel frame, and subsequently into the finished chassis. *See* Appx80232. The predominant

portion of the production process of a finished chassis is related to producing the subassemblies.

*See* Appx80129, Appx80178. It is when the components are transformed into subassemblies

there is no function other than being attached to chassis. *See* Appx80172.

Plaintiff, a Petitioner, filed the AD and CVD petitions to combat what was determined by

Commerce to be imports of Chinese chassis merchandise and subassemblies of Chinese chassis

that are sold in the United States at less than fair value ("dumped") or which benefit from

subsidies provided through China government programs. The subassemblies at issue were

produced in China and exported to the United States as modular units from China for bolt-on

assembly, to form a chassis post-import. *See* Appx80120, Appx80129, Appx80231-80232,

Appx80244, Appx81280. Put simply, subject Chinese subassembly imports were sections of a

chassis shipped to assemble as-is into a finished chassis.

As follows, Pitts, as Petitioner, in accord with 19 C.F.R. §§ 351.202(b)(5)-(6), defined

the investigation scope language to cover chassis and also subassemblies thereof as the product

type from China, the subject country. The scope language describes each chassis subassembly as

comprised of numerous components and finished chassis are comprised of several types of

subassemblies. The four major subassemblies named in the scope are the frame or sections of the

frame, the running gear assembly or axle assembly, landing gear assembly, and certain

assemblies capable of connecting a chassis to a converter dolly or another chassis. *AD Order* at

36094; *CVD Order* at 24845.

During the initial investigation interested parties asked Commerce to amend the scope to

clarify, consistent with the petition and Petitioner's intent, that the scope does not include

4

Chinese subassembly components alone. Appx81867-81870. Petitioner had clarified in the investigation that Chinese-origin components are not independently covered by scope and are covered only "with a *covered* {i.e., Chinese-origin} chassis or subassembly". Appx80563 (emphasis added). Fundamentally, the investigation is not a parts investigation.

As a result, Commerce issued preliminary and final scope determinations to clarify that separately entered Chinese-origin components are not covered by the scope. *Id*. Further, Commerce found no basis for additional amended scope language to distinguish between the non-scope components and covered subassemblies. Commerce explained the plain scope language, in fact, stipulated non-scope components are not a portion of a chassis frame or do not connect to a chassis frame thereby providing the distinction to define covered subassemblies separate from non-scope components. *See* Appx80595-80596. The amendment confirms the intent of the Petitioner to not include Chinese components alone in the investigation.

During the concurrent injury investigation, the ITC issued a final affirmative determination that an industry in the United States is materially injured by reason of imports of the Chinese chassis and subassemblies, finding the merchandise under investigation in accord with Commerce's final, amended scope. Appx80174.

The investigations having concluded, with both affirmative Commerce and ITC determinations, Commerce issued the *Orders* with the adopted, final scope language. Importantly, the scope *Orders* provide that individual Chinese-origin components alone are not subject to the *Orders* unless with or for a Chinese chassis.

> Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of

several different types of subassemblies. Within each subassembly
there are numerous components that comprise a given subassembly.

*AD Order* at 36094; *CVD Order* at 24845.

## B.    Pitts' Imported Vietnamese Chassis and Commerce's Scope Ruling

The *Orders* effectuating the scope were issued in May 2021 (CVD Order) and July 2021 (AD Order). Notwithstanding the scope clarification, within a year of issuance of the *Orders*, a Chinese competitor, CIMC Intermodal Equipment LLC, dba CIE Manufacturing ("CIMC"), made an Enforce and Protect Act ("EAPA") (19 U.S.C. § 1517), allegation to U.S. Customs and Border Protection ("CBP") on Pitts Vietnamese chassis imports. CIMC's affiliates are Chinese government-controlled, were the mandatory respondents in the AD and CVD investigations and are subject to the *Orders*.[2] The CIMC allegation against Pitts to CBP disregarded the processing performed to produce the finished chassis in Vietnam, and that the imports in the United States were the Vietnamese finished chassis. The allegation instead claimed individual Chinese component axles and landing gear leg components integrated in the Vietnamese chassis were themselves products covered by the *Orders*. *See* Appx80042, Appx80052-80053.

It is in this context of the allegation that Pitts requested Commerce make the scope clarification. The individual Chinese origin components entered in Vietnam are not subject to the *Orders*. *AD Order* at 36094; *CVD Order* at 24845. Pitts submitted a scope ruling application to Commerce on December 22, 2022, requesting that Commerce confirm and clarify that the individual component axle and landing gear leg component are not in-scope, and in turn, do not

---

[2] *See Certain Chassis and Subassemblies Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 26694 (Dep't of Commerce May 17, 2021); *AD Order* at 36094; *CVD Order* at 24845.

and cannot render the imported finished Vietnamese chassis in the United States subject

merchandise. *See* Appx80000-80039.

On January 20, 2024, Commerce rejected Pitts' initial scope clarification request. At that

same time, Commerce issued two supplemental requests to cure the scope request. Namely,

Commerce requested additional axle and landing gear leg component product details and

explanation on the distinction of the components from the covered subassemblies. Commerce, in

addition, requested Pitts provide documents related to the separate EAPA investigation before

CBP. *See* Appx1019-1021.

On February 13, 2023, Pitts refiled the request for scope clarification with Commerce

providing the responses to the supplemental requests. Appx80040-80938. With the scope ruling

request, Pitts also provided Commerce with initial AD and CVD investigation primary sources

and a Petitioner statement in support of Pitts' scope application. *Id*. In addition, Pitts placed on

the Commerce record responses of the Vietnamese chassis manufacturer submitted in the CBP

investigation showing the finished Vietnamese chassis were produced from raw materials,

components, and parts both purchased in Vietnam and imported in Vietnam. Appx80674-80675,

Appx80705-80708. The finished Vietnamese chassis manufacturer is Thaco Special Vehicles

Manufacturing Limited Company ("THACO"). *See* Appx80063-80064, Appx80707.

On March 15, 2023, Commerce initiated the Pitts scope inquiry. Appx1993-1994.

On April 14, 2023, Petitioner submitted comments in support of Pitts' scope clarification.

Petitioner stated that the scope *Orders* do not cover the individual Chinese axle and landing gear

leg components at issue. Coverage under the *Orders* is predicated on chassis originating from

China and "{t}he scope of the Orders covers Chinese components only when entered with or for

further assembly with a finished or unfinished <u>subject</u> (*i.e.*, Chinese-origin) chassis or subassembly." (Alteration in original). Appx2151-2152.

In the conduct of the scope inquiry, Commerce proceeded to issue two additional rounds of supplemental questionnaires. Pitts responded (Appx81066-81164 and Appx81265-81848), and additionally submitted a series of pre-initiation and scope inquiry comments rebutting CIMC's scope claim comments. In response to the Commerce second scope supplemental questionnaire, Pitts provided Vietnam customs clearance and entry documents establishing separate, independent entry and sale of components in Vietnam without a covered Chinese chassis or subassembly. Appx81286-81828.

In April 24, 2023 comments, Pitts submitted on the record before Commerce the CBP on-site verification report of the Vietnamese finished chassis manufacturer in the EAPA investigation. Appx81188-81202. The CBP verification documented the chassis manufactured from start to finish in Vietnam. The finished chassis were the product of an integrated manufacturing process. CBP verified fabrication involved major production and assembly operations with specialized equipment to take raw materials to individual parts through to the welding of steel parts with beams for fabrication of sections of chassis frames, the joining of self-produced parts and imported components into subassemblies, and then uniting of subassemblies for connection to the chassis frames to the finished chassis.

In accord with Commerce's scope regulation, 19 C.F.R. § 351.225(e)(1),[3] Commerce was to issue a scope ruling based on Pitts' scope application within 120 days after the scope inquiry

---

[3] The applicable Commerce scope regulation is the regulation in force in 2023 when Pitts submitted its scope application. 19 C.F.R. § 351.225 (2023). See also *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20, 2021)("*Scope and Circumvention Final Rule*").

initiation date, by July 13, 2023. However, on June 7, 2023, per § 351.225(e)(2)(i), Commerce

provided that "{g}iven the complexities of the comments received on the record", Commerce

needed additional time and extended the time-period for issuing the scope ruling the full 180

days allowed from the July 13, 2023 original due date until January 10, 2024. Appx2280.

Upon receipt of all Pitts' submissions, on September 18, 2023, Commerce issued a

preliminary scope ruling, notifying the trade for the first time that separate, independent

shipments in Vietnam of individual Chinese axle and landing gear leg components, and other

unspecified Chinese components, constitute a covered Chinese "unassembled subassembly" so

thereby a covered "unfinished chassis". Furthermore, Commerce ruled Pitts' entire finished

chassis from Vietnam imported in the United States are in-scope merchandise subject to AD and

CVD. Appx2443-2452.

