THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |  |
|---|---|---|
| PITTS ENTERPRISES, INC.<br>DBA DORSEY INTERMODAL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court No. 24-00030 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Emily Lawson
Edmund W. Sim

APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.
dba Dorsey Intermodal*

Dated: January 21, 2025

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 3

A.    The *Orders* Cover Manufactured Chinese Chassis and Subassemblies Thereof Not Chinese Components Alone ................................................................................ 3

B.    Chinese Components Alone Are Not In-Scope and Cannot Render Chassis from Vietnam Subject Merchandise ................................................................................. 5

1.    By Its Plain Language, The Scope Exclusion for Chinese Components Applies ............................................................................................................ 5

2.    Commerce's Scope Determination is Inconsistent with Interpretive (k)(1) Sources ......................................................................................................... 10

C.    Commerce Failed to Apply the Scope Legal Framework and Impermissibly Expands the *Orders* ............................................................................................. 12

1.    Defendant's Exhaustion Argument Fails and Commerce's Scope Ruling is Contrary to Law ........................................................................................... 12

2.    Commerce Failed to Support a Subject Chassis Finding ............................ 15

D.    Commerce's Determination on Inclusion of Finished Chassis from Vietnam for Imposition of AD and CVD is Unsupported by Substantial Evidence ................. 16

1.    Commerce Has Not Provided Fair Notice on AD and CVD Applicability ................................................................................................. 16

2.    The *Orders* Do Not Apply to Non-Chinese Merchandise ......................... 18

III.  CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Chaparral Steel Co. v. United States*,
    901 F. 2d 1097 (Fed. Cir. 1990) ................................................................. 18

*Corus Staal BV v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) ................................................................. 13

*Global Commodity Grp. LLC v. United States*,
    709 F.3d 1134 (Fed. Cir. 2013) ................................................................. 4

*LTV Steel Co. v. United States,*
    985 F.Supp. 95 (Ct. Int'l Trade 1997) ...................................................... 15

*Mid Continent Nail Corp. v. United States*,
    770 F. Supp. 2d 1372 (Ct. Int'l Trade 2011) ............................................ 9

*Mitsubishi Heavy Indus., Ltd. v. United States*,
    15 F.Supp.2d 807 (Ct. Int'l Trade 1998) .................................................. 6

*Mitsubishi Polyester Film, Inc. v. United States*,
    228 F. Supp. 3d 1359 (Ct. Int'l Trade 2017) ............................................ 7

*NTN Bearing Corp. v. United States*,
    74 F. 3d 1204 (Fed. Cir. 1995) ................................................................. 19

*Qingdao Taifa Grp. Co. v. United States*,
    637 F.Supp.2d 1231 (Ct. Int'l Trade 2009) .............................................. 15

*Rhone Poulenc, Inc. v. United States*,
    899 F. 2d 1185 (Fed. Cir. 1990) ................................................................ 19

*Saha Thai Steel Pipe Public Company Limited v. United States*,
    101 F. 4th 1310 (Fed. Cir. 2024) .............................................................. 9

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016) ..................................... 10, 16

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
    983 F.3d 487 (Fed. Cir. 2020) ................................................................. 17

*Trans Texas Tire, LLC v. United States*,
519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ........................................ 17

*Trans Texas Tire, LLC v. United States*,
519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021 ........................................ 17

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
716 F. 3d 1370 (Fed. Cir. 2013) ........................................ 15

**STATUTES**

19 U.S.C. § 1671 ........................................ 1, 3, 4

19 U.S.C. § 1671(a)(1) ........................................ 12

19 U.S.C. § 1671e(a)(2) ........................................ 9

19 U.S.C. § 1673 ........................................ 1, 4

19 U.S.C. § 1673(1) ........................................ 12

19 U.S.C. § 1673e(a)(2) ........................................ 9

19 U.S.C. § 1677j(b) ........................................ 12, 13

19 U.S.C. § 1677j(b)(1) ........................................ 13

19 U.S.C. § 1677j(b)(2) ........................................ 13

19 U.S.C. § 1677n ........................................ 3

28 U.S.C. § 1585 ........................................ 18

28 U.S.C. § 2637(d) ........................................ 13

**REGULATIONS**

19 C.F.R. § 351.225 ........................................ 9, 13

19 C.F.R. § 351.225(g) ........................................ 14

19 C.F.R. § 351.225(j) ........................................ 12, 16

19 C.F.R. § 351.225(k)(1) ........................................ 9

19 C.F.R. § 351.225(k)(1)(i) ........................................ 10

19 C.F.R. § 351.225(l)(2) ................................................................................... 17

19 C.F.R. § 351.225(l)(3) ................................................................................... 17

## ADMINISTRATIVE DETERMINATIONS

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
    *Antidumping Duty Order*,
    86 Fed. Reg. 36093 (Dep't of Commerce Jul. 8, 2021) ................................... passim

