Slip Op. 25-133

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL,** | |
| **Plaintiff,** | Before: Claire R. Kelly, Judge |
| **v.** | Court No. 24-00030 |
| **UNITED STATES,** | |
| **Defendant.** | |

### Opinion and Order

[Remanding the United States Department of Commerce's final scope determination of the antidumping and countervailing duty orders for certain chassis and subassemblies thereof from the Peoples' Republic of China.]

Dated: October 8, 2025

Emily Lawson, Edmund Walter Sim, and Kelly Alice Slater, Appleton Luff Pte Ltd. of Washington and Washington, D.C., for Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal.

Kara Marie Westercamp, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, of Washington D.C., for Defendant United States.  On the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director.  Of Counsel was Benjamin W. Juvelier, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge:  The case involves scope language which both Plaintiff and Defendant contend has a plain meaning.  At issue is the extent to which Chinese chassis components are covered by the plain meaning of the language of certain antidumping and countervailing duty orders.  See Certain Chassis and

Court No. 24-00030                                                                 Page 2

Subassemblies Thereof from the Peoples' Republic of China: Countervailing Duty Order, 86 Fed. Reg. 24,844 (Dep't of Commerce May 10, 2021) ("CVD Order"); Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order, 86 Fed. Reg. 36,093 (Dep't of Commerce July 8, 2021) ("AD Order") (collectively, "the Orders"). The U.S. Department of Commerce ("Commerce") concludes, and the Defendant argues that the language's plain meaning captures all Chinese components which ultimately become incorporated into a chassis. Defendant's Response ECF No. 28, Nov. 22, 2024, ("Def. Resp.") at 16, 18, 20, 25, 31. Pitts Enterprises, Inc. dba Dorsey Intermodal ("Pitts" or "Plaintiff") contends that the plain meaning of the Orders excludes Chinese components unless imported with a Chinese chassis. Plaintiff's 56.2 Mot., ECF No. 24, Aug. 21, 2024, ("Pl. 56.2 Mot.") at 1, 2, 11, 12, 21, 26, 28, 32. The plain meaning of the language of the Orders does not support Commerce's determination and therefore the matter is remanded to Commerce. Final Scope Ruling at 6–7, APPX 2628 (Jan. 10, 2024).

## BACKGROUND

On May 10, 2021, Commerce published the CVD Order and on July 8, 2021, the AD Order covering certain chassis and subassemblies from China. The Orders provide in pertinent part:

> The merchandise covered by this order consists of chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled . . . .
>
> Subject merchandise includes, but is not limited to, the following subassemblies: Chassis frames, or sections of chassis frames, including

kingpin assemblies, bolsters consisting of transverse beams with locking or support mechanisms, goosenecks, drop assemblies, extension mechanisms and/or rear impact guards; Running gear assemblies or axle assemblies for connection to the chassis frame, whether fixed in nature or capable of sliding fore and aft or lifting up and lowering down, which may or may not include suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels; Landing gear assemblies, for connection to the chassis frame, capable of supporting the chassis when it is not engaged to a tractor; Assemblies that connect to the chassis frame or a section of the chassis frame, such as, but not limited to, pintle hooks or Btrains (which include a fifth wheel), which are capable of connecting a chassis to a converter dolly or another chassis.

Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of this order.

Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: Hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.

Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.

> Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of several different types of subassemblies. Within each subassembly there are numerous components that comprise a given subassembly.

AD Order at 36,094; see also CVD Order at 24,845.

On October 25, 2022, Pitts received a notice that CIMC Intermodal Equipment LLC, dba CIE Manufacturing ("CIE"), a Chinese chassis exporter, had alleged that Pitts was importing subject merchandise, i.e., subassemblies and components produced in China, in violation of the Enforce and Protect Act ("EAPA"). See Pitts Scope Application Exhibit 18.2 "Customs Letter re Notice of Initiation of Investigation and Interim Measures – EAPA Case Number 7711" at 4, APPX 1608 (Oct. 25, 2022). In response to CIMC's allegation, on February 13, 2023, Pitts sought a scope ruling to determine whether chassis from Vietnam containing Chinese-origin axle components and landing gear leg components are outside the scope of the Orders.[1] Pitts Scope Application at 1, APPX 80040 (Feb. 13, 2023). Pitts asked Commerce "to confirm that chassis from Vietnam containing Chinese origin axle components and landing gear leg components are not products encompassed within the scope of the AD and CVD orders on chassis and subassemblies thereof from the

---

[1] On January 20, 2023, Commerce denied Pitts' scope application originally submitted on December 22, 2022, because the product description did not clearly distinguish individual components from subassemblies, and requested certain documents submitted as part of an EAPA investigation. Pitts Scope Application Rejection at 2, APPX 1019 (Jan. 20, 2023).

People's Republic of China." Id. at 2, APPX 80041. On February 28, 2023, CIE filed comments in response to Pitts' scope ruling request. CIE Response at 1, APPX 80939 (Feb. 28, 2023). On March 6, 2023, Pitts filed a rebuttal response to CIE's comments. Pitts Comments on Scope Clarification Request at 1, APPX 80983 (Mar. 6, 2023).