Commerce had not previously defined "unassembled" in the context of "unassembled

subassemblies" and thereby "unfinished chassis" as components entered in separate, independent

shipments alone. Even so, upon the preliminary scope determination, Commerce instructed CBP

to suspend liquidation of the chassis from Vietnam entries made by Pitts in the United States

retroactively prior to the preliminary ruling, and prior to initiation of the scope inquiry.[4]

In short order, given Commerce's novel unassembled subassemblies definition, Pitts

timely requested in accord with 19 C.F.R. § 351.225(l)(2)(iii)(B), that Commerce appropriately

adopt an alternative, prospective date to begin suspension of liquidation of entries and AD and

---

[4] Commerce set the suspension of liquidation and cash deposits for entries retroactive to a date
not preceding November 4, 2021, which is the "cutoff" date aligned with revision to the
Commerce scope regulation. *See Scope and Circumvention Final Rule,* 86 Fed. Reg. at 52300,
and 52327.

CVD cash deposit requirements at the direction of Commerce from the preliminary ruling and notice to the trade. *See* Appx81893-81939.

On October 2, 2023, Pitts, Petitioner, and the Vietnamese chassis manufacturer, THACO, submitted case briefs to Commerce with argument against Commerce's claimed interpretive conclusion. Based on all operative plain scope language, as supported by the record interpretive sources, Commerce should have clarified in the final determination that the separate, independent shipments of Chinese components are not subject to the *Orders* and do not render the U.S. imports of Vietnamese finished chassis subject. See Appx2489-2530, Appx2531-2534, and Appx2479-2488 respectively. On October 10, 2023, CIMC submitted a rebuttal brief. Appx2535-2558.

Upon the request of Pitts, on December 7, 2023, Commerce held a public hearing. *See* Appx2564-2618; *see also* Appx2619-2622.

On January 10, 2024, Commerce issued the *Final Scope Ruling*. Appx2623-2636. Commerce continued to find the separate, independent shipments of Chinese components alone constitute unassembled subassemblies and thereby unfinished chassis under the existing scope *Orders*. Commerce also continued to find the entire finished chassis produced in Vietnam in-scope and to instruct CBP to continue the suspension of liquidation of the finished chassis entries to impose AD and CVD retroactively.

## III.    SUMMARY OF ARGUMENT

The particular product at issue is a finished chassis from Vietnam manufactured from raw materials (steel), components and parts from Vietnam and imported in Vietnam, including Chinese-origin individual component axles and landing gear leg components. The present scope ruling violates the fundamental principle of AD and CVD law that the scope of an order is

defined by both the type of merchandise and country of production. At issue is the scope *Orders* on chassis and subassemblies thereof, the type of merchandise, from China, the country of production. It is long-established court precedent that a Commerce scope ruling may not change the scope of the order or alter its express terms to find merchandise covered. Here, Commerce's *Final Scope Ruling* unlawfully expanded the scope of the China chassis and subassemblies *Orders* to cover the finished chassis from Vietnam.

Based on the plain language of the *Orders*, Commerce's scope determination declared that separate, independent shipments of Chinese component axles and landing gear leg components imported and entered in Vietnam from China constitute covered Chinese unassembled subassemblies, and thereby unfinished chassis, under the *Orders*, which rendered the Vietnamese finished chassis covered merchandise.

Contrary to law, Commerce's scope ruling defined unassembled subassemblies, and thereby unfinished chassis, to mean the separate, independent shipments of Chinese components. Commerce impermissibly did not read the scope language as a whole. Principally, operative scope language provides that within each subassembly there are numerous components, and then individual Chinese components entered and sold by themselves are *not* subject to the *Orders*. Commerce's scope ruling fails to consider all scope language that gives contrary meaning to its selected language. In contrast, by plain scope language, and by ordinary language, unassembled subassemblies are not a separate Chinese component, those made in separate, independent shipments entered alone. Commerce's asserted scope interpretation instead, impermissibly alters the scope terms, and reads out the individual components exclusionary language from the *Orders*' scope.

Commerce's reason to deny the scope exclusion is a misplaced reliance on scope language providing when Chinese components are brought within the existing *Orders*. That is, Chinese components are only in-scope when entered with or further assembly with a finished or unfinished *Chinese* chassis. Commerce, however, persists with its claimed interpretation but wholly disregards the fundamental principle underlying the *Orders* in doing so. The *Orders* stipulate Chinese-origin components are only covered when entered with or for further assembly with *Chinese*-origin chassis or subassemblies. Commerce here fails to articulate what constitutes the Chinese unfinished chassis to support bringing the independent Chinese components within the *Orders*.

Commerce's claimed plain language interpretation still leads to further absurd results. In letting stand the Commerce determination that separate, independent shipments of Chinese components are covered unfinished chassis, the ruling impermissibly strips of meaning the individual components exclusion. As insisted by the Commerce interpretation, the "for further assembly" with an unfinished chassis scope language would then instruct: "components entered…for further assembly with… {*separate, independent components*} are subject merchandise." Such a contradictory construction cannot be upheld.

Commerce's plain language scope ruling is not in accordance with law and this Court need not reach error in any Commerce explanation outside the plain language to vacate the scope ruling. The explanations proffered by Commerce nonetheless simply rely on its primary contention that unassembled subassemblies are Chinese components alone and are consequently, circular and self-serving. Importantly, Commerce fails to provide support for how Commerce's scope ruling does not impermissibly modify the *Orders* from its terms.

In addition, the focus of the AD and CVD law is the imposition of AD and CVD on the merchandise imported, or sold, into the United States. Even if *in arguendo* Commerce properly defined unassembled subassemblies within the scope *Orders*, and thereby the Chinese components that entered Vietnam in separate, independent shipments alone are covered merchandise, Commerce was not focused on questioning the status of the finished chassis imported in the United States. Commerce does not address the actual nature of the product or record evidence head on, to legally assert, or support, the finished chassis are not Vietnamese origin. The *Orders* do not include Vietnamese finished chassis imports and the *Final Scope Ruling* does not clarify the scope but impermissibly expands the existing *Orders*.

The Commerce scope determination applies the wrong legal analytical framework. The Commerce circumvention law provides the only method for Commerce to expand the scope to reach products not covered by an existing order. It is Commerce's own regulation, and the application of the Commerce substantial transformation test, that provides the method for Commerce to identify when a scope country input loses its identity in a third country. Commerce cannot altogether ignore the legal analytical steps required with a conclusive presumption the finished chassis imports are subject. The third country "processing of" scope language in the *Orders* does not contemplate this logical leap here, and Commerce's reliance on this scope language as support is faulty. The third country processing of language merely preserves the in-scope country nature of the product and origin for what is existing subject merchandise. It does not, and cannot, abrogate the cases prohibiting changing or interpreting orders contrary to their terms to support Commerce's ruling.

Even if this Court concludes that Commerce's final scope determination was supported and in accordance with law, Commerce's determination on the imposition of AD and CVD

remains contrary to law. The first time Pitts, the Petitioner Coalition, and the foreign producer and exporter of the finished chassis were provided notice of the Commerce scope interpretation was the preliminary scope ruling. In the interest of adequate notice and fairness, and in the context of this scope proceeding, this Court should find the Commerce retroactive suspension of liquidation of the finished chassis entries and AD and CVD requirements not justified. Consistently, Commerce's imposition of AD and CVD on non-subject country subassembly components contained in the finished chassis is not justified. Commerce exceeds its authority in applying the AD and CVD requirements to the finished chassis in their entirety.

## IV. ARGUMENT

### A. Standard of Review

In reviewing Commerce's determinations commenced as here under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi), as to whether a particular type of merchandise is within the class or kind of merchandise described in an AD or CVD order, this Court must not uphold a scope ruling it finds "'unsupported by substantial evidence on the record or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States,* 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

In reviewing scope rulings, courts have emphasized that "Commerce may not…interpret the scope of an order contrary to the order's terms or in such a way so as to change the scope of the order." *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013). "Commerce's inquiry begins with the Orders' scope to determine whether it contains an ambiguity and, thus, is susceptible to interpretation . . . . The question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that we review de novo." *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1308

(Fed. Cir. 2018) (citing *Meridian Products, LLC v. United States*, 851 F.3d 1375, 1381-1382 (Fed. Cir. 2017)). *De novo* in this context means review without deference to Commerce's determination. *Accord Litton Systems, Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1566 n.1 (Fed. Cir. 1996). The absence of one thing does not prove the opposite – as courts have said, "Commerce cannot find authority in an order based on the theory that the order does not deny authority." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed Cir. 2002).

The separate, but related "question of whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." *Meridian Prods.*, 851 F.3d at 1382. Commerce must base its determination on "substantial evidence," consistent with 19 U.S.C. § 1516a(b)(1)(B)(i), including "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence review requires consideration of "the record as a whole, including any evidence that 'fairly detracts from the substantiality of the evidence'", *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010), and asks, in light of that evidence, whether Commerce's determination was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

### B.  Legal Framework for Scope Order Determinations

As background, we provide an overview of the AD and CVD framework controlling initial investigations and ensuing scope orders. The framework directs Commerce's scope order determinations and informs the scope ruling that is presently before this Court.