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
    *Countervailing Duty Order and Amended Final Affirmative*
    *Countervailing Duty Determination*,
    86 Fed. Reg. 24844 (Dep't of Commerce May 10, 2021) ............................... passim

Memorandum, from Dusten Hom, Int'l Trade Compliance Analyst, Off. I, AD/CVD Operations,
    to James Maeder, Deputy Assistant Secretary for AD/CVD Operations, Subject: Chassis and
    Subassemblies from the People's Republic of China: Final Scope Ruling on Pitts Enterprises,
    Inc. dba Dorsey Intermodal's Axle and Landing Gear Components (Jan. 10, 2024) ...... passim

## OTHER AUTHORITIES

Merriam-Webster.com Dictionary .................................................................... 8

Omnibus Trade Act of 1987, Report of the Senate Finance Committee,
    S. Rep. No. 71, 100th Cong., 1st Sess., at 101 (1987) ........................................... 14

*Regulations To Improve Administration and Enforcement of*
    *Antidumping and Countervailing Duty Laws,*
    86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20, 2021) ............................. 10, 14

## RULES

Rule 56.2 of the U.S. Court of International Trade ...................................................... 1

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## I.     INTRODUCTION

Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal ("Plaintiff" or "Pitts"), by and through undersigned counsel, hereby replies, pursuant to Rule 56.2 of the U.S. Court of International Trade, in support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record and brief dated August 21, 2024, ECF No. 24, ("Pl. Br."), to the response dated November 22, 2024 filed by Defendant United States to the motion, ECF No. 28, ("Def. Br."). This reply brief hereby incorporates by reference the statements required by Rule 56.2(c)(1) as presented in the Plaintiff's motion and initial brief.

This case presents the question, and the determining issue before this Court, of the treatment of subassembly components and whether Chinese components imported alone in separate, independent shipments are non-scope, excluded merchandise. In its initial brief, Plaintiff asserted that the plain language of the scope allows for no other interpretation. Pl. Br. at 19-27. The scope was defined during the initial investigation and set forth in the written scope order. *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Antidumping Duty Order*, 86 Fed. Reg. 36093 (Dep't of Commerce Jul. 8, 2021) ("*AD Order*") and *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 24844 (Dep't of Commerce May 10, 2021) ("*CVD Order*") (collectively "*Orders*"). The scope order provides: "Individual components entered and sold by themselves are not subject to the order…." *AD Order* at 36094*; CVD Order* at 24845*.* Plaintiff's position is that by law, components entered independently of in-scope *Chinese* chassis or subassemblies thereof are not in-scope. Pl. Br. at 16 *citing* 19 U.S.C. §§ 1671, 1673.

Commerce's scope ruling, finding the chassis from Vietnam subject merchandise, is unsupported by substantial evidence on the record, and otherwise not in accordance with law. *See* Memorandum, from Dusten Hom, Int'l Trade Compliance Analyst, Off. I, AD/CVD Operations, to James Maeder, Deputy Assistant Secretary for AD/CVD Operations, Subject: Chassis and Subassemblies from the People's Republic of China: Final Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle and Landing Gear Components (Jan. 10, 2024), ("*Final Scope Ruling*"). Appx2623-2636. Commerce ignored the statutory basis for antidumping ("AD") and countervailing duty ("CVD") orders and its own regulatory framework in the scope ruling. Defendant failed to address the determinations challenged by Plaintiff in any meaningful way often misconstruing the issues before the Court. In restating the *Final Scope Ruling* conclusion that imported Chinese components in separate, independent shipments are "unassembled subassemblies" and, therefore, "unfinished chassis", now within the scope of the *Orders*, the arguments presented by Defendant should be dismissed for the reasons discussed in Pitts' initial brief, and in further detail below.

Additionally, Commerce did not in the *Final Scope Ruling* articulate the components that constitute a covered subassembly (unfinished chassis), or the stated "other chassis components for other subassemblies" imported in Vietnam from China that purportedly underlie the scope ruling. Appx2629. Commerce did not explain the scope term unassembled is, by its common meaning, broader than importation of the parts making up a subassembly itself to now mean separate, independent shipments of individual component parts. This Court should not accept by what amounts to *post hoc* rationalizations of counsel for Commerce action. Nonetheless, Defendant's explanation is inadequate, regardless of when it was first raised. Commerce applied the wrong legal standard and in so doing, unlawfully expanded the

*Orders*' scope. In any event, substantial evidence does not support Commerce's application of the scope standard here. The *Final Scope Ruling* is unsupported and contrary to law.