On March 15, 2023, Commerce initiated the scope inquiry. Commerce Scope Initiation Memo at 1, APPX 1993 (Mar. 15, 2023). On March 23, 2023, Commerce requested that Pitts provide a list of chassis components that THACO, its Vietnamese chassis supplier, purchased from China and Pitts responded on April 6, 2023. Commerce Supplemental Questionnaire at 1, APPX 81062 (Mar. 23, 2023); Pitts Questionnaire Response at 1, APPX 81066 (Apr. 6, 2023).

On September 15, 2023, Commerce issued its Preliminary Scope Ruling, finding that the scope of the Orders include Pitts' imported chassis from Vietnam containing Chinese-origin axle and landing gear components. Prelim. Scope Ruling at 1–9, APPX 2443–52 (Sept. 15, 2023). On September 29, 2023, Pitts submitted a request for adoption of an alternative date for the suspension of liquidation. Pitts Letter to Commerce re Alternative Suspension Date at 1, APPX 81893 (Sept. 29, 2023). On January 10, 2024, Commerce published its Final Scope Ruling finding that the scope of the Orders includes Pitts' imported finished chassis containing Chinese-origin axle and landing gear components. Final Scope Ruling at 1, APPX 2623. Pitts brought this action on February 6, 2024. Summons, ECF No. 1, Feb. 6, 2024. On August 21, 2024, Pitts filed a 56.2 motion for judgment on the agency record. Pl. 56.2

Mot., ECF No. 24, Aug. 21, 2024.  On November 11, 2024, Defendant filed its response to Plaintiff's motion.  Def. Resp. ECF No. 28, Nov. 11, 2024.  On January 1, 2025, Pitts filed its reply to Defendant's response.  Plaintiff's Reply ("Pl. Reply"), ECF 32, Jan. 1, 2025.  On August 14, 2025, the Court heard oral arguments.  ECF No. 43, August 14, 2025.

## JURISDICTION AND STANDARD OF REVIEW

This Court exercises jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) (2018) and 28 U.S.C. § 1581(c) (2018).  The Court may review determinations by the administrating authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an antidumping or countervailing duty order.  19 U.S.C. § 1516a(a)(2)(B)(vi).  The Court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Crawfish Processors Alliance v. United States, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court reviews the record as a whole made before the agency and may not supply a reasoned basis for the agency's action that the agency itself has not given.  See 19 U.S.C. § 1516a(b)(1)–(2); SEC v. Chenery Corp., 332 U. S. 194, 196 (1947).  The Court will nevertheless "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

## DISCUSSION

Plaintiff claims that by finding finished chassis from Vietnam with Chinese components to be subject merchandise, Commerce unlawfully expands the scope of the Orders. Pl. 56.2 Mot. at 2. Plaintiff argues this unlawful expansion of the Orders results from Commerce's (1) ignoring the plain scope language of the Orders, Pl. 56.2 Mot. at 18–27; (2) unlawful (k)(1) analysis, Id. at 27–32; and (3) lack of a circumvention or substantial transformation analysis. Id. at 32–40. Separately, Pitts contends Commerce made its scope determination retroactively, Pl. 56.2 Mot. at 40–44, Pl. Reply at 16–18, and imposed duties on the entire value of the finished merchandise, which in effect imposed AD and CVD on merchandise from a non-subject country. Pl. 56.2 Mot. at 44–45. Defendant responds that Commerce (1) properly analyzed the plain text of the scope, Def. Resp. at 14–23; (2) did not need to conduct a substantial transformation or circumvention analysis, Id. at 24–28; (3) lawfully imposed the effective date for suspension of liquidation, Id. at 28–30; and (4) lawfully determined that duties should be applied to the value of the finished merchandise, Id. at 30–31.

## I.    Legal Framework for Scope Rulings

Title VII of the Tariff Act of 1930, as amended, grants Commerce the authority to administer anti-dumping and countervailing duty laws. 19 U.S.C. § 1671 et. seq. If Commerce finds that either the merchandise is selling in the United States at less than fair value or benefitted from specific subsidies, and the International Trade

Commission determines that there is injury because of such merchandise, Commerce will issue an order imposing a duty to remedy the illegal dumping or subsidization. 19 U.S.C. §§ 1671 and 1673. The order must "include[ ] a description of the subject merchandise, in such detail as the administrating authority deems necessary . . . ." 19 U.S.C. §§ 1673e(a)(2); 1671e(a)(2). The order applies to subject merchandise from a particular country. <u>See</u> 19 C.F.R. § 351.202(b)(6) (providing that a petition requesting a trade remedy must contain "[t]he name of the country in which the subject merchandise is manufactured or produced and, if the merchandise is imported from a country other than the country of manufacture or production, the name of any intermediate country from which the merchandise is imported.").