The U.S. trade statutes provide that a domestic industry interested party may concurrently petition Commerce and the ITC to initiate AD and CVD investigations on a particular type of

merchandise from a particular country. *See* 19 U.S.C. §§ 1673a(b), 1671a(b). AD targets "a class or kind of foreign merchandise," 19 U.S.C. § 1673(1), and CVD targets "the government of a country" subsidizing "a class or kind of merchandise," *id.* § 1671(a)(1).

A fundamental tenet of AD and CVD law is the scope of the order is defined by both type of merchandise and by country of production. That is, the physical description and country of origin of the merchandise. *See, e.g.*, *Global Commodity Grp.*, 709 F.3d at 1139 *citing Ugine & ALZ Belg., N.V. v. United States,* 517 F. Supp. 2d 1333, 1345 (Ct. Int'l Trade 2007) ("'For merchandise to be subject to an order, it must meet both parameters, i.e., product type and country of origin'" (citation omitted)). If the merchandise does not meet both parameters, it is outside the scope, and the entry in the United States is therefore not subject to suspension of liquidation or AD and CVD imposed under the orders. Crucially, this discussion establishes the basic premise that by law any mention of the merchandise type in the scope language must be presumed to implicate the country of origin as well.

The petitioner accordingly sets the scope of the initial investigation by the merchandise type and subject country of production. The petition is required to contain, *inter alia*, both "[a] detailed description of the subject merchandise that defines the requested scope of the investigation," 19 C.F.R. § 351.202(b)(5), as well as "[t]he name of the country in which the subject merchandise is manufactured or produced," *id.* § 351.202(b)(6).

If Commerce determines the merchandise subject to the investigation (subject merchandise)[5] is dumped and benefits from subsidies provided by the foreign government programs, and the ITC, in turn, determines the domestic industry materially injured, or

---

[5] Products within the scope of the AD and CVD investigations or under the orders are termed "subject merchandise." 19 U.S.C. § 1677(25).

threatened with material injury by the subject imports, Commerce is authorized to issue, and

issues, corresponding AD and CVD orders with final scope language. 19 U.S.C. §§ 1671,

1671d(c), 1671e, 1673, 1673d(c), 1673e. The ITC uses the provided merchandise description to

determine the effects of the dumped or countervailed imported goods on the domestic like

product. 19 U.S.C. §§ 1671(a)(2), 1673(2); *Timken Co. v. United States*, 913 F. Supp. 580, 584

(Ct. Int'l Trade 1996). All orders must be supported by an ITC determination of material injury

covering the merchandise in question. *See* 19 U.S.C. §§ 1671, 1673; *Wheatland Tube Co. v.

United States,* 973 F. Supp. 149, 158 (Ct. Int'l Trade 1997), *aff'd,* 161 F.3d 1365 (Fed. Cir.

1998).

 Third country processing language in a scope order does *not* itself define scope origin, or

physical description for that matter, but is to preserve the subject scope-country origin for what is

existing subject merchandise, which undergo processing in an intermediary, third, country prior

to import in the United States. The third country processing language deals with processes which

are considered insufficient to remove the country of origin, a legal predicate to remain within the

existing order. The third country processing language does not, and cannot, enlarge the scope of

an order to reach products not covered by the existing scope or capture, by conclusive

presumption, a production scenario transforming products in another foreign, third, country to an

entirely new product. The framework for analyzing the scope in such scenarios is, instead,

subject to separate procedures explicitly provided for under the law. See 19 U.S.C. § 1677j(b)

and 19 C.F.R. § 351.226 (circumvention inquiries), and 19 C.F.R. § 351.225(j)(origin and

substantial transformation determinations).

 In order to provide importers and foreign producers-exporters with notice as to whether

their products fall within the scope of an AD and CVD order, Congress has authorized

Commerce to issue scope rulings clarifying "'whether a particular type of merchandise is within the class or kind of merchandise described in an existing . . . order.'" *OMG Inc. v. United States*, 321 F. Supp. 3d 1262, 1264 (Ct. Int'l Trade 2018) (quoting 19 U.S.C. § 1516a(a)(2)(B)(vi)) *aff'd*, 972 F.3d 1358 (Fed. Cir. 2020). Post-order, Commerce may issue scope rulings bound by its own regulation to apply plain scope language and a limited set of factors in determining a product's inclusion. *See* 19 C.F.R. § 351.225(k).[6]

Consequently, by the AD and CVD legal framework and faced with scope inquiries on U.S. imports from other than the subject in-scope country, Commerce first conducts an examination whether the product is of the type described in the order in the first instance. *See* Appx81050-81051, Appx81056-81058. If it is not, the scope inquiry stops there. Appx81057-81058. If merchandise is not in-scope leaving the scope country, it is not subject entering another foreign, third country, and does not render a different product leaving the third country covered, *i.e.*, not in-scope, even when transformed into a product with the physical description of the subject merchandise. *See* 19 U.S.C. § 351.225(j)(1).

By contrast, a circumvention, and not scope, analysis under 19 U.S.C. § 1677j(b) is the required statutory framework for analyzing the scope of an order when the merchandise is completed or assembled in another foreign, third, country from subject merchandise, or components produced in the subject country.

---

[6] This court has interpreted the Commerce scope regulation to reflect the U.S. Court of Appeals for the Federal Circuit created three-step inquiry for evaluation of scope language in *Meridian Products*, 851 F.3d at 1381. *See SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1272 n.2 (Ct. Int'l Trade 2023). *Meridian Products* provided: "'First, Commerce must look to the text of an order's scope; second, Commerce will consult descriptions of the merchandise in other sources {pursuant to 19 C.F.R. § 351.225(k)(1)}; and third, if still necessary, Commerce may consider additional factors comparing the merchandise in question to merchandise subject to the order {pursuant to 19 C.F.R. § 351.225(k)(2)}.'" *Id. quoting Meridian Products*, 851 F.3d at 1381.

C.    **Commerce Impermissibly Defines Unfinished Chassis and Expands the Scope of the *Orders* Contrary to Law**

A Commerce scope ruling may not change the scope of the order or alter its express terms. *See Duferco,* 296 F.3d at 1087. Indeed, a scope determination is merely a clarification of the terms of the original antidumping order; it does not modify the order from its terms. *See, e.g.*, *Alsthom Atlantique, et al. v. United States*, 787 F.2d 565, 571 (Fed. Cir. 1986). The *Duferco* Court reversed a scope ruling by Commerce because the scope language of the orders it addressed contained no language that specifically included, nor that could reasonably be interpreted to include the merchandise. So too in the present case has Commerce unlawfully expanded the scope of the *Orders* at issue encompassing certain Chinese chassis and subassemblies in finding the finished chassis manufactured in Vietnam, which contained individual Chinese components, are covered by the Chinese scope *Orders*.

At the outset, Pitts' scope inquiry asked Commerce to clarify that the particular individual Chinese component axle and landing gear leg component parts, which were integrated through production in Vietnam into finished chassis, are not individually in-scope merchandise. Appx80051-80053. The *Orders* provide that components by themselves are not covered merchandise alone: "Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished {Chinese} chassis are subject merchandise." *AD Order* at 36094; *CVD Order* at 24845.

It is noncontroversial covered merchandise includes unfinished *Chinese* chassis but, in this case, it is also not in dispute the entry in the United States is finished chassis from Vietnam, and that Chinese components themselves entered Vietnam alone in separate, independent shipments. Appx2451, Appx2630-2634. Record documentation established the Chinese components entered Vietnam as separate parts and did not in any shipment include all parts to

comprise a covered subassembly, *i.e.*, neither "running gear assemblies or axle assemblies" of which a component axle is one of numerous parts nor "landing gear assemblies" of which a landing gear leg is one of numerous parts, so that the separate components entered Vietnam alone. *Id*.; *see also* Appx81265, Appx81286-81828.

In issuing its ruling on two individual Chinese components, those at issue, integrated in the Vietnamese chassis, the chassis themselves, in fact, made from raw materials and numerous other parts, Commerce ruled the plain scope language was dispositive of coverage of the finished chassis from Vietnam to impose AD and CVD on the chassis imports in their entirety. Appx2628, Appx2633. Commerce deemed consideration of scope primary interpretative sources under 19 C.F.R. §§ 351.225(k)(1)(i)-(ii) "unnecessary" in supporting its determination. *Id*. Thus, Commerce's ruling relied on nothing more than plain scope language. As is detailed below, operative scope language does not support Commerce's conclusion.