## II.    ARGUMENT

### A.    The *Orders* Cover Manufactured Chinese Chassis and Subassemblies Thereof Not Chinese Components Alone

At the heart of this case is manufactured chassis. To reiterate, it is significant chassis are manufactured from steel raw materials for a trailer frame and numerous parts, and with individual component parts that are produced by third party suppliers and not the manufacturers of chassis themselves. Pl. Br. at 3 *citing* Appx80120-80122, Appx80232-80239. Chassis production operations involve taking raw materials (steel) to individual parts through the welding of the steel parts with beams for fabrication of sections of chassis frames, the joining of component parts, (self-produced and third party supplied), into subassemblies, and then uniting subassemblies, that is, assembling these subassemblies together of and for connection to the frame to form a finished chassis. Pl. Br. at 3-4 *citing* Appx80232.

It is this manufacture of chassis in the United States, and not component part production, for which Plaintiff Pitts, a member of the petitioning Coalition of American Chassis Manufacturers, sought relief from determined unfair trade practices of Chinese chassis, and the subassemblies of the Chinese chassis. The "{c}hassis can be imported either fully assembled or as multiple subassemblies to be assembled into a finished chassis in the United States…." Appx80244. While the Commerce scope ruling focus is on individual Chinese components, the subject subassemblies are imported in the United States, as modular units ready to assemble *with* Chinese subassemblies into the subject Chinese chassis. *See id.* at 4; *see also Orders.*

Commerce maintains AD and CVD orders to provide relief to American companies and industries impacted by unfair trade. 19 U.S.C. §§ 1671-1677n. As explained in detail in Pitts'

initial brief, Commerce derives its authority to issue orders from the unfair trade statute. *Id.* It is well-settled that both the AD and CVD statutory provisions require Commerce finding dumping (AD) and subsidizing (CVD) for a class or kind of merchandise from a particular country. 19 U.S.C. §§ 1671, 1673. *See* Pl. Br. at 16 *citing Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1139 (Fed. Cir. 2013). The fundamental predicate for imposition of AD and CVD under all orders, therefore, is that the merchandise is from the particular country where the unfairly traded merchandise are manufactured. Contrary to Commerce's conclusion here, other imports, even of the same class or kind as merchandise produced in a country subject to the order, plainly are not in-scope merchandise. The inclusion unlawfully expands scope orders outside legal bounds.

It is under this statutory authority that the scope is defined. For merchandise produced in a third country prior to import in the United States, Commerce, therefore, must determine first if the product exported to the third country is the type of merchandise covered by the order. *See* Pl. Br. at 18; *see also* Appx81050-81061. Here, Commerce issued the *Orders* to cover Chinese chassis and subassemblies, and not from any country, and not Vietnam. Importantly, by plain language, each chassis subassembly is comprised of numerous components and not Chinese components entered independently of in-scope Chinese chassis or subassemblies. *AD Order* at 36094; *CVD Order* at 24845. It goes without saying the target of the *Orders* is not components cemented by the fact, as explained in the initial investigation, the chassis frame is only used in chassis production, while many components, including axles and landing gear legs, and also air brakes, suspension, etc., are parts that could be used in other types of trailers through connection onto those other trailers. *See* Pl. Br. at 3 *citing* Appx80228. These individual subassembly components alone are not subject even where these components are Chinese.

4

B.     **Chinese Components Alone Are Not In-Scope and Cannot Render Chassis from Vietnam Subject Merchandise**

1.     **By Its Plain Language, The Scope Exclusion for Chinese Components Applies**

The parties agree that Chinese components, including the component axle and landing gear leg component, themselves entered Vietnam alone in separate, independent shipments. Commerce's ruling hinges on a definition of "unassembled" subassemblies that disregards the individual components scope exclusion to render it meaningless. The conclusion the Chinese components are subject merchandise at the time of import in Vietnam is not supported and contrary to law. The Defendant continues to advance the same flawed conclusion of the Commerce *Final Scope Ruling* defining separately shipped components entered in Vietnam "unassembled" subassemblies and, thereby, subject "unfinished chassis", Def. Br. at 17-20, but Defendant also rests upon certain conclusions which Commerce did not base its decision.

Concerning the latter, Defendant first asks the Court to confirm Commerce's conclusion from the scope context. Defendant claims that the importation of additional components, identified as individual components used to create axle and landing gear subassemblies,[1] is support for the Commerce scope ruling. Def. Br. at 17. While the Commerce ruling also relied on additional Chinese components to the component axles and landing gear leg components imported in Vietnam, Commerce did not explain its rationale in terms of scope context, *i.e.*, in consideration of surrounding language, but by specific plain language, and markedly Commerce did not specify the certain components that constitute the subject unfinished chassis that underlie

---

[1] The scope explicitly lists four general categories of subassemblies (*i.e.*, chassis frames, running gear/axle assemblies, landing gear assemblies, and connection assemblies), and explains the difference between non-scope components and subject subassemblies. Pl. Br. at 4 *citing AD Order* at 36094 and *CVD Order* at 24845. *See also* Appx80172- Appx80173.

its ruling. *See* Pl. Br. at 21 *citing* Appx2451, Appx2633; *see also id*. at 26. Defendant, and not

Commerce, however, specifies the component imports introduced for the first time in its brief

before this Court (*compare* Appx2451, Appx2633 (public documents), *with* Def. Br. at 17

(business proprietary version)), to put forward Defendant's claimed rationale, its support for the

Commerce "unassembled" subassembly definition, that it is the identification that showed "such

components, when imported to be assembled together, must be covered by the scope." Def. Br.

at 17. However, this reading is wrong by plain language of the scope, read as a whole. The

scope, in fact, provides Chinese-origin components are explicitly excluded merchandise unless

entered with or for Chinese-origin chassis, finished or unfinished, a determination not found in

Commerce's ruling and unsupported. *AD Order* at 36094; *CVD Order* at 24845.