Because the scope of an order is written in general terms, there may be questions as to whether a certain product is covered by the scope of an order. <u>See</u> 19 C.F.R. § 351.225(a). An interested party may request that Commerce issue a scope ruling to clarify whether a certain article of merchandise is subject to an order. <u>See id.</u> Commerce "may issue a preliminary scope ruling, based upon the available information at the time, as to whether there is a reasonable basis to believe or suspect that the product subject to a scope inquiry is covered by the scope of the order," 19 C.F.R. § 351.225(g), and "will issue a final scope ruling including an explanation of the factual and legal conclusions on which the final scope ruling is based." 19 C.F.R. § 351.225(h).

In conducting a scope inquiry, Commerce considers the plain meaning of the language of the order which "must specify both the class or kind of merchandise and the particular country from which the merchandise originates." Ugine & Alz Belg., N.V. v. United States, 517 F. Supp. 2d 1333, 1345 (Ct. Int'l Trade 2007); see also Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096–97 (Fed. Cir. 2002) (citing Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed Cir. 1995)). Commerce may make its determination on "this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k)(1). If at this stage Commerce finds the meaning of the scope language at issue unambiguous, the proceedings terminate. See Valeo N. Am., Inc. v. United States, 146 F.4th 1374, 1377 (Fed. Cir. 2025). Scope terms are "unambiguous" if they have a "single clearly defined or stated meaning." Meridian Prods., LLC v. United States, 851 F.3d 1375, 1381 n.7 (Fed. Cir. 2017).

If Commerce finds the meaning of the scope language ambiguous, Commerce looks to the interpretive sources enumerated in 19 C.F.R. § 351.225(k)(1)–(2) to determine whether the product falls within the scope of the order. Id. at 1382; 19 C.F.R. § 351.225(k)(1)–(2). It considers § 351.225 (k)(1) first, and then the § 351.225 (k)(2) factors. In a § 351.225 (k)(1) analysis, Commerce may consider descriptions of the merchandise contained in: (1) the petition; (2) the initial investigation; and (3) past determinations by the Commission and by Commerce,

including prior scope rulings, (collectively, "(k)(1) sources"). 19 C.F.R. § 351.225(k)(1)(i)–(ii), (d). If the § 351.225 (k)(1) factors are not dispositive as to the scope of the Orders, Commerce must turn to the criteria of the § 351.225 (k)(2) factors[2] Sango Intern., L.P. v. U.S., 484 F.3d 1371, 1379–81 (Fed. Cir. 2007); see also Vandewater Int'l Inc. v. United States, 130 F.4th 981, 984–85 (Fed. Cir. 2025). "[W]hether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that [the Court] review[s] de novo." Meridian Prods., 851 F.3d at 1382. Whether the scope covers a certain product is "a question of fact reviewed for substantial evidence." Id. at 1382.

Where third country operations are involved, Commerce may conduct (i) a substantial transformation analysis, or (2) a circumvention inquiry. See Bell Supply Co., LLC v. United States, 888 F.3d 1222, 1228 (Fed. Cir. 2018) ("Both the substantial transformation analysis and the circumvention inquiry can apply to imported products that are made in one country but finished or assembled in a different country."); see also Asia Wheel Co., Ltd. v. United States, 762 F. Supp. 3d 1289, 1300 (Ct. Int'l Trade 2025); see also e.g., Peer Bearing Co.-Changshan v. United States, 986 F. Supp. 2d 1389, 1398–99 (Ct. Int'l Trade 2014) (citing 19 U.S.C. § 1677j(b)(1)(A),

---

[2] When the (k)(1) sources are not dispositive, Commerce will further consider:
    (i) The physical characteristics of the product;
    (ii) The expectations of the ultimate purchasers;
    (iii) The ultimate use of the product;
    (iv) The channels of trade in which the product is sold; and
    (v) The manner in which the product is advertised and displayed.
19 C.F.R. § 351.225(k)(2).

(B)).  Alternatively, an order may by its terms indicate the circumstances in which merchandise processed in more than one country will be subject to the order.  Cf. Bell Supply, 888 F.3d 1222, 1228–29 (explaining that a substantial transformation analysis or circumvention inquiry may be applied to determine the country of origin of merchandise in cases involving third country processing.).

Commerce has broad authority "to interpret and clarify its antidumping duty orders."  Ericsson GE Mobile, 60 F.3d at 782; see also King Supply Co., LLC v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (stating that Commerce is entitled to substantial deference regarding interpretations of its own antidumping orders.).  However, Commerce may not interpret an order "so as to change the scope of that order."  Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citing Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).  Furthermore, "orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it."  Duferco Steel, 296 F.3d 1087 at 1089.  Although the petition and the investigation proceedings may aid in Commerce's interpretation of the final order, the order itself "reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order."  Id. at 1096.  Ultimately, even if an order is ambiguous, a "ruling that a product is covered by the scope of an order is a determination that the product

has always been covered by the scope of the order." 19 C.F.R. § 351.225(a); <u>see</u> <u>also</u>
<u>Sunpreme Inc. v. United States</u>, 946 F.3d 1300, 1320–21 (Fed. Cir. 2020).