### 1.    Commerce Did Not Interpret the Scope Language "Unassembled Subassemblies" But Altered the Scope *Orders* Contrary to Law

Commerce's scope ruling, in fact, relied upon partial scope language for stated support. Specifically, the stated scope language provides: "'{I}mportation of any of these {four covered} subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of these *Orders {sic}* '". And the stated scope language provides: "'{M}erchandise covered by these *Orders {sic}* consists of chassis and subassemblies thereof, whether finished or unfinished…'" Appx2628-2629; *see also AD Order* at 36094; *CVD Order* at 24845. Thereby, Commerce stated "an unfinished chassis is considered subject merchandise." Appx2629.

Next, by application based on this selective scope language, Commerce concluded the separate, independent shipments of Chinese components that entered Vietnam alone "constitute multiple unassembled chassis subassemblies" and "because the scope of the *Orders* covers

unfinished chassis that are finished in third countries…Pitts' imported chassis from {Vietnam}…fall under the scope of the *Orders*." *Id*. In short, in ruling the Chinese components imported and entered in Vietnam in separate, independent shipments alone constitute "unassembled subassemblies" and, thereby, "unfinished chassis", Commerce's scope determination defined covered "unassembled subassemblies" and, therefore, "unfinished chassis" of the scope *Orders* to mean separate, independent shipments of Chinese components. The *Orders* are not parts orders, but Commerce's determination has converted it to one.

While the Commerce conclusion also relied upon the fact that multiple or additional, yet unspecified, Chinese subassembly components were imported into Vietnam, by plain scope terms Chinese components are included within the scope of the *Orders* only insofar as they otherwise meet the definition of the Chinese scope *Orders*. Appx2451, Appx2633. The question before this Court now is straightforward. By plain scope language are the entry of Chinese components in separate, independent shipments "unassembled subassemblies" and thereby unfinished chassis? The answer equally straightforward no.

Commerce cites no scope language to support its definition that covered "unassembled subassemblies" – "unfinished chassis" means, and is, separately entered Chinese components. There is none. The law could not be clearer that Commerce, thus, cannot expand the scope of a remedial order through its interpretation. *See Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995). Commerce's plain language scope ruling here, that Chinese components in separate, independent shipments are covered unfinished chassis, defies this fundamental trade law and the Commerce scope ruling is not in accordance with law.

In contrast to its scope ruling, Commerce's alleged interpretation ignores, and thus impermissibly fails to consider, all plain scope language that gives contrary meaning to the

selected language and pursuing scope determination altering its terms. Operative scope language provides that "within each subassembly there are numerous components". *AD Order* at 36094; *CVD Order* at 24845. A covered subassembly itself is defined as subassemblies of a chassis frame and/or those "for connection to the chassis frame." *Id*. The scope *Orders* continue and name "axles" and "landing gear legs" as components of chassis. *Id*. The scope also provides that covered running gear assemblies or axle assemblies include the component axle with other components: "suspensions(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels." *Id*.

Consequently, by plain scope language a subassembly, assembled or *unassembled*, is not and cannot be a separately entered component alone. The scope is to be read as a whole. *See, e.g.*, *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1346 n. 107 (Ct. Int'l Trade 2016) ("'Words are not pebbles in alien juxtaposition; they have only a communal existence….'") (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941) (L. Hand, J.))). This Court in interpreting a scope term will examine the text as a whole "'reconciling the section in question with sections related to it.'" *SMA Surfaces,* 617 F. Supp. 3d at 1273 (explaining interpreting a scope term like interpreting the text of a regulatory provision) (quoting *Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006))). Commerce's ruling is impermissible under the law as it interprets the *Orders* contrary to and alters the *Orders*' terms. *See Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).

Moreover, the proper conclusion from the scope language that subassembly components are only subject when entered together as the collective parts making up the subassembly, or with a finished or unfinished Chinese-origin chassis, finds support in further scope language. Initially absent from Commerce's consideration is the definition of subassembly existing in the scope

*Orders* to mean a portion of a chassis frame or for connection to the chassis frame. *See AD Order* at 36094; *CVD Order* at 24845. The *Final Scope Ruling* does not address the separate scope definition of subassemblies. Plain scope language both lists the numerous components that comprise the specific covered subassembly, and then scope language also lists individual components of a covered finished or unfinished chassis (subassembly), separate from the covered subassemblies, an article that is made up of numerous components. *See id*. At issue, by plain scope language, the covered subassemblies, the "{r}unning gear assemblies or axle assemblies", of which a component axle is one component, may include "suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels." *Id*. By plain scope language, "landing gear legs" alone are defined as components and not covered "{l}anding gear assemblies". *Id*. Therefore, by plain scope language, individual components entered separately and independently alone do not comprise the component parts of a subassembly within the meaning of the scope *Orders*, and therefore are not and cannot be a covered subassembly that is unassembled.

So too as a matter of ordinary language and common sense, Commerce's ruling here, in connection with finding a covered "unassembled" subassembly, went beyond interpretation of the term's common meaning. The term "unassembled" is defined as "not connected or put together**:** not assembled" and "not assembled (= put together from separate parts):" *See* Appx2514 (quoting the on-line Merriam-Webster and Cambridge dictionaries). *See* 19 C.F.R. § 351.225(k)(1)(ii)(providing dictionaries may be considered an interpretive source). The term "unassembled", by definition, consists of the parts to put together and not a separate, independent component entered alone. In considering the plain meaning of scope terms indeed the courts rely upon dictionary definitions. *See OMG,* 972 F.3d at 1365-1366 ("As a threshold

matter, the CIT may consult dictionary definitions to assist in determining the plain meaning of a term in an antidumping or countervailing duty order.") (*citing Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990)))(additional citations omitted)). There is no reason to depart from a straightforward, plain-meaning interpretation of the scope term "unassembled". No entered shipment includes all parts to comprise a covered subassembly. There is nothing in the "unassembled" subassembly language that would suggest the kind of extraordinary reading Commerce applies finding subassembly components entered in separate, independent shipments alone are unassembled subassemblies and therefore unfinished chassis under the plain scope language ruling, and this Court should not accept such finding by Commerce.

> **2.    Commerce's Own Regulation and Court Precedent Require Commerce Consider the Scope Language Including Merchandise Excluded from the Scope**

What is more telling of Commerce's erroneous "unassembled subassembly" claimed interpretative conclusion is it reads out explicit exclusionary language from the scope: "Individual components entered and sold by themselves are not subject to the order". *AD Order* at 36094; *CVD Order* at 24845. Exclusionary language in the scope is part of the definition of subject merchandise under the *Orders*. 19 C.F.R. § 351.225(k)(1); *Shenyang*, 146 F. Supp. 3d at 1346; *see also Saha Thai Steel Pipe Public Company Limited v. United States*, 101 F. 4th 1310, 1324 (Fed. Cir. 2024)(providing scope terms encompass what is not in-scope). By plain scope language, individual Chinese components alone are beyond the scope *Orders*. Commerce's scope determination failed to consider fully the express exclusionary language contrary to its own regulation and court precedent.

In a flawed attempt to disclaim the exclusion here, Commerce leans on the second clause of the component exclusion sentence, which stipulates when Chinese components are in-scope.

Appx2633. The pertinent complete scope sentence provides first when components are non-scope merchandise and then second, when components are in-scope merchandise.

> Individual components entered and sold by themselves are not subject to the investigations, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise.

*AD Order* at 36094; *CVD Order* at 24845.

Commerce places emphasis on the language "further assembly with" a finished or unfinished chassis of the second clause of the sentence to argue the separate, independent components here are in-scope components. Appx2633. The error in Commerce's construction is both circular and self-serving. Commerce's claim puts the cart before the proverbial horse and assumes the Commerce covered "unfinished chassis" scope definition, is in accordance with law. As established above, it is not.

In addition to being self-serving, Commerce's attempt to disclaim the exclusion produces absurd results that do not clarify but unduly expand the *Orders*. Foremost, Commerce's interpretation of the scope language impermissibly disregards the dual requirement that the scope is defined by product type and country of origin. *Ugine*, 517 F. Supp. 2d at 1344-1345; 19 U.S.C. §§ 1671 and 1673. Based on the above framework, the Commerce scope conclusion is wrong. The scope of the *Orders* initially—that is, by the first sentence of the scope language—include "{t}he products covered by the order are certain chassis and subassemblies thereof from China." *AD Order* at 36094; *CVD Order* at 24845. Chinese-origin components are only subject merchandise when entered with or for further assembly with Chinese-origin chassis or subassemblies because coverage is predicated on finding the subject merchandise originated in China. Commerce's scope interpretation yet, proceeds from either *ipse dixit* or circular reasoning

the "unfinished chassis" of which the separately entered components are *for further assembly with* are Chinese.