Defendant's statement distorts Commerce's scope determination. The Commerce

determination defined the entry, not use, of Chinese components in separate, independent

shipments to mean unassembled subassemblies, and thereby the covered unfinished chassis

merchandise. Appx2625-2634. Regardless of Defendant's misstatement, the underlying record

remains silent on this key explanation Defendant now proffers. The Court should not accept

Defendant's, and not Commerce's, ensuing analysis. "'{T}he courts may not accept appellate

counsel's *post hoc* rationalizations for agency action … It is well-established that an agency's

action must be upheld, if at all, on the basis articulated by the agency itself.'" *Mitsubishi Heavy

Indus. v. United States*, 15 F.Supp.2d 807, 824 (Ct. Int'l Trade 1998)(citation omitted).

Importantly, as explained in Pitts' initial brief, Commerce's definition of "unassembled"

subassemblies is not supported by plain language of the scope or stated rationale from the initial

investigation record. The definition is not supported set against the individual components

exclusion. The definition of the scope term instead was a conclusion Commerce made post-

*Orders*. Pl. Br. at 9, 21-24. It is Chinese subassemblies imported to assemble together and not Chinese components alone that are subject. In addition, Commerce also presented no counter-definition to the "unassembled" common meaning as the collection of parts together, and not the entry, as at issue, of components in separate, independent shipments at different times and over time, to then be a subject unassembled subassembly. *Compare* Pl. Br. at 23 *citing* Appx2514 (quoting Merriam-Webster.com Dictionary and Dictionary.Cambridge.org Dictionary), *with Final Scope Ruling*, Appx2623-2636.

In its response, Defendant balks at the common meaning definition of "unassembled" supplied by Pitts but its counter-definition offered is not for the specific scope word at issue. It is instead for the root form "assemble." Def. Br. at 17-18. Again, focused on individual components, Defendant then claims that to "'assemble'" components does not require that such components enter together, as in a kit." *Id*. at 18. Defendant's claim thus presupposes that there is a grouping of components in the condition to be assembled into the definitive subassembly. Commerce, however, provided no discussion on what the subassembly is at import or explained how the separate, independent shipments constituted a subassembly to reconcile with the exclusion of individual components.

Crucially, the actual scope language relied upon by Commerce to find subject unfinished chassis (unassembled subassemblies) is: "'importation of any of these subassemblies, whether assembled or *unassembled*, constitutes an unfinished chassis…." Appx2629 (emphasis added); *see also AD Order* at 36094; *CVD Order* at 24845. In grammatical terms,[2] and in applying

---

[2] *See, e.g., Mitsubishi Polyester Film, Inc. v. United States*, 228 F. Supp. 3d 1359, 1372 n.15 (Ct. Int'l Trade 2017)(recognizing the Government's grammatical analysis of scope language in a Commerce scope ruling to properly construe terms and effect on scope language).

Commerce's focus on individual components, the actual scope term "unassembled", an adjective, (*see* Appx2514), and also "assembled", thus, modify "subassemblies", the noun, by then directly describing the subassemblies and providing information about the subassembly state or condition, in an assembled or unassembled state. Defendant's offered meaning of "assemble", "'to fit together the parts of' some object'", Def. Br. at 17-18, ignores the "past tense" transformation in the word's meaning, when ending with the suffix "ed", to a new word, and importantly the description in a completed state or condition. The suffix "ed" added to "assemble" is "used to form the past tense of regular weak verbs." ed, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/ed (listed under verb suffix) (last accessed Jan. 20, 2025). Accordingly, in applying the proper temporal meaning to the definition of "assembled" subassemblies, as offered by Defendant, is then all parts comprising a subassembly, the object, fitted together at import. In opposite "un" as a prefix before "assembled", *i.e.*, "unassembled", thus, consists of all parts to put together the subassembly at import, and not a separate, independent component part entered alone as Commerce claims. The prefix "un" is commonly understood to mean "opposite of : contrary to", indicating the opposite action of assembled. un, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/un (last visited Jan. 20, 2025) (listed under prefix (1)). Defendant does not provide a coherent counter-definition to set against the specific, common definition Pitts provides, a meaning of unassembled subassemblies, supported by the rules of English grammar, which importers could be expected to understand. It is also the meaning understood by Petitioner, which Pitts was a member. *See* Pl. Br. at 31-32.