## II.    The Unambiguous Meaning of "Entered"

In its scope ruling, Commerce assumes the phrase "entered" as used in the
Orders, means both "entered into the United States" and "entered into Vietnam."
Final Scope Ruling at 7, APPX 2629.  Defendant and Plaintiff agree that "entered" as
used in the Orders means both "entered into the United States" and "entered into
Vietnam." Pl. 56.2 Mot. at 13 (discussing components entered into Vietnam); Def.
Resp. at 15 (discussing components entered into Vietnam for further assembly with
a chassis).  Because Commerce starts from a premise that is contradicted by the plain
meaning of the language of the Orders, its determination must be remanded for
further consideration.

"Entered" as used in scope language necessarily means "entered into the
United States."  The Orders are written for the purpose of imposing trade remedies
on merchandise entered into the United States.  <u>See</u> 19 U.S.C. § 1671(e) (directing
Customs to impose trade remedies within a period of time after entry of subject
merchandise); <u>see also</u> 19 U.S.C. § 1673(e).  Orders must describe the subject
merchandise imported into the United States to effectuate the purpose of the Orders.
19 U.S.C. § 1673e(a)(2).  Thus, without a specific reference to entry into a third
country or third countries more generally, the plain meaning of the scope language
means "entered" into the United States.

Further, the language of these Orders confirms that "entered" in this case can only mean "entered into the United States." <u>See</u> Orders.  Here, the Orders provide in pertinent part:

> The merchandise covered by the order consists of chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled . . .

> Subject merchandise includes, but is not limited to, the following subassemblies: Chassis frames, or sections of chassis frames, including kingpin assemblies, bolsters consisting of transverse beams with locking or support mechanisms, goosenecks, drop assemblies, extension mechanisms and/or rear impact guards; Running gear assemblies or axle assemblies for connection to the chassis frame, whether fixed in nature or capable of sliding fore and aft or lifting up and lowering down, which may or may not include suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels; Landing gear assemblies, for connection to the chassis frame, capable of supporting the chassis when it is not engaged to a tractor; and Assemblies that connect to the chassis frame or a section of the chassis frame, such as, but not limited to, pintle hooks or Btrains (which include a fifth wheel), which are capable of connecting a chassis to a converter dolly or another chassis.

> Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of this order.

> Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: Hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.

> Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third

> country does not remove the product from the scope. Inclusion of other
> components not identified as comprising the finished or unfinished
> chassis does not remove the product from the scope.
>
> Individual components entered and sold by themselves are not
> subject to the order, but components entered with or for further
> assembly with a finished or unfinished chassis are subject merchandise.
> A finished chassis is ultimately comprised of several different types of
> subassemblies. Within each subassembly there are numerous
> components that comprise a given subassembly.

AD Order at 36,094; see also CVD Order at 24,845.

Paragraphs 4 and 6 contemplate that chassis or unfinished chassis

(subassemblies) "entered with" components, or "entered for further assembly with"

components are also subject merchandise, providing:

> Subject merchandise also includes chassis, whether finished or
> unfinished, entered with or for further assembly with components . . .
>       . . .
> Individual components entered and sold by themselves are not
> subject to the order, but components entered with or for further
> assembly with a finished or unfinished chassis are subject merchandise.
> A finished chassis is ultimately comprised of several different types of
> subassemblies. Within each subassembly there are numerous
> components that comprise a given subassembly.

Orders, ¶¶ 4, 6. If the parties were correct, and the language meant "entered

anywhere," the first sentence in Paragraph 4 would contain an internal contradiction.

The first sentence discusses the entry of "subject merchandise" stating "[s]ubject

merchandise includes chassis . . . entered . . . ." Id., ¶ 4. When used with the phrase

"subject merchandise," there can be, and there is, no dispute that the word "entered"

means "entry into the United States." See 19 U.S.C. §§ 1673(1), 1673e(a), 1671(1),

1671(e)(a); Final Scope Ruling at 2, APPX 2624. See also OA Transcript at 4:24–5:2

(Defendant's counsel states, "[y]es, for purposes here, for this scope ruling . . . Commerce is examining . . . merchandise that entered into the United States and applying the scope language to that.").  The first sentence continues by explaining that "subject merchandise includes chassis "entered with or for further assembly with components . . . ."  See Orders, ¶ 4.  If "entered" in Paragraph 4 when used with "subject merchandise" means "entered into the United States," then it must have the same meaning for the rest of the sentence, i.e., "entered into the United States with or for further assembly with components . . . ."  See id., ¶ 4.  It is not possible for the same word, in the same sentence, to have contradictory meanings.  See Valeo N. Am., Inc. v. United States, 146 F.4th 1374, 1381 (Fed. Cir. 2025) (quoting Pulsifer v. United States, 601 U.S. 124, 149 (2024) (citing A. Scalia & B. Garner, Reading Law 170–71 (2012)) ("Analogous to principles guiding statutory interpretation, we commonly understand that "the same term usually has the same meaning and different terms usually have different meanings.").  Entry of subject merchandise necessarily refers to entry into the United States, and so, components "entered with or for further assembly with" subject merchandise also refers to components entered into the United States.[3]  See Orders, ¶ 4.