Commerce, however, fails to articulate what "other chassis components for other subassemblies", imported from China underlie the ruling and fails to articulate what "unassembled" subassembly was imported in Vietnam from China. S*ee* Appx2629, Appx2633. Commerce does not articulate what is the Chinese chassis to support a ruling full stop. Commerce is required to "explain the standards it applied…." *Dorbest Ltd. v. United States,* 755 F. Supp. 2d 1291, 1296 (Ct. Int'l Trade 2011). *Ipse dixit* declaration of origin here is not substantial evidence. *See Gold East Paper (Jiangsu) Co. v. United States*, 991 F. Supp.2d 1357, 1365 n.13 (Ct. Int'l Trade 2014)("*Ipse dixit* declarations are not substantial evidence."). Having ascertained the claimed meaning of unfinished chassis, the failure by Commerce in the *Final Scope Ruling* to specify the chassis components that constitute a covered unfinished chassis, is not supported by plain scope language and does not clarify the scope. The *Final Scope Ruling* rather injects a meaning to a term in the scope that is not defined and, in turn, is not administrable, and as a result is faulty. "Respondents should not be required to guess the parameters of Commerce's interpretation of a phrase in the statute" and likewise, a scope term. *NSK Ltd. v. United States,* 910 F. Supp. 663, 671 (Ct. Int'l Trade 1995).

A still further absurd result which follows from the Commerce plain language interpretation is the effective definition of in-scope components to mean the exact opposite of non-scope components. That is, here, where the separate, independent shipments of components are "unfinished chassis", as Commerce would have it, the second clause is, however, reduced to "components entered…for further assembly with…{*separate, independent components*} are subject merchandise." Consequently, in substituting "unfinished chassis" in the second clause of

26

the scope sentence with its definition insisted on by Commerce, this ruling, if left to stand, impermissibly strips of meaning the explicit exclusionary scope language in the first clause of the sentence. *See Shenyang*, 146 F. Supp. 3d at 1352 n.147 (citing *TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001), thereby equating scope interpretation with statutory construction that "'no clause, sentence, or word shall be superfluous….'" *id.*)); *see also Eckstrom,* 254 F.3d at 1073 (rejecting a construction that rendered scope terms "mere surplusage"); *Trade Association Group Ltd. v. United States*, 961 F. Supp. 2d 1306, 1313 (Ct. Int'l Trade 2014) (finding a scope construction unsupported where it fails to give effect to scope language).

Commerce's faulty construction of the scope begins and ends with the recitation of the improper claim covered unassembled subassemblies, and thereby unfinished chassis, are Chinese components in separate, independent shipments. The Commerce repetition does not transform an unlawful scope construction.

**D.    Commerce Did Not Conduct a Lawful (k)(1) Scope Determination**

Commerce's faulty construction is evidenced further by Commerce having to move beyond plain scope text to claim to find support for its ruling. Here, to improperly avoid addressing the scope language as a whole and reconcile the Commerce unassembled subassembly definition with the individual component exclusion language, Commerce resorts to explanation extraneous to and not present in the text of the *Orders*. Appx2629-2630, Appx2633. In the *Final Scope Ruling*, Commerce relies on initial investigation sources or post-*Orders* explanation, despite Commerce's claim its determination is based on scope language alone. Appx2628. Commerce's strained interpretation is contrary to its own regulatory framework and misplaced in the larger argument stating at the outset of its analysis that the ruling is based on

plain scope language alone. *Id*. Compare 19 C.F.R. § 351.225(k)(1)(considering scope language alone) with 19 C.F.R. § 351.225(k)(1)(i)(considering primary interpretive sources).

There is no reasonable construction of the scope language under which the *Orders* include the Chinese components entered in separate, independent shipments to render the chassis from Vietnam subject merchandise. The Court, therefore, need not reach the error in Commerce's extraneous explanation. The language of the *Orders* determines the scope of the *Orders*. *See Duferco*, 296 F.3d at 1089; *OMG, Inc.*, 972 F.3d at 1366 (citation omitted). See also *Trade Association*, 961 F. Supp. 2d at 1316, 1322 (Ct. Int'l Trade 2014) *citing Duferco* explaining the court need not reach error in considering § 351.225(k)(1) factors (now factors in § 351.225(k)(1)(i)), when there is no reasonable construction of scope language.

### E.    Scope Interpretative Sources Confirm the Vietnamese Chassis at Issue Are Outside the Scope of the *Orders*

Even in moving beyond the four corners of the plain language of *Orders*, contrary to Commerce's assertion, record evidence does not support Commerce's interpretation. The explanations proffered by Commerce are inapposite to the primary scope interpretive sources, which include description of merchandise from the petition and initial investigation, Commerce scope rulings, and determinations of the ITC. 19 C.F.R. § 351.225(k)(1)(i)(A)-(D). The evolution of the scope language in the initial investigation, as it is documented in the primary interpretive sources, *i.e.*, the (k)(1)(i) factors, confirms the Commerce scope interpretation unlawfully expanded the scope *Orders* and Chinese components alone are not in-scope and do not render the Vietnamese finished chassis at issue subject merchandise.

At the outset of the initial investigation, Commerce directly asked Petitioner Coalition (of which Pitts was a member, and Plaintiff-Intervenor in this case), in a petition supplemental

questionnaire, if components described in the scope were alone included. Petitioner responded in the negative.

> 3. In the fourth paragraph of the scope, you state that subject merchandise also includes "chassis, whether finished or unfinished, entered with or for further assembly with components...." Are such components covered by the scope, regardless of whether entered with or entered separately from the chassis or subassemblies thereof?

> Answer: No, the components listed in the fourth paragraph of the scope are not intended to be independently covered by the scope language (*i.e.*, they are not covered by the scope when entered separately from the chassis or subassemblies thereof). However, if a component or components are entered with a covered chassis or subassembly, those components would be covered merchandise and subject to duties.

Appx80563. (Bold type omitted).

During the course of the investigation Commerce found the Petitioner proposed scope language addressing components was not clear and Commerce issued both preliminary and final scope determinations amending and clarifying the scope language in accord with Petitioner's intent. See Appx80564-80582 and Appx80591-80603 respectively.

The Commerce preliminary scope determination documents that Petitioner agreed that individual Chinese-origin components alone were not subject to the investigation. The individual component exclusion language (paragraph six of the now scope) was added. Appx80572-80575, Appx80581-80582. The Petitioner concurred providing the language of the scope is clear that individual components alone are not covered. Appx80585, Appx80587-80588. In addition, and in accord with Petitioner's confirmation, the term components were removed from the scope language describing the four covered subassemblies. Appx80595-80596. Then, the ITC final

injury determination relied upon the amended Commerce scope as the products under investigation. Appx80174.

Commerce's counter reliance on these primary interpretive sources is framed in the *Final Scope Ruling* as clarifying misrepresentations by Pitts. Appx2629-2630. Such characterization is unfounded, but importantly Commerce's stated explanations neither provide the desired inference claimed by Commerce nor clarify scope terms to support its scope interpretation. At bottom, flawed in Commerce's account of the sources is its proffered clarification presupposes unassembled subassemblies are Chinese individual components alone. This argument, of course, simply relies on its primary contention and does not provide support for how Commerce's scope ruling does not impermissibly modify the *Orders* from its terms.

First, Commerce places emphasis on the fact that while in the initial investigation scope determinations Commerce agreed that individual Chinese components, like axles, were not subject merchandise alone, and Commerce specified exemplar components in agreement of the exclusion, it had added the "or for further assembly" with a finished or unfinished chassis scope language based on Petitioner comments providing when individual components would be covered. Appx2630. Covered, when entered with a finished or unfinished chassis. In addition, Commerce places emphasis on the ITC final injury determination providing that "'only subassemblies and components to be used in chassis, as well as finished chassis themselves, are within the scope.'" *Id*. As noted above, these Commerce statements, however, plainly do not clarify the scope term unassembled subassembly, an unfinished chassis, the basis of the Commerce scope ruling, or address the "or for further assembly" language is with a *Chinese*, and not any, chassis. That is covered, when with a finished or unfinished *Chinese* chassis. This position, Petitioner, in fact, confirmed in this scope proceeding. *See* Appx80934-80938;

Appx2151-2155. The Commerce statements do no more than presuppose Commerce's faulty scope interpretation. The point is that Commerce's meaning of the term "unfinished chassis" is informed nowhere on the record, and even belied thereby.

In addition, Commerce refers to a separate post-*Order* scope ruling, the Trans Texas Tire scope inquiry on Chinese wheel caps, for support of the scope conclusion here. Appx2630. Yet, in the ruling Commerce addressed just the particular product before it and merely stated that the relevant components in that case, wheel caps, were not entered with or for further assembly with a chassis. *Id*. Commerce's reliance on this ruling for the support it suggests is incorrect. Commerce was not faced with and did not speak on whether individual Chinese components alone are subject unassembled subassemblies or whether a finished chassis is Chinese to render the component subject. Appx80605, Appx80611-80612. The ruling shows Commerce found Chinese individual components entered and sold by themselves not subject.