In addition, Defendant furthered no plain language support for Commerce's scope definition in relying on a now stated "purpose" for the components exclusion, as first introduced

by Commerce, post-*Orders*, in the *Final Scope Ruling*, (*see* Pl. Br. at 27), "'to ensure that individual chassis components that have other uses. . . would not be considered subject merchandise.'" Def. Br. at 9, 19. Commerce's statement is not grounded in plain language or in reliance on an interpretative source but establishes Commerce's attempt to define unassembled subassemblies is not simply an interpretation, but a prohibitive alteration of the scope ex post facto. *See Mid Continent Nail Corp. v. United States*, 770 F. Supp. 2d 1372, 1380 (Ct. Int'l Trade 2011)(explaining prohibition against altering scope language ex post facto)(citation omitted).

Defendant's remaining attempted defense is only describing the elements of the scope in sequence, elements common to all scopes, and does not support Commerce's scope definition here. Def. Br. at 19-20. Indeed, every order first contains a narrative description of what defines the merchandise within the scope. 19 U.S.C. §§ 1673e(a)(2), 1671e(a)(2) (AD and CVD orders include a description of the subject merchandise); *see also* 19 C.F.R. § 351.225 ("scope rulings" clarify whether a product meets the "description of the merchandise subject to the scope"). A subsequent exclusion section then lists the merchandise that would have been covered by the preceding language describing subject merchandise, but for the exclusion or is merchandise specifically identified as not in-scope. *See* 19 C.F.R. § 351.225(k)(1); *see also Saha Thai Steel Pipe Public Company Limited v. United States*, 101 F. 4th 1310, 1324 (Fed. Cir. 2024)(providing scope terms encompass what is not in-scope).

Defendant merely restating that the scope provides that subassemblies are made up of numerous components, and subassemblies, assembled or unassembled, constitute subject unfinished chassis, does not support Commerce's conclusion, as explained above, that unassembled subassemblies are defined as Chinese components imported alone in separate, independent shipments. Defendant's argument assumes Commerce's conclusion without support.

Repetition of an assertion does not make it so. It does not provide support for how Commerce's scope ruling defined unassembled subassemblies, and instead, impermissibly modify the *Orders*.

Under the Commerce construction the scope term "{i}ndividual components entered and sold by themselves are not subject to the order" could, thus, be dropped without any change, and effective loss of meaning. *See* Pl. Br. at 26-27. The ruling contradicts the canon of construction observed by this Court against scope interpretations that render scope language superfluous. Pl. Br. at 26-27 *citing Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1352 (Ct. Int'l Trade 2016) (citation omitted).

## 2.   Commerce's Scope Determination is Inconsistent with Interpretive (k)(1) Sources

Defendant, in its brief, and Commerce's *Final Scope Ruling* inconsistently address Commerce's consideration of (k)(1) sources. In citing Commerce's regulation, 19 C.F.R. § 351.225(k)(1)(i), Defendant provides there is "no provision either requiring or prohibiting the analysis of additional (k)(1) factors". Def. Br. at 21. Defendant demonstrates an incomplete understanding of Commerce's regulatory framework in the context of the Commerce ruling based on plain language. Commerce explained its scope regulation in force here demotes primary interpretive sources. Pl. Br. at 8 n. 3, 27-28. At issue, finding the plain language dispositive, according to Commerce, Appx2628, is "using no interpretive tools whatsoever." *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52300, 52323 (Dep't of Commerce Sept. 20, 2021)("*Scope and Circumvention Final Rule*")(Preamble).

The *Final Scope Ruling* states Commerce's counter reliance on (k)(1) factors is to clarify alleged scope misrepresentations. Appx2629-2630. Defendant advanced no explanation or argument for Commerce's decision to state that a (k)(1) analysis was not necessary while also

relying on (k)(1) sources. However, Commerce's consideration of (k)(1) interpretive sources is characterized, the record evidence undermines Commerce's (k)(1) analysis and Commerce's ruling is not supported. The (k)(1) factors confirm that the Chinese components are non-scope merchandise and cannot render the Vietnamese chassis imports in the United States subject.

The evolution of the scope language, from the petition scope clarification through Commerce preliminary and final scope determinations to the written scope order (Pl. Br. at 28-29), and not early stage documents as Defendant asserts, Def. Br. at 22, confirm Chinese components alone are not in-scope and the scope ruling unlawfully expands the *Orders*. Defendant acknowledges the initial investigation documents establish individual components are not in-scope. Def. Br. at 22. Contrary to Defendant's assertion Commerce's reliance on the inclusion of the phrase "or for further assembly with … {an} unfinished chassis", does not support the conclusion the Chinese individual components entered alone are subject unfinished chassis. Discussed *supra*, to be supported Commerce's conclusion must presuppose the component is an unassembled subassembly and thereby unfinished chassis. Here, Defendant's attempt to support Commerce's conclusion by using the conclusion itself is not supported under the substantial evidence standard of review.