---

[3]  At Oral Argument, both parties made contextual arguments that fail to persuade. Plaintiff's counsel contended that "I think that . . . terminology, 'enter,' is furthered by the fact that the scope language does not define 'enter' specifically to the United

                                                    (footnote continued)

Court No. 24-00030                                                            Page 16

To claim that the phrase "entered with" in Paragraph 6 would have a different meaning than in Paragraph 4 is equally illogical. <u>See id.</u>, ¶¶ 4, 6. Paragraph 6 is an explication of the terms in Paragraph 4. <u>See id.</u> Paragraph 4 provides that subject merchandise includes both chassis and some components because its provides that the scope includes chassis "entered with or for further assembly with components." <u>See id.</u>, ¶ 4. Paragraph 6 explains when components will be captured within the scope, providing:

> Individual components entered and sold by themselves are not subject
> to the order, but components entered with or for further assembly with
> a finished or unfinished chassis are subject merchandise.

<u>Id.</u>, ¶ 6. "Entered" in Paragraph 6, as an explication of Paragraph 4, must mean "entered into the United States." <u>See id.</u>, ¶¶ 4, 6.

Commerce's scope ruling starts from the premise that the word "entered" in Paragraphs 4 and 6 means entered anywhere, not just the United States, contradicting the unambiguous meaning of the words of the Orders. <u>See</u> Final Scope Ruling at 6, APPX 2628. For this reason alone, remand is required as this

---

States." Oral Argument Transcript ("OA Transcript") at 8:10–14. As discussed above, the term "entered" with respect to subject merchandise can only mean entry into the United States even if "the United States" is not so specified. Similarly, in response to the Court's question regarding the Paragraph 4 and 6 language "entered with or for further assembly with" and how that language means "entered into any country," Defense counsel states "Your Honor, with all respect, I don't know how you give any meaning to third-country processing if there's no entry into a third party, third country." <u>Id.</u> at 89:15–18. However, the words of the Orders themselves later reference third country processing in Paragraph 5, which confirms that third country operations can occur. Orders, ¶ 5. If Commerce wanted to distinguish "entry" as meaning into a third country, it could have included the language in the scope.

determination is contrary to law.  See id.  On remand, Commerce must adopt the

plain meaning of the word "entered" in the Orders, namely "entered into the United

States."

## III.  Commerce's Scope Ruling is Unsupported by Substantial Evidence

Commerce and Defendant argue the plain meaning of the Orders reaches any

components of Chinese origin that eventually enter the United States as part of a

chassis.  See Def. Resp. at 18; see also Prelim. Scope Ruling at 9, APPX 2652.  Plaintiff

contends that components are specifically excluded from the scope of the Orders.  See

Pl. 56.2 Mot. at 24.   The Orders contain multiple ambiguities which render

Commerce's conclusion that the plain meaning of the scope language reaches these

components unsupported by substantial evidence.[4]  The Orders are ambiguous with

respect to (i) when components are included within the scope of the Orders, (ii) when

third country operations render the individual components not subject to the Orders,

and (iii) the meaning of "subassemblies . . . whether . . . assembled or unassembled."

See Orders.  Thus, Commerce's determination that the plain meaning of the language

of the Orders reaches components of Chinese origin that are imported in a completed

chassis from Vietnam is unsupported by substantial evidence.

---

[4]  In its Final Scope Ruling, Commerce makes clear that it bases its determination on
the plain meaning of the words of the Orders.  Final Scope Ruling at 6, APPX 2628.
See also OA Transcript at 14:8–10.  ("In this case . . . Commerce here followed the
plain language of the scope proposed by the petitioners.").

First, the Orders are ambiguous as to when components are included within the scope because the phrase "sold by themselves," is ambiguous.  Orders, ¶ 6. Paragraph 1 states that the scope includes "chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled . . ." Id., ¶ 1. Paragraph 2 describes subassemblies in a non-exhaustive list.  Id., ¶ 2.  The list of subassemblies includes chassis frames, running gear assemblies, and landing gear assemblies.  Id.  Paragraph 2 also identifies various components of the subassemblies. Id.  For example, running gear assemblies or axle assemblies "may or may not include suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels."  Id.

Paragraphs 4, 5, and 6 each reference components explaining when components are subject to the Orders.  Paragraph 4 states:

> Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: Hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.

Id., ¶ 4.  Subsequently, Paragraph 6 adds:

> Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise.  A finished chassis is ultimately comprised of several different types of subassemblies.  Within each subassembly there are numerous components that comprise a given subassembly.