The scope at issue here was developed at length during the initial investigation through comments, a preliminary scope determination, case and rebuttal briefs, and a final scope determination. *See* Appx80564-80582, Appx80591-80603. The existence of the extensive scope record itself alone informs the scope definition contrary to Commerce's claim. Significantly, absent from discussion is an unassembled subassembly of components from separate, independent shipments. Commerce does not point to any evidence from the initial investigation that covered unassembled subassemblies are individual Chinese components in separate, independent shipments alone. Instead, the collaborative process between Commerce and the Petitioner in crafting the scope shows that Petitioner did not intend such a scope construction, a scope meaning the Petitioner confirmed in filings made both during the investigation and during

31

the present scope proceeding. *See* Appx80563, Appx80587-80588, Appx80934-80938, Appx2151-2155, Appx2531-2534, Appx2596-2598.

The "or for further assembly" with a finished or unfinished chassis scope language relied upon by Commerce, interpreted instead in accordance with Petitioner's explicit intent confirms that the finished chassis from Vietnam containing Chinese-origin axle and landing gear leg components are not in-scope. Commerce does not explain why it is applying the *Orders* in a manner that is at odds with the Petitioner's intent. Indeed, the purpose of the AD and CVD statutes are to protect the domestic industry. *See, e.g.*, *United States Steel Corp. v. United States*, 97 F.4th 1364, 1366 (Fed. Cir. 2024). Although Commerce is entitled to "substantial deference with regard to its interpretation" of orders, *see, e.g.*, *King Supply Co. v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012), Commerce must still give consideration to Petitioner's intended meaning. "{In a scope inquiry,} Commerce should give consideration to petitioners' intended meaning when examining a petition's description of the subject merchandise." *Mitsubishi Polyester Film, Inc. v. United States*, 228 F. Supp. 3d 1359, 1378-1379 (Ct. Int'l Trade 2017); *see also Mid Continent Nail Corp. v. United States*, 770 F. Supp. 2d 1372, 1379 (Ct. Int'l Trade 2011). Commerce cannot just arbitrarily ignore this record evidence of intent that is inconsistent with and contrary to Commerce's determination. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

### F. Commerce's Plain Language Scope Determination Applies the Wrong Legal Analytical Framework, is Contrary to Law and Unsupported

Even in assuming the faulty Commerce unassembled subassembly scope definition is legally sound, and thereby the Chinese components that entered Vietnam in separate, independent shipments alone are subject merchandise, the Commerce *Final Scope Ruling* on the finished chassis imported in the United States is contrary to law. Commerce's *Final Scope Ruling* concluded the *Orders* apply to Pitts' entire finished chassis imported in the United States

but failed to make the determination the finished chassis were not Vietnamese, which is merchandise that could not be in-scope. The focus of the AD and CVD law is the imposition of AD and CVD on the merchandise as imported, or sold, *into the United States*. 19 U.S.C. §§ 1673(1), 1671(a)(1). The *Orders* do not include Vietnamese finished chassis imported, and the *Final Scope Ruling* is consequently, not a ruling to clarify what is covered by the *Orders*, on chassis from China, but instead impermissibly expands the *Orders* to cover the finished chassis from Vietnam here contrary to law and unsupported by record evidence.

### 1. Commerce's Scope Ruling on Finished Chassis from Vietnam Impermissibly Finds Merchandise Outside the *Orders* Subject Merchandise

The law provides only one method by which Commerce may expand the scope of an order to reach products that are not covered by the existing scope. Any justification for expanding the *Orders* directed at Chinese chassis to cover non-subject country chassis from Vietnam requires Commerce to conduct a circumvention inquiry. *See, e.g.*, *Peer Bearing Co.-Changshan v. United States*, 986 F. Supp.2d 1389, 1400 (Ct. Int'l Trade 2014)(explaining Commerce's authority was limited to two sources: "the scope language of the Order itself ..., which Commerce must interpret reasonably and not expansively, and 19 U.S.C. § 1677j(b)"). The circumvention statute (19 U.S.C. § 1677j(b)) permits Commerce to assess AD and CVD on merchandise that would be subject to the AD and CVD order in the scope country, China in this case, but are completed or assembled in another foreign, third, country, Vietnam in this case, from the scope country input. *See* 19 U.S.C. § 1677j(b)(1)(A)-(B); *Id*. § 1677j(b)(1)(C)-(E) (including the other requisite considerations of minor or insignificant other foreign country assembly or completion and value added); *see also* 19 C.F.R. § 351.226(i). Indeed, Congress explained that § 1677j addresses situations where "'parts and components... are sent from the

country subject to the order to the third country for assembly or completion.'" *Bell Supply Company, LLC* v. *United States,* 888 F.3d 1222, 1231 (Fed. Cir. 2018) *citing* H.R. Rep. No. 100-576, at 600 (1988) (Conference Report accompanying the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, 102 Stat. 1107 (1988)).

Importantly, the circumvention statutory provision addresses this concern of expanding existing scope coverage by requiring Commerce to consult with the ITC to ensure that a scope expansion is consistent with ITC's injury determination. *See* 19 U.S.C. §§ 1677j(b), 1677j(e). See also Commerce's regulation, as reflected in § 351.226(l)(2)(ii), not directing, in general, CBP to impose AD and CVD on non-subject merchandise until the inquiry initiation date, and after an affirmative circumvention determination bringing the merchandise within the order.[7]

In the *Final Scope Ruling* Commerce instead summarily concluded the finished chassis imported in the United States are not Vietnamese based on finding the Chinese components, that entered in Vietnam in separate, independent shipments alone, are not removed from the scope *Orders* by the processing of the components in Vietnam. Appx2629. Commerce leans on what it describes as the plain meaning of third country "processing of" components scope language for the assumption that finished chassis imported in the United States are, in fact, also covered. *Id.*

The scope language may not be read to sweep into the scope of the *Orders* the certain upstream components here, that even assuming are otherwise subject to the *Orders*, are not the imported merchandise in the United States but are upstream components that were used in producing the merchandise imported in the United States. Scope order third country processing

---

[7] *See Scope and Circumvention Final Rule*, 86 Fed. Reg. at 52338, 52345. Commerce confirms this position in a final rule promulgated subsequent to, and not the rule in effect at the time of the scope inquiry. *See Regulations Improving and Strengthening the Enforcement of Trade Remedies Through the Administration of the Antidumping and Countervailing Duty Laws*, 89 Fed. Reg. 20766, 20776-20777 (Dep't of Commerce Mar. 25, 2024)(Preamble).

language does not abrogate the cases prohibiting changing or interpreting orders contrary to their terms. See also third country processing discussed, *supra*, Section IV. B. Commerce's logical leap that the finished chassis are not Vietnamese without any analysis is unlawful and violates 19 U.S.C. § 1677j(b). To divorce the physical description of the merchandise imported in the United States from the necessary statutory analytical scheme to authorize bringing non-scope merchandise within the scope, impermissibly alters the scope *Orders* and is otherwise contrary to law.

Inherent in the Commerce conclusion the finished chassis are in-scope here is an unfounded assumption the "processing of" the components, from start to finish in Vietnam to complete a finished chassis, is not transformative but is minor or insignificant. The statutory circumvention inquiry, however, specifies the criteria Commerce is to consider as to whether a process of assembly or completion in another foreign country, in this case Vietnam, is, in fact, "minor or insignificant". 19 U.S.C. § 1677j(b)(1)(C). The statute provides five factors, including: (A) level of investment; (B) level of research and development; (C) nature of production process; (D) extent of production facilities; and (E) proportion of value. 19 U.S.C. § 1677j(b)(2)(A)-(E); *see also* 19 U.S.C. §§ 1677j(b)(3) (providing additional factors to consider before including another foreign country merchandise in-scope, including the pattern of trade).

While no one factor is dispositive,[8] the absence of any consideration is unlawful. The statutory circumvention provision does not authorize Commerce to by-pass the statutory process by instead, assuming circumvention in the first instance to authorize inclusion of the finished chassis in Vietnam directly in the scope, without any of the prerequisite findings stipulated in 19

---

[8] *See, e.g.*, *U.K. Carbon and Graphic Co. Ltd. v. United States*, 931 F. Supp.2d 1322, 1335 (Ct. Int'l Trade 2014) *citing* Uruguay Round Agreements Act, Statement of Administrative Action, H.R.Rep. No. 103-316, at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4216.

U.S.C. § 1677j. *See Bell Supply,* 888 F.3d at 1229 (providing circumvention can only occur if the articles are from a country not covered by the relevant AD or CVD orders).

Commerce in the *Final Scope Ruling* was openly focused on circumvention by declaring that a different scope result on the Chinese components entered in separate, independent shipments would be "introducing a significant loophole for evasion of the *Orders*." Appx2633. Commerce cannot then ignore the statutory analytical steps required to make the circumvention determination lawful. Commerce instead justifies the finding with an illusory claim of adhering to Petitioner's intent in introducing "or for further assembly" with a finished or unfinished chassis scope language. *Id.* Commerce's ruling is rather in spite of and contrary to Petitioner's explicit intent, which includes Pitts' intent, made clear in the initial investigation as well as in the present scope proceeding. The statutory scheme, nonetheless, does not give Commerce *carte blanche* to overreach in the scope language to pre-empt 19 U.S.C. § 1677j.