Underscoring Commerce's error in the *Final Scope Ruling* the (k)(1)(i) sources show both that subassemblies were defined separate from non-scope components, in accord with Petitioner intent, and that within the robust discourse on Chinese components, no definition of individual Chinese components to mean unassembled subassemblies. *See* Pl. Br. at 31-32. If Commerce intended to define unassembled subassemblies to mean, and thus include, components imported in separate independent shipments, the time to establish that was during the initial investigation. It was not. This position, Petitioner confirmed in this scope proceeding.

11

**C.    Commerce Failed to Apply the Scope Legal Framework and Impermissibly Expands the *Orders***

Commerce points to language in the *Orders* providing for the coverage of already subject merchandise that is processed in a third country as support for its erroneous plain language ruling. The portion of the *Orders* states that "processing of finished and unfinished chassis and components…in a third country does not remove the product from the scope." *See* Def. Br. at 15; *see also id*. at 18. Commerce's reference to, and reliance on, the scope order third country processing language is a mis-reading of the *Orders* and misses the point. This language has meaning only if the processing is minor or insignificant so to not otherwise remove the merchandise from the scope if performed in a non-scope country. As detailed in Plaintiff's initial brief, the third country processing language merely preserves the in-scope country nature of the product and origin. It does not expand the *Orders* to reach products not covered by the existing *Orders*, and does not (and cannot), expand the reach of the *Orders*. *See* Pl. Br. at 17, 34-35, 40.

The starting point for Commerce's analysis in the scope ruling is, thus, contrary to law and not supported by substantial evidence. The scope language describes products at the time of import in the United States. Here, the finished chassis. The imposition of AD and CVD is on the merchandise as imported, or sold, *in the United States*. *See* Pl. Br. at 33 *citing* 19 U.S.C. §§ 1673(1), 1671(a)(1). The *Orders* do not cover Vietnamese finished chassis and Commerce's conclusion here that the finished chassis are not Vietnamese without any analysis expands the *Orders*, violates 19 U.S.C. § 1677j(b), and Commerce regulations, 19 C.F.R. § 351.225(j), and is therefore, unlawful and unsupported.

**1.    Defendant's Exhaustion Argument Fails and Commerce's Scope Ruling is Contrary to Law**

Plaintiff explained in its initial brief the question whether Chinese components used to

produce a chassis in a third country evade the existing *Orders* needs to be answered through consideration of Commerce circumvention criteria and is not supported in the scope inquiry requested by Pitts. *See* 19 U.S.C. § 1677j(b) (authorizing Commerce to include within the scope of an order merchandise "completed or assembled in another foreign country from merchandise which is subject to such order … or is produced in" the in-scope country). Commerce itself finds and applies the scope ruling to finished chassis imports. Appx2629.

Without a statutory citation, and so Plaintiff is left to presume under 28 U.S.C. § 2637(d),[3] Defendant argues this Court should not consider Pitts scope ruling with the circumvention statutory requirements, (*see* Pl. Br. at 33, 35 *citing* 19 U.S.C. § 1677j(b)(1)-(2)), because Pitts failed to raise it before Commerce in the underlying scope proceeding. Def. Br. at 26. Initially, the application of "exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade." *Corus Staal BV v. United States,* 502 F.3d 1370, 1381 (Fed. Cir. 2007); *see also* 28 U.S.C. § 2637(d). As provided below, invoking the exhaustion requirement in this case would be inappropriate.

Here, Pitts requested Commerce clarify in a scope ruling, in accord with Commerce administrative procedures under 19 C.F.R. § 351.225, the individual Chinese origin components entered in Vietnam were not a product that fell within the definition of merchandise covered by the *Orders* or render the finished chassis imports in the United States subject to the existing *Orders*. *See* Pl Br. at 7. It was Commerce itself that introduced circumvention through "evasion" as justification for the *Final Scope Ruling*, and not before the *Final Scope Ruling*. Specifically, Commerce, and Defendant in its response, both claim the legal basis for the *Final Scope Ruling* is because finding the Chinese components imported in separate independent shipments outside

---

[3] Defendant does not claim an exhaustion requirement here was regulatory in nature.

the scope would be "*introducing* a significant *loophole* for *evasion* of the *Orders*…." Pl. Br. at 36

*citing* Appx2633 (emphasis added); *see also* Def. Br. at 18.

Plainly "introducing" a "loophole for evasion of the *Orders*" is not a finding based on

merchandise already covered by an existing order, the question before Commerce in the scope

ruling. This is instead the exact language Congress used in proposing the addition of the

circumvention law. Congress stated:

> parties subject to these orders have been able to *evade* the order by
> making slight changes in their method of production or shipment of
> merchandise destined for consumption in the United States. As a
> result, the existence of these '*loopholes*' has seriously undermined
> the effectiveness of the remedies provided by the antidumping and
> countervailing duty proceedings….

Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 71,

100th Cong., 1st Sess., at 101 (1987) (emphasis added); *see also* Scope and

Circumvention Final Rule, 86 Fed. Reg. at 52302 (noting Congress was concerned with

"'loopholes.' *i.e.*, foreign companies evading orders by making slight changes in their

method of production" in enacting the circumvention law).

While Commerce in the underlying scope proceeding, per § 351.225(g), issued a

preliminary scope ruling, nowhere in the preliminary determination is evasion provided as

stated justification. *Compare* Appx2451-2452, the Commerce preliminary scope ruling (scope

analysis amounting to a page of the ruling), *with* Appx2633, the *Final Scope Ruling*. Because

Commerce did not provide such stated rationale for its scope position until the *Final Scope*

*Ruling* Pitts did not have a full and fair opportunity to raise the issue before Commerce. This

Court has long held that a party may seek judicial review of an issue that it did not brief at the

administrative level if Commerce did not address the issue until its final decision because in

such a circumstance the party would not have had a full and fair opportunity to raise the issue at

14

the administrative level. *See LTV Steel Co. v. United States,* 985 F.Supp. 95, 120 (Ct. Int'l Trade

1997)(citation omitted); *Qingdao Taifa Grp. Co. v. United States,* 637 F.Supp.2d 1231, 1237

(Ct. Int'l Trade 2009)(citation omitted); *see also Yangzhou Bestpak Gifts & Crafts Co., Ltd. v.*

*United States*, 716 F. 3d 1370, 1381 (Fed. Cir. 2013)(recognizing where the party "'had no

opportunity'" to raise the issue before the agency is an exception to the exhaustion

requirement)(citation omitted). Thus, contrary to Defendant's claim, invoking the exhaustion

requirement in this case would be inappropriate. Commerce cannot support the scope ruling in

ignoring the statutory analytical steps required to make a circumvention determination when the

stated basis for the ruling is to prevent evasion of the *Orders*. *See* Pl. Br. at 36.

### 2.    Commerce Failed to Support a Subject Chassis Finding

At the same time third country processing language cannot enlarge the scope, it does not

support a presumption that a production scenario transforming products in a non-scope third

country, into an entirely new product, is subject. Defendant recognizes substantial transformation

is the rule, entailing consideration of numerous factors, by which Commerce analyzes whether

processes performed to merchandise in a country "are of such significance as to require that the

resulting merchandise be considered the product of the country in which the transformation

occurred", Def. Br. at 24-25, but Commerce just stated the manufacturing in Vietnam was not.

> THACO's {, the Vietnamese chassis manufacturer, } fabrication of
> chassis components, welding, painting, assembly, inspection, and
> packing of chassis components and subassemblies do not remove
> the ultimate product, a finished assembled Chinese chassis, from the
> scope of the *Orders*.

Appx2629. A Commerce statement the individual components were merely processed to a

finished chassis in Vietnam as opposed to substantially transformed is not a determination based

upon substantial evidence or otherwise in accordance with law.

Defendant's argument fails both legally and factually. Commerce ignores its regulatory framework in finding 19 C.F.R. § 351.225(j) factors unnecessary, and the voluminous record, including the U.S. Customs and Border Protection on-site verification report, documenting the fabrication in Vietnam of finished chassis also from raw materials for self-produced chassis frames and component parts in Vietnam, and non-subject country components. *See* Pl. Br. at 38-39. The *Final Scope Ruling* evidences a complete failure to consider the nature of the product in the scope inquiry and failure to reasonably reflect upon the information contained in the record and grapple with record evidence – disregarding reasoned decision-making. It is well-established that "'{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight,'" and failure to do so leaves the ruling unreasonable. *See, e.g., Shenyang*, 146 F. Supp. 3d at 1352 n.148 and 149 (citation omitted).

**D.    Commerce's Determination on Inclusion of Finished Chassis from Vietnam for Imposition of AD and CVD is Unsupported by Substantial Evidence**

**1.    Commerce Has Not Provided Fair Notice on AD and CVD Applicability**

As Plaintiff submitted in its initial brief, further detailed above, arguendo assuming the Chinese components that entered Vietnam in separate, independent shipments alone are subject unfinished chassis and render the chassis from Vietnam subject, the scope order and record documents, leave no doubt that this scope definition – deeming components in separate, independent shipments subject – was made first in this scope ruling. Appx2451-2452. It follows, no interested party could know of Commerce's reasoning on this issue of scope until the scope proceeding, and in preliminary ruling here. Correspondingly, AD and CVD should not apply until that ruling or, at the earliest, the commencement of the inquiry. Pl. Br. 44. Reviewing courts having consistently held that the "assessment of retroactive duties…is…unlawful" without