Id., ¶ 6.  Read together, Paragraphs 1, 2, 4, and 6 distinguish (1) chassis, (2) subassemblies of chassis, and (3) components of chassis subassemblies.  Id., ¶¶ 1, 2, 4, 6.  Paragraph 4 indicates that "components" may mean either individual components (e.g., axles, landing gear legs) or subassemblies (e.g., drum assemblies or brake assemblies).  Id., ¶ 4.  Chassis and subassemblies (including subassemblies that themselves are components) are always subject merchandise, see id., ¶¶ 1, 2, while components are only sometimes subject merchandise.  See id., ¶¶ 1, 4, 6. Paragraph 6 explicates that "[i]ndividual components entered and sold by themselves are not subject to the order," but qualifies that "components entered with or for further assembly with a finished or unfinished chassis are subject merchandise." Id., ¶ 6. As discussed above, "entered" means entered into the United States.  The phrase "sold by themselves," however, remains ambiguous.[5] Id., ¶ 6.  It could mean sold for use in something other than a chassis or sold apart from a chassis.  Commerce and Defendant contend that the former meaning is plain from the words of the Orders. Final Scope Ruling at 11, APPX 2633.  The Court cannot agree.  "Sold by themselves" means sold alone.  By itself, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/by%20itself (last visited Oct. 3, 2025) ("with nothing nearby:

---

[5] Although the parties agree, and the record supports, that this scope ruling only deals with completed chassis imported into the United States, see Final Scope Ruling at 1, APPX 2623; Pl. Admin. Brief at 1–2, APPX 2498, the meaning of the components exclusion is still relevant because Commerce considers the words of the Orders to reach any Chinese chassis component that eventually makes its way into a completed chassis.  See Final Scope Ruling at 7, APPX 2629.

alone").  Although Commerce and the Defendant contend that "sold by themselves" means sold for a purpose other than use in a chassis, neither offers a rationale for that position nor confronts an equally plausible meaning.  Final Scope Ruling at 11, APPX 2633; see also Def. Resp. at 15.  Therefore, although Paragraph 6 makes clear that components are sometimes subject merchandise, it is ambiguous as to when exactly components are subject merchandise.

Second, the Orders are ambiguous as to when third country operations exclude individual components.  The scope provides in Paragraph 5:

> Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope.  Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.

Orders, ¶ 5.  Thus, all processing, and specifically the processing articulated in Paragraph 5, will not remove Chinese components, entered with or for further assembly with a chassis, from the scope.  Id.  Additionally, the mere inclusion of a component that is not "identified as comprising a chassis" does not remove the chassis from the scope.  However, the Orders are unclear as to whether "processing" includes welding and fabrication, two types of operations that Commerce articulates in its scope ruling and concludes are "processing" without analysis.  Final Scope Ruling at

13, APPX 2635.[6]   Commerce mentions, but does not address, either welding or

fabrication.   Commerce simply concludes:

> Thus, THACO's imports of all components for a running gear
> subassembly, most of the components for a landing gear subassembly,
> and other chassis components for other subassemblies are considered an
> unfinished chassis for purposes of these Orders, and therefore, THACO's
> fabrication of chassis components, welding, painting, assembly,
> inspection, and packing of chassis components and subassemblies do not
> remove the ultimate product, a finished assembled Chinese chassis,
> from the scope of the Orders.

Id.; see also Orders, ¶ 5.   Commerce does not explain how these operations are

processes.[7]   The scope language does not make plain that a country of origin or

circumvention analysis is unnecessary because welding and fabrication are

processes.[8]

Lastly, the Orders are ambiguous as to the meaning of "subassemblies."

Orders, ¶ 1.  The Orders reference unassembled subassemblies both in Paragraph 1

---

[6]  Pitts' scope application contains exhibits containing pictures and descriptions of
the production process in Vietnam, obtained from the EAPA on-site verification
report.  Pitts Scope Application at Attachment II, APPX 80086–80907.

[7]  At oral argument, Defendant's counsel asserted that Commerce viewed fabrication
and welding operations as "part and parcel" of assembling.  OA Transcript at 53:9–
14.  It is not clear why these operations would be considered part and parcel of
assembly, and in any event, Commerce did not offer an explanation as to why these
operations are part and parcel of assembling.

[8]  Throughout its moving brief, Plaintiff makes a number of arguments concerning
circumvention.  See e.g., Pl. 56.2 Mot. at 33.  ("Any justification for expanding the
Orders directed at Chinese chassis to cover non-subject country chassis from Vietnam
requires Commerce to conduct a circumvention inquiry.").  Defendant responds that
Commerce is not required to conduct a circumvention analysis because the plain
meaning of the language itself resolves any questions about the country of origin of
the finished product at issue.  See Def. Resp. at 11.  Because the Court is remanding
based upon the scope language, it need not reach this issue.