An expansion of the scope without adherence to the requisite analysis also runs afoul of the legal confines of the existing *Orders*, the coverage of which may not be at odds with the ITC's injury determination, a basic requirement for an order.

## 2. Commerce's Scope Ruling Finding the Finished Chassis from Vietnam are Subject Merchandise Is Contrary to Commerce's Own Regulation and Unsupported By Substantial Evidence

In the *Final Scope Ruling* Commerce's conclusion that the finished chassis imported in the United States are not Vietnamese based on the third country "processing of" scope language, and nothing more, remains contrary to Commerce's own country of origin regulation and is unsupported by substantial evidence in the context of the product and record before Commerce.

Commerce ruled the plain scope language dispositive of coverage and stated its origin regulation (19 C.F.R. § 351.225(j)), "unnecessary". *See* Appx2628. Commerce, however, applies

a substantial transformation analysis in scope rulings as the measure to identify when a scope

country input loses its identity in a third country. *Id*. "A substantial transformation occurs where,

'as a result of manufacturing or processing steps . . . {,} the {product} loses its identity and is

transformed into a new product having a new name, character and use.'" *Bell Supply*, 888 F.3d at

1228 (ellipse and parentheses in the original) (citation omitted).

While the substantial transformation analysis is based on a totality of circumstances, the

rule specifies six factors Commerce is to examine in an analysis, including and such as, the

nature and sophistication of processing in the third country. 19 C.F.R. § 351.225(j)(1)(i)-(vi).

Lack of consideration of evidence is not a basis to find Commerce's determination is supported

by substantial evidence. The complete absence of an evaluation is unlawful. Undoubtedly, "'{i}t

is a familiar rule of administrative law that an agency must abide by its own regulations.'" *AMS*

*Associates, Inc. v. United States*, 737 F. 3d 1338, 1343 (Fed. Cir. 2013) (citations omitted)

(specifically applying the principle in Commerce scope determinations).

The *Final Scope Ruling* is simply a statement the "processing of" the components, from

start to finish in Vietnam to complete a finished chassis, is not transformative despite the

resulting merchandise leaving Vietnam is a new product. The Commerce statement ignores the

essential point that, regardless of origin analysis, an imported article is rendered out-of-scope if it

undergoes a substantial transformation before entering the United States. Commerce is keeping

the Chinese components within the scope even where they are subject to a transformation to

finished chassis in Vietnam. The Commerce summary conclusion reflects Commerce's failure to

understand in this scope proceeding that subject merchandise is defined both by physical

description *and* country of origin. Commerce's failure to appreciate this most fundamental

feature of the trade remedies law has led to its erroneous final scope determination. The

37

Commerce claim the finished chassis are covered merchandise and are not Vietnamese is not substantiated by the record, and Commerce's plain scope ruling is contrary to law.

The description of the finished chassis, subject to the *Orders*, establish the merchandise is built-up from components that are further fabricated and welded together into subassemblies, particularly the chassis frame, then interconnected and installed on a steel frame. *See* Appx80244, Appx80844. The predominant portion of the finished chassis production process is related to producing the subassemblies themselves. *See* Appx80129, Appx80178.

The finished chassis at issue were produced "in Vietnam from raw materials, components, and parts purchased in the domestic market and imported". Appx80708. Commerce has therefore "'entirely failed to consider an important aspect of the problem,' {footnote omitted} i.e., the actual nature of the products it is considering" in a scope inquiry. *See Shenyang*, 146 F. Supp. 3d at 1352 n. 148 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In the underlying scope request, Pitts submitted "{t}he product subject to the scope ruling request is a finished chassis from a country to which the Order does not apply, Vietnam, that includes Chinese components, specifically axles and landing gear legs." Appx80056. In an initial pre-inquiry scope questionnaire Commerce asked Pitts to "provide a full and detailed description of the axles and landing gear legs including product specifications, assembly instructions, and schematics" and to "demonstrate how these individual components are distinct from subassemblies…." Appx80087. In response, Pitts detailed the two individual components at issue, the axle and landing gear leg, themselves undergo manufacturing, including welding, bending, drilling, to first interconnect with other parts, and then to connect to the chassis frame to fabricate the finished chassis. Pitts submitted detailed pictorial and narrative description of the

production process in Vietnam, an extensive process involving axle and landing gear

leg components, just parts of numerous parts in an integrated, multi-step production process.

Appx80613-80655, Appx80742-80775, Appx80813, Appx80865-80907.

In addition, record evidence included the CBP on-site verification report of the

Vietnamese finished chassis manufacturer, THACO. Appx81187-81202. In connection with the

EAPA proceeding, CBP verified the processing of raw steel into parts for the chassis frames and

landing gear leg workpieces and verified equipment and direct materials used.

> Notably, while we did not witness all steps and sub-activities within
> each of the main activities of the chassis production process outlined
> in RFI Response Narratives and Exhibits, the verification team
> observed parts and/or stages of each main activity. For instance, we
> witnessed some evidence of the following activities and sub-
> activities: processing of raw steel into parts for the chassis frames
> and landing gear workpieces (activity 1), painting related activities
> (degreasing, drying, painting) and areas (shot blasting room and
> powder coating line), processing related to the kingpin and pickup
> plate (welding), processing related to the axle (welding and
> assembly), processing related to landing gear (welding), and
> packing (strapped and stacked finished chassis). Additionally, we
> verified that equipment and direct materials described in the RFI
> response existed in THACO's facilities.

Appx81192.

The Chinese components are fabricated into subassemblies, interconnected and installed

on a steel frame itself fabricated in Vietnam, and subsequently made into the finished chassis.

Indeed, the fabrication of the steel frame and the welding together of the frame and the other

subassemblies was a feature description of finished chassis production in the initial investigation.

*See* Appx80244. Commerce's failure to address the record evidence of fabrication and

manufacturing performed in Vietnam in the underlying scope proceeding, particularly of the

steel frame, disregards its own regulatory framework for establishing the merchandise origin

under existing orders and is unsupported.

An origin determination is not obviated by third country processing scope language, but rather is required to legally support a ruling the finished chassis do not fall outside the purview of the *Orders'* origin parameter. 19 C.F.R. § 351.225(j). Commerce cannot short circuit the analysis with a summary conclusion.

### G.    Commerce's Scope Ruling is Impermissibly Imposed Retroactively

Scope rulings clarify the scope of an order for the primary purpose of placing U.S. importers and foreign exporters on notice of what merchandise is, in fact, subject to AD and CVD. *See, e.g.*, *OMG*, 972 F.3d at 1364 (citing *ArcelorMittal Stainless Belgium N.V. v. United States,* 694 F.3d 82, 88 (Fed. Cir. 2012)). See also *United States v. Wanxiang American Corp.*, 654 F. Supp.3d 1279, 1297 (Ct. Int'l Trade 2023), explaining established precedent providing for the necessity of notice in the trade context generally, and specifically when imposing retroactive AD and CVD. "{F}air notice is an essential safeguard against overbroad administrative action" reflecting the broader due-process principle that before an agency may enforce an order or regulation imposing monetary measures it must provide parties fair warning. *Id*.

This court expressly has rejected Commerce's retroactive imposition of AD and CVD due to inadequate notice of a change in scope coverage from a preliminary to final determination in an initial investigation. The court ruled imposition of AD and CVD was to be prospective, from the date of notice of the change in Commerce's final determination in that case. *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021), *aff'd after remand*, *Trans Texas Tire, LLC v. United States*, 545 F. Supp. 3d 1374 (Ct. Int'l Trade 2021); *Trans Texas Tire, LLC v. United* States, 519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021), *aff'd after remand*, *Trans Texas Tire, LLC v. United States*, 545 F. Supp. 3d 1378 (Ct. Int'l Trade 2021). The *Trans Texas Tire* Court recognized the principle of notice of scope product coverage before

imposing AD and CVD fundamental in the interest of fairness to affected importers. See *Trans Texas Tire,* 519 F. Supp. 3d at 1287-1288 and *Trans Texas Tire,* 519 F. Supp. 3d at 1304-1305 *citing Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 494 (Fed. Cir. 2020) (demanding notice to importers of product coverage in the context of a Commerce circumvention proceeding).

Even if this Court concludes that Commerce's final scope ruling was supported and in accordance with law, in recognizing the principles of notice and fairness, Commerce's retroactive imposition of AD and CVD is not justified. Commerce's determination in the underlying scope proceeding to not reformulate its suspension of liquidation and cash deposit instructions to impose an alternative, prospective date, and instead maintain entry status retroactively for assessment of AD and CVD is not reasonable. Appx2634-2635. "Liquidation means the final computation or ascertainment of duties on entries for consumption," (19 C.F.R. § 159.1), where suspension of liquidation permits Commerce to impose duties on entries pending Commerce's determination that the products are covered.