16

"adequate notice" of potential AD and CVD applicability. See Pl. Br. at 40-41 citing *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-1288 (Ct. Int'l Trade 2021) and *Trans Texas Tire, LLC v. United* States, 519 F. Supp. 3d 1289, 1304-1305 (Ct. Int'l Trade 2021). "This notice requirement is designed to avoid unfairness to importers." *See* Pl. Br. at 41 *citing Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 494 (Fed. Cir. 2020) (demanding notice to importers of product coverage in a Commerce circumvention proceeding expanding the scope order). Defendant attempts to distinguish the court holdings on unlawful application of retroactive AD and CVD without fair warning, urging the decisions singularly applicable to initial investigations. Def. Br. at 29. Defendant, however, does not further support those principles of notice and fairness, recognized by the courts, permits this distinction to be drawn here. In fact, Defendant and Commerce do not dispute that Commerce may impose an alternative, prospective date of suspension of liquidation under Commerce regulations, §§ 351.225(l)(2)-(3). *Id*. Commerce denied the alternative, prospective date in the underlying scope proceeding based on the finding Pitts did not establish the "appropriateness" of the date. Appx2635. The Commerce stated rationale is Pitts, as Petitioner, "had reason to understand and be aware of the scope language of the *Orders* because Pitts has been an active participant since the initiation of the investigations". Appx2635. Commerce made a counterfactual reading of the record, and then supported its determination with that counterfactual reading. Throughout the scope proceeding Petitioner, in fact, affirmatively stated it did not understand the scope order as Commerce attributed to Petitioner. Pl. Br. at 43 *citing*, *e.g.*, Appx2596-2598. Commerce's stated determination against the alternative, prospective date is unsupported and unreasonable.

The Commerce imposed suspension date instructs when merchandise is considered to be subject in the first instance, and that the suspension of liquidation by Commerce is an action with

a significant impact on the business of U.S. importers. Pl. Br. at 42. Congress has vested this Court with "all the powers in law and equity" of a district court of the United States, 28 U.S.C. § 1585, and fundamental principles of equity would be well served by consideration of the alternative, prospective date of suspension in the context of this scope ruling. Accordingly, Pitts submits that the Court should remand the case to Commerce with directions to reformulate its ruling and accompanying instructions to U.S. Customs and Border Protection prospectively.

### 2.    The *Orders* Do Not Apply to Non-Chinese Merchandise

It is uncontested that the chassis from Vietnam were made up of certain non-Chinese components, and including components produced in Vietnam, and by value-added fabrication to the finished chassis in Vietnam. *See* Pl. Br. at 44 *citing* Appx2451. Commerce's purported reason for applying AD and CVD to non-Chinese components is the language in the scope that "{p}rocessing…in a third country…does not remove the product from scope." *See* Def. Br. at 31 *citing* Appx2624. The "product" referenced in scope language text, however, is the product from China. The scope does not provide, nor would it make sense to apply AD and CVD to non-Chinese components because they were combined with Chinese components in a third country. If Commerce can apply AD and CVD on a chassis from Vietnam produced from components from China, it can apply such AD and CVD only to the components from China. It cannot apply AD and CVD from the *Orders* on goods from China to components produced outside of China and never imported into China.

Further, the expansion of AD and CVD to non-scope country merchandise is inapposite to the remedial purpose of the AD and CVD laws and is otherwise not in accord with law. The courts have long recognized the principles that AD and CVD laws are remedial, not punitive, *Chaparral Steel Co. v. United States*, 901 F. 2d 1097, 1103-1104 (Fed. Cir. 1990) (noting that AD

and CVD were intended to be remedial), and that the goal of the AD law is to calculate dumping margins "as accurately as possible." *Rhone Poulenc, Inc. v. United States*, 899 F. 2d 1185, 1191 (Fed. Cir. 1990). Likewise, and accordingly, in collecting duties, the Government is entitled to the amount of dumping in which the subject imports have engaged, no more. *See, e.g., NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1208 (Fed. Cir. 1995).

## III.    CONCLUSION

For the reasons set forth in this and the initial brief, Pitts respectfully requests that this Court hold that Commerce's *Final Scope Ruling* is not supported by substantial evidence and otherwise not in accordance with law. Pitts respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully submitted,


/s/ Emily Lawson
Emily Lawson
Edmund W. Sim
APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
(206) 357-8522
**
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.
dba Dorsey Intermodal*

Dated: January 21, 2025

19

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing contains 5,650 words, as computed by Appleton Luff's word processing system (Word with Microsoft 365) inclusive of headings, footnotes, and quotations exclusive of the table of contents and authorities, and certificate of counsel, and counsel's signature block, and therefore complies with the maximum 7,000-word count limitations set forth in the Standard Chamber Procedures of the U.S. Court of International Trade.

By:    /s/ Emily Lawson

Emily Lawson

*Counsel to Pitts Enterprises, Inc.*
*dba Dorsey Intermodal*

Dated: January 21, 2025