(i.e., "[i]mportation of any of these subassemblies, whether assembled or unassembled"), and in Paragraph 6, which implies that at some point components are unassembled subassemblies (i.e., "[a] finished chassis is ultimately comprised of several different types of subassemblies;" "[w]ithin each subassembly there are numerous components that comprise a given subassembly."). <u>See</u> Orders, ¶¶ 1, 6. Paragraph 2 and Paragraph 6 explain that subassemblies are comprised of components but make no mention of when a component or group of components is more than just a component, but rather an unassembled subassembly. <u>See</u> Orders, ¶¶ 2, 6. <u>See, e.g.</u>, <u>id.</u> at ¶ 2 ("running gear assemblies or axle assemblies . . . which may or may not include . . . wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels . . .").[9] The plain meaning of the language of Orders does not clearly provide that an instance of fewer than all the necessary components for a subassembly constitutes an unassembled subassembly.

The Orders do not address whether an unassembled subassembly must be imported with all of its parts together, or whether it is enough that the parts will ultimately become part of a chassis. <u>See</u> Orders, ¶ 6 (". . . but components entered with or for further assembly with," implying that covered components enter in groups

---

[9] For example, with respect to the axle, the axle is welded to an upper hanger, lower hanger, upper spring fender, chamber, linking bar, leaf spring, U-shape bolts, and nuts. Pitts Scope Ruling Application (THACO's RFI Response, Dec. 20, 2022, narrative Part III Question 8) APPX 80706–08. With respect to the landing gear legs, the legs are welded and connected with a bolt, lock nut, flat washer, landing gear bracket, landing gear bracing, linking bracket, and linking bar. <u>Id.</u>

Court No. 24-00030                                                          Page 23

for assembly.).   The plain meaning of the Orders does not support Commerce's

conclusion that Chinese components are "unassembled subassemblies" simply

because they are eventually incorporated into a chassis.  On remand, Commerce must

address the Court's holding regarding the plain meaning of "entered" and resolve any

ambiguities in the scope language.

## IV.   The Effective Date of Suspension and Cash Deposits for AD and CVD Duties

Plaintiff challenges the imposition of AD and CVD duties prior to the

preliminary scope ruling as unsupported, unreasonable, and unjustified.[10]  See Pl.

56.2 Mot. at 17, 41.   Defendant argues that the Orders gave notice, Pitts was a

petitioner aware of the investigation and publication of the Orders, and therefore,

imposition of the duties prior to the preliminary scope ruling is fair.  Def. Resp. at

28–30.   Commerce's determination of the effective date of suspension and cash

deposits is in accordance with law.

Commerce's regulations provide for the suspension of liquidation and

application of cash deposits such that AD and CVD duties may ultimately be

collected.

> When the Secretary initiates a scope inquiry under paragraph (b) or (d) of this section, the Secretary will notify U.S. Customs and Border Protection of the initiation and direct U.S. Customs and Border Protection to continue the suspension of liquidation of entries of products subject to the scope inquiry that were already subject to the

---

[10]  Plaintiff describes Commerce's imposition of AD and CVD on the finished chassis merchandise as an "impermissible error," which the Court will interpret to mean that Plaintiff contests the imposition as contrary to law.  See Pl. 56.2 Mot. at 40, 44.

> suspension of liquidation, and to apply the cash deposit rate that would
> be applicable if the product were determined to be covered by the scope
> of the order.

19 C.F.R. § 351.225(l)(1).  Thus, § 351.225(l)(1) envisions a cash deposit rate "that

would be applicable if the product were determined to be covered by the scope" to be

applied as soon as Commerce initiates a scope inquiry.  Id.  The regulations make no

exception for ambiguous orders which must be clarified.  The Court of Appeals has

made clear that Customs acts within its authority prior to the initiation of a scope

inquiry when it determines whether to include merchandise within an order and

assesses AD or CVD duties.  Sunpreme Inc. v. United States, 946 F.3d 1300, 1317–

18 (Fed. Cir. 2020).[11]  Indeed, a "ruling that a product is covered by the scope of an

order is a determination that the product has always been covered by the scope of the

order."  19 C.F.R. § 351.225(a); Sunpreme Inc. v. United States, 946 F.3d 1300, 1320–

21 (Fed. Cir. 2020).[12]

---

[11]  In Sunpreme, the Court of Appeals, on rehearing, reversed an earlier panel
decision which had concluded that AD duties would not apply to in-scope merchandise
of an ambiguous order until the date the scope inquiry was initiated.  Sunpreme Inc.
v. United States, 924 F.3d 1198, 1215 (Fed. Cir. 2019), reh'g en banc granted, opinion
vacated, 945 F.3d 1367 (Fed. Cir. 2020), and on reh'g en banc, 946 F.3d 1300, 1317
(Fed. Cir. 2020).  The Court of Appeals concluded that Customs has the power to
determine whether goods fall within the scope of an order as part of its statutory
mandate to fix the final amount of duty, including AD and CVD duties even prior to
the initiation of a scope inquiry.  Id. (citing 19 U.S.C. §§ 1500, 1514).
[12]  One might argue, as Pitts does, that imposing AD or CVD liability on goods that
have already entered is unfair where the words on an order are ambiguous.  See Pl.