As outlined above, the first time Pitts was provided notice that Commerce did not deem individual Chinese components alone, those entered in separate, independent shipments in Vietnam, excluded merchandise, and instead defined the components as subject unassembled subassemblies, and thereby unfinished chassis, was at the issuance of the preliminary scope determination. Appx2451-2452. This date was after all of Pitts' entries for which the Commerce suspension and cash deposit instructions applied. Appx81905. Commerce still instructed that Pitts' unliquidated entries made prior to the Commerce preliminary scope determination, and dating back prior to initiation of the scope inquiry, are subject to suspension and AD and CVD requirements. Appx2459-2461.

Pitts, as a Petitioner itself, had crafted the scope language for the AD and CVD investigations and relied upon its direct understanding the imported merchandise was not subject. Commerce regulations provide for an alternative date of suspension and imposition of the AD and CVD requirements in a scope proceeding where a request is made and based on Commerce finding the alternative date is appropriate. 19 C.F.R. §§ 351.225(l)(2)(iii)(B), (3)(iii)(B). Consistent with Commerce's regulation Pitts requested that Commerce find and instruct that the inquiry merchandise is not subject to suspension and AD and CVD requirements until an alternative, prospective date, from the preliminary scope ruling date. Appx81893-81939. Pitts appealed to Commerce that even subjecting the contained number of entries made prior to the scope initiation and preliminary determination dates to the AD and CVD requirements would create financial ruin for Pitts, a worker-owned company. *See* Appx81897, Appx81905.

In administering its scope rules, Commerce has historically, under its prior regulation, understood the significance of the Commerce imposed suspension date to instruct when merchandise is considered to be subject in the first instance, and that the suspension of liquidation by Commerce is an action with a significant impact on the business of U.S. importers. "Suspension of liquidation is an action with a potentially significant impact on the business of U.S. importers and foreign exporters and producers." *Antidumping Duties; Countervailing Duties: Final Rule*, 62 Fed. Reg. 27296, 27328 (Dep't of Commerce May 19, 1997) (Preamble). Commerce also explained that "when liquidation has not been suspended, Customs, at least, and perhaps the Department as well, have viewed the merchandise as not being within the scope of an order, importers are justified in relying upon that view, at least until the Department rules otherwise." *Id*. This rule imposed a "cutoff" of the initiation date of the scope

inquiry for suspension and imposition of AD and CVD. 19 C.F.R. § 351.225(l)(2)-(3) (2020); *see also United Steel and Fasteners, Inc. v. United States*, 947 F.3d 794, 801, 803 (Fed. Cir. 2020).

While Commerce's new scope regulation removes the prospective scope inquiry initiation cutoff date for general application, Commerce explained it did so in particular concern to forestall "gamesmanship, delay, and duty evasion" of scope inquiries that "undermines the effectiveness and remedial purpose of the AD/CVD laws." *Scope and Circumvention Final Rule,* 86 Fed. Reg. at 52329. Importantly, Commerce did not annul its authority to limit retroactive application in providing for an alternative date of suspension under its regulations. 19 C.F.R. §§ 351.225(l)(2)(iii)(B), (3)(iii)(B). So follows, Commerce's scope rule continues to recognize the significance of the Commerce imposed suspension of liquidation date, which involves the consideration of the significant impact on the business of U.S. importers.

Here, Commerce did not find fault in Pitts' request for an alternative, prospective suspension date. Commerce rather claimed it did not change the meaning of the scope and more so Pitts, as Petitioner, had reason to understand the scope language of the *Orders*. Appx2634-2635. Commerce's assertion on the purportedly clear state of the scope, and so notice, ring pretty hollow based on the record before the agency. Commerce issued multiple rounds of scope questionnaires, extended making a final scope ruling by the full 180 days (six-months), issued a preliminary scope determination, and conducted a scope hearing. Significantly, the Petitioner, the Coalition of the domestic producers, who crafted the scope language for the protection sought in enforcement of the *Orders*, reached an opposite conclusion on the meaning of the scope than the one reached by Commerce here. *See, e.g.*, Appx2596-2598. When Petitioner itself did not understand the meaning as Commerce has placed on the scope language, the record instead signals the inclusion of the Pitts chassis was with inadequate notice for even an **informed**

importer. Accordingly, and in accord with Commerce's regulation, merchandise should be subject to the imposition of AD and CVD only prospectively, following notice in the preliminary scope determination, or at the earliest, the date of initiation of the Commerce scope inquiry consistent with Commerce historical practice.

This Court should remand the determination and instruct Commerce to reformulate its ruling and instructions to state that the Pitts entries that were entered, or withdrawn from warehouse, for consumption during the period November 4, 2021 (the earliest retroactive date entries were instructed to be suspended), through September 15, 2023 (the preliminary scope determination date), or March 15, 2023 (the scope inquiry initiation date), are outside of the scope. Such instruction has the same effect as suspension of liquidation for entries made on or after the September 15, 2023, or the March 15, 2023 dates.

## H. Commerce's Scope Ruling Impermissibly Imposed AD and CVD on Non-Subject Country Subassemblies

Consistently, even if this Court concludes that Commerce's final scope ruling was supported by substantial evidence and in accordance with law, Commerce's determination on the imposition of AD and CVD is not. Specifically, Commerce exceeds its authority in applying the AD and CVD requirements to the entire finished chassis value. As is set out above, Commerce does not have statutory authority to include within the scope non-scope country components, including components produced in Vietnam and the value-added fabrication to the finished chassis in Vietnam. *See* 19 U.S.C. §§ 1671, 1673; *Global Commodity Grp.*, 709 F.3d at 1139. In this case, Commerce concedes the Vietnamese chassis manufacturer itself fabricates components in Vietnam. Appx2451. The fabrication of finished chassis in Vietnam, from start to finish, includes not only the running gear assembly or axle assembly and landing gear assembly, as focused on by Commerce. Commerce ignores, for one, the processing of raw steel into parts for

the chassis frame and landing gear parts. *See* Appx80708, Appx81191-81195. The *Final Scope Ruling* failed to account for self-produced component parts in Vietnam as well as non-subject country components. This Court should remand this matter with instructions that Commerce reverse its scope determination on imposition of AD and CVD on the entire finished chassis and to reformulate its ruling to impose AD and CVD only on the subject merchandise portion, and issue instructions in accord with the redetermination.

V.    **CONCLUSION**

    For the reasons set forth in this brief, Pitts respectfully requests this Court hold that Commerce's *Final Scope Ruling* was not supported by substantial evidence and was otherwise not in accordance with law. Pitts respectfully requests the Court find the Commerce scope determination be vacated and remand this matter to Commerce with instructions to issue a new determination consistent with the Court's decision.

Respectfully submitted,

/s/ Emily Lawson
Emily Lawson
Edmund W. Sim

APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.*
*dba Dorsey Intermodal*

Dated: August 21, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing contains 13,286 words, as computed by

Appleton Luff's word processing system (Word with Microsoft 365) inclusive of headings,

footnotes, and quotations exclusive of the table of contents and authorities, and certificate of

counsel, and counsel's signature block, and therefore complies with the maximum 14000-word

count limitations set forth in the Standard Chamber Procedures of the U.S. Court of International

Trade.


By:     /s/ Emily Lawson_____
        Emily Lawson

        *Counsel to Pitts Enterprises, Inc.*
        *dba Dorsey Intermodal*


Dated: August 21, 2024

THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |  |
|---|---|---|
| PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| COALITION OF AMERICAN CHASSIS MANUFACTURERS, | ) ) ) | Court No. 24-00030 |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER**

Upon consideration of Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal's Rule 56.2 Motion for Judgment on the Agency Record, the accompanying Brief in Support thereof, and all other papers and proceedings had herein, it is hereby:

**ORDERED** that Plaintiff's Rule 56.2 Motion for Judgement on the Agency Record is **GRANTED**; and it is further

**ORDERED** that the determination by the U.S. Department of Commerce ("Commerce") in an unpublished decision memorandum, Memorandum, from Dusten Hom, Int'l Trade Compliance Analyst, Off. I, AD/CVD Operations, to James Maeder, Deputy Assistant Secretary for AD/CVD Operations, Subject: Chassis and Subassemblies from the People's Republic of China: Final Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle and Landing

1

Court No. 24-00030

Gear Components (Jan. 10, 2024), is not supported by substantial evidence and is otherwise not

in accordance with law; and it is further

**ORDERED** that this action is remanded to Commerce to render a scope ruling

determination consistent with the opinion of this Court.

**SO ORDERED**.


Dated:_____ 2024        _____
         New York, New York                   Honorable Stephen Alexander Vaden, Judge