(footnote continued)

Although the particular issue in <u>Sunpreme</u> was whether Customs had authority to suspend liquidation based on its view that the merchandise at issue was in scope, the Court of Appeals' decision rested on its conclusion that liquidation may be suspended, and thus AD and CVD duties imposed, even when an order is ambiguous. <u>Id.</u> Plaintiff's citation to <u>Trans Texas Tire, LLC v. United States</u>, 519 F. Supp. 3d 1275, 1288 (Ct. Int'l Trade 2021) is inapposite. <u>See</u> Pl. 56.2 Mot. at 40–41. <u>Trans Texas Tire</u> involved Commerce's articulation of the scope in the context of an investigation. <u>Trans Texas Tire, LLC v. United States</u>, 519 F. Supp. 3d 1275, 1278. Commerce clarified the Orders' scope during the course of its investigation, as reflected in its Final Determination. <u>Id.</u> at 1279. The Court held that "given the language of the Initiation Notice and Preliminary Determination, reasonably informed importers were not provided clear or meaningful notice . . . until the publication of the Final Scope Memo." <u>Id.</u> at 1288. Therefore, because the scope was set when the Orders were published, and regardless of whether the scope language is ambiguous, Commerce's determination of the effective date of suspension and cash deposits is in accordance with law.

---

56.2 Mot. at 40–42. The Court of Appeals in <u>Sunpreme</u> confronted the issue and put interested parties on notice that should there be any question, they should seek a scope ruling prior to importing merchandise that might be covered by an order. <u>See</u> Sunpreme <u>Inc. v. United States</u>, 946 F.3d 1300, 1316 (Fed. Cir. 2020).

## V.    The Assessment of Duties

The Orders require Commerce to impose AD or CVD duties on Chinese chassis and subassemblies.  <u>See generally</u>, Orders, ¶ 1; <u>see also</u> Pl. 56.2 Mot.; Pl. Reply; Def. Resp.  Pitts argues that the chassis it imports are Vietnamese chassis and any AD or CVD duties, if assessed at all, should only be imposed on Chinese components.  <u>See</u> Pl. 56.2 Mot. at 14; Pl. Reply at 19.  Defendant argues that further processing of Chinese components in Vietnam renders the entire chassis subject merchandise.  <u>See</u> Def. Resp. at 31 (citing to Final Scope Ruling at 13, APPX 2635).  Commerce's conclusion that the "plain language of the scope covers the total value of the product," Final Scope Ruling at 13, APPX 2635, is unsupported by substantial evidence.

Commerce fails to adequately explain its decision to impose AD and CVD duties on the entire value of the imported chassis on this record.  Commerce's determination rests on a syllogism in which the minor premise is unsupported and therefore its determination requires remand.  Commerce starts its reasoning with the uncontested premise that "THACO imports almost all of its axle and landing gear subassembly components from China, which constitute an unassembled subassembly."  <u>Id.</u>  However, Commerce asserts that since those axle and landing gear subassembly components are an "unassembled assembly," those components are covered merchandise.  <u>Id.</u> at 7, APPX 2629.  Commerce invokes Paragraph 5 to further support its conclusion because it provides that "{p}rocessing of finished and unfinished chassis and components . . . in a third country does not remove the product

from the scope." Id. at 3, APPX 2625; Orders, ¶ 5. However, as discussed above, the plain meaning of the scope language does not support Commerce's premise that components are always "unassembled subassemblies." Commerce therefore cannot conclude that the entire chassis are subject merchandise and on remand must reconsider or further explain its determination.

## CONCLUSION

Commerce must adopt the plain meaning of the word "entered" in the Orders, namely "entered into the United States." Further, because the plain meaning of the Orders does not support Commerce's determination, it is remanded for further explanation or reconsideration consistent with this opinion. Even though the words of the Orders may provide that components are sometimes subject merchandise, they are ambiguous as to when exactly components are subject merchandise. Commerce's conclusion that Chinese components are "unassembled subassemblies" because they are eventually incorporated into a chassis is unsupported on this record. Because Chinese components are not necessarily "unassembled subassemblies," Commerce's imposition of duties on the entire value of the imported chassis is unsupported by substantial evidence. On remand, Commerce must confront the Court's holding on the plain meaning of "entered," resolve the noted ambiguities, and then apply the scope language to the merchandise entered into the United States. On remand, Commerce must also reconsider or provide further explanation of its decision to impose AD and CVD duties on the entire value of the imported chassis.

Court No. 24-00030                                                                    Page 28

For the foregoing reasons, it is

**ORDERED** that Commerce's final determination is remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that in light of the current lapse in appropriations pausing government operations, Commerce shall file its remand redetermination with the court within 90 days after Congress appropriates funds for Commerce to continue its work; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 14 days thereafter to file the Joint Appendix; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing its remand redetermination.

                                                            /s/ Claire R. Kelly
                                                            Claire R. Kelly, Judge

Dated:        October 8, 2025
              New York, New York