A-570-135; C-570-136
Remand Redetermination
Slip Op. 25-133
~~Business Proprietary Document~~
**Public Version**
E&C/OI:  DJH

***Pitts Enterprises, Inc. Dba Dorsey Intermodal v. United States,***
**Court No. 24-00030, Slip Op. 25-133 (CIT October 8, 2025)**
**Certain Chassis and Subassemblies Thereof from the Peoples' Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the *Remand Order* of the U.S. Court of International Trade (CIT).[1]

These final results of redetermination concern Commerce's final scope ruling that certain

finished chassis containing Chinese-origin axle and landing gear components imported by Pitts

Enterprises, Inc. dba Dorsey Intermodal's (Pitts) are within the scope of the antidumping duty

(AD) and countervailing duty (CVD) orders on certain chassis and subassemblies thereof

(chassis) from the Peoples' Republic of China (China).[2]

In the *Remand Order*, the CIT held that Commerce (1) must adopt the plain meaning of

the word "entered"; (2) resolve the ambiguities of when Chinese components are considered

subject merchandise; and (3) address its decision to impose antidumping and countervailing

duties on the entire value of the imported chassis.[3]  For these final results of redetermination,

---

[1] *See Pitts Enterprises, Inc. Dba Dorsey Intermodal v. United States,* Consol. Court No. 24-00030, Slip Op. 25-133 (CIT October 8, 2025) (*Remand Order*).
[2] *See* Memorandum, "Final Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle and Landing Gear Components," dated January 10, 2024 (Final Scope Ruling); *see also Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order,* 86 FR 36093 (July 8, 2021); and *Certain Chassis and Subassemblies Thereof from the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination,* 86 FR 24844 (May 10, 2021) (collectively, *Orders*).
[3] *See Remand Order.*

pursuant to 19 CFR 351.225(k)(1), Commerce reconsidered the basis of its final scope ruling to

determine that the Chinese-origin running gear and landing gear subassemblies contained within

Truong Hai Auto Corporation Special Vehicles Manufacturing Limited Company's (THACO)

finished chassis, imported by Pitts, fall within the *Orders'* description of in-scope merchandise

as chassis subassemblies, and, therefore, are covered by the scope of the *Orders*.

## II.    SCOPE OF THE *ORDERS*

The merchandise covered by the *Orders* consists of chassis and subassemblies thereof,

whether finished or unfinished, whether assembled or unassembled, whether coated or uncoated,

regardless of the number of axles, for carriage of containers, or other payloads (including self-

supporting payloads) for road, marine roll-on/roll-off (RORO) and/or rail transport.  Chassis are

typically, but are not limited to, rectangular framed trailers with a suspension and axle system,

wheels and tires, brakes, a lighting and electrical system, a coupling for towing behind a truck

tractor, and a locking system or systems to secure the shipping container or containers to the

chassis using twistlocks, slide pins or similar attachment devices to engage the corner fittings on

the container or other payload.

Subject merchandise includes, but is not limited to, the following subassemblies:

- Chassis frames, or sections of chassis frames, including kingpin assemblies, bolsters

  consisting of transverse beams with locking or support mechanisms, goosenecks, drop

  assemblies, extension mechanisms and/or rear impact guards;

- Running gear assemblies or axle assemblies for connection to the chassis frame, whether

  fixed in nature or capable of sliding fore and aft or lifting up and lowering down, which

  may or may not include suspension(s) (mechanical or pneumatic), wheel end

  components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels;

- Landing gear assemblies, for connection to the chassis frame, capable of supporting the chassis when it is not engaged to a tractor; and

- Assemblies that connect to the chassis frame or a section of the chassis frame, such as, but not limited to, pintle hooks or B-trains (which include a fifth wheel), which are capable of connecting a chassis to a converter dolly or another chassis.

Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of these *Orders*.

Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.

Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.

Individual components entered and sold by themselves are not subject to the *Orders*, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of several different types of subassemblies. Within each subassembly there are numerous components that comprise a given subassembly.

This scope excludes dry van trailers, refrigerated van trailers and flatbed trailers. Dry van trailers are trailers with a wholly enclosed cargo space comprised of fixed sides, nose, floor and roof, with articulated panels (doors) across the rear and occasionally at selected places on the sides, with the cargo space being permanently incorporated in the trailer itself. Refrigerated van trailers are trailers with a wholly enclosed cargo space comprised of fixed sides, nose, floor and roof, with articulated panels (doors) across the rear and occasionally at selected places on the sides, with the cargo space being permanently incorporated in the trailer and being insulated, possessing specific thermal properties intended for use with self-contained refrigeration systems. Flatbed (or platform) trailers consist of load-carrying main frames and a solid, flat or stepped loading deck or floor permanently incorporated with and supported by frame rails and cross members.

The finished and unfinished chassis subject to these *Orders* are typically classified in the Harmonized Tariff Schedule of the United States (HTSUS) at subheadings: 8716.39.0090 and 8716.90.5060. Imports of finished and unfinished chassis may also enter under HTSUS subheading 8716.90.5010. While the HTSUS subheadings are provided for convenience and customs purposes, the written description of the merchandise under order is dispositive.[4]

## III. BACKGROUND

On February 13, 2023, Pitts submitted its scope ruling application requesting that Commerce determine whether certain finished chassis produced by its Vietnamese supplier, THACO, containing Chinese-origin axle and landing gear components and imported by Pitts are outside the scope of the *Orders*.[5] On February 28, 2023, CIMC Intermodal Equipment LLC, dba

---

[4] *See Orders*.
[5] *See* Pitts' Letter, "Clarification Request for Finished Non-Scope Country Chassis with China Origin Axle Components and Landing Gear Leg Components," dated February 13, 2023 (Pitts Scope Ruling Application).

CIE Manufacturing (CIE), a Chinese chassis exporter, filed comments in response to Pitts' scope ruling application.[6] On March 6, 2023, Pitts filed a rebuttal response to CIE's comments.[7] On March 15, 2023, Commerce initiated a scope inquiry pursuant to 19 CFR 351.225(d)(1).[8]

In the Preliminary Scope Ruling,[9] Commerce described the merchandise subject to the scope ruling request as a finished chassis from Vietnam containing Chinese-origin axle and landing gear components:

> The Vietnamese chassis are skeletal rectangular-framed trailers, which consist of steel with a suspension system and axle system, wheels and tires, brakes, a lighting and electrical system, a coupling for towing behind a truck tractor, and a locking system or systems to secure shipping container or containers attached to the chassis. Chassis are designed to carry containers of various sizes, usually 20, 40, 45, or 53 feet. Chassis, also referred to as semi-trailer chassis, are used in the transportation of typically intermodal cargo containers, whether finished or unfinished and whether assembled or unassembled, and subassemblies thereof. Semi-trailers are non-mechanically propelled vehicles of a kind designed solely to be coupled to another motorized vehicle and equipped with wheels.

> An axle is an individual component of a running gear subassembly for a finished chassis (a subassembly which also consists of the components, tires, hub and drum assemblies, suspensions, brake chambers, and other components and is installed on a chassis frame to produce a finished chassis) and may also be an individual component used in other types of trailers. In general terms, axle components, together with other components, are used to allow wheels to move and also bear the weight of the load. A landing gear leg is an individual component of a landing gear subassembly for a finished chassis (a subassembly which also consists of the components, shoes, a crank handle, and a rotating cross shaft and is installed on a chassis frame to produce a finished chassis) and may also be an individual component used in other types of trailers. In general terms, landing gear leg components are used in pairs, together with other components, to stabilize a portion of the trailer's weight.

---

[6] *See* CIE's Letter, "Response to Scope Clarification Request," dated February 28, 2023 (CIE Scope Comments).
[7] *See* Pitts' Letter, "Reply to Pre-Initiation Comments on Scope Clarification Request," dated March 6, 2023.
[8] *See* Commerce's Letter, "Initiation of Scope Inquiry," dated March 15, 2023.
[9] *See* Memorandum, "Preliminary Scope Ruling on Pitts Enterprises, Inc. dba Dorsey Intermodal's Axle and Landing Gear Components," dated September 15, 2023 (Preliminary Scope Ruling) at 5 (citing Pitts Scope Ruling Application at 6).

On January 10, 2024, Commerce issued a final scope ruling, in which it determined that THACO's finished chassis containing Chinese-origin components, imported by Pitts, were covered by the scope of the *Orders* based on the plain scope language.[10]  Specifically, Commerce found THACO's finished chassis containing Chinese-origin components to be covered by the scope of the *Orders* because it found that the multiple Chinese-origin chassis components that THACO imported to produce its finished chassis, in totality, constituted unassembled chassis subassemblies from China which are considered subject merchandise under the scope of the *Orders*.  In the Final Scope Ruling,[11] Commerce determined that Pitts' imported chassis from Vietnam contained more than just Chinese-origin axles and landing gears but also contained multiple other components from China that ultimately composed unassembled subassemblies and determined that Pitts' imported finished chassis from Vietnam was subject to antidumping and countervailing duties.  This was consistent with the intention of the petitioners, which included Pitts, during the investigation where the petitioners stated, "where two or more components are sold together as part of a subassembly, whether assembled or unassembled, such parts are in-scope merchandise."[12]  Commerce found that the multiple chassis components entered into Vietnam from China constituted an unassembled subassembly.

Pitts challenged the Final Scope Ruling before the CIT.  On October 8, 2025, the CIT issued its *Remand Order*, holding that Commerce's Final Scope Ruling was not in accordance with law and not supported by substantial evidence.  In its opinion, the CIT stated that Commerce misinterpreted the meaning of the word, "entered," in the *Orders* and failed to explain how evidence supported its determination that Chinese components are "unassembled

---

[10] *See* Final Scope Ruling.
[11] *See* Final Scope Ruling at Comment 1.
[12] *See* Pitts Scope Ruling Application at Exhibit 11.

subassemblies" because they are eventually incorporated into a chassis and why Commerce imposed AD and CVD duties on the entire imported chassis from Vietnam.[13]   The CIT ruled that Commerce must adopt the plain meaning of the word "entered" in the *Orders* to mean "entered into the United States" and that the scope is ambiguous in determining when components may be considered subject merchandise.[14]   Specifically, the CIT held that the *Orders* are ambiguous with respect to:  (1) when components are included within the scope of the *Orders*, (2) when third country operations render the individual components not subject to the *Orders*, and (3) the meaning of "subassemblies whether assembled or unassembled."[15]   As such, the CIT held that Commerce's determination that the plain scope language applies to Chinese-origin components that are imported in a completed chassis from Vietnam is unsupported by substantial evidence.[16] Additionally, the CIT stated that because Chinese components are not necessarily "unassembled subassemblies, "Commerce's imposition of AD and CV duties on the entire value of the imported chassis is also unsupported by substantial evidence."[17]   Based on its review of the record and Commerce's analysis, the CIT held that Commerce must confront the CIT's holding on the plain meaning of "entered," resolve the scope's ambiguities regarding when components may be considered subject merchandise, apply the scope language to the merchandise entering the United States, and reconsider or explain its decision to impose AD and CV duties on the entire value of the imported chassis.

---

[13] *See Remand Order* at 27.
[14] *Id*.
[15] *Id*. at 17.
[16] *Id*.
[17] *Id.* at 27.

On December 30, 2025, we release our Draft Remand Results to interested parties.[18]  On

January 6, 2026, Pitts submitted comments on the Draft Remand Results.[19]

## IV.    ANALYSIS

Pursuant to the *Remand Order*, Commerce reconsidered whether THACO's finished

chassis containing Chinese-origin components, imported by Pitts, are covered by the scope of the

*Orders*.  As such, we considered the product description in Pitts' scope ruling request,

supplemental responses from Pitts and THACO, and the scope language of the *Order*s.  Based on

our analysis, in accordance with the CIT's opinion and *Remand Order*, we find that THACO's

finished chassis containing Chinese-origin components fall within the description of in-scope

merchandise, in part, as THACO's finished chassis contains Chinese running gear subassemblies

and landing gear subassemblies that fall within the scope of the *Orders* while the remainder of

the finished chassis does not fall within the description of in-scope merchandise.

### a.  Legal Framework

When a request for a scope ruling is submitted, Commerce examines the scope language

of the order{s} at issue and the description of the product contained in the scope ruling

application.  Pursuant to Commerce's regulations, in determining whether a product is covered

by the scope of an order, Commerce may make its determination on the basis of the scope

language alone where such language is dispositive.[20]  Commerce may also take into account

primary interpretive sources in determining a scope ruling, including the descriptions of the

merchandise contained in the petition and investigation; previous or concurrent determinations

---

[18] *See* Commerce's Letter, "Draft Results of Redetermination Pursuant to Court Remand," issued December 30, 2025 (Draft Remand Results).
[19] *See* Pitts' Letter, "Comments on Draft Results of Redetermination Issued Pursuant to Court Order in *Pitts Enterprises, Inc. dba Dorsey Intermodal v. United States*, Court No. 24-00030, Slip Op. 25-133 (CIT October 8, 2025)," dated January 6, 2026 (Pitts Remand Comments).
[20] *See* 19 CFR 351.225(k)(1).

by Commerce, including prior scope rulings, memoranda, or clarifications pertaining to the order at issue or other orders with same or similar language; and determinations of the U.S. International Trade Commission (ITC) pertaining to the order at issue.[21]  Additionally, Commerce may consider secondary interpretive sources, such as any other determinations of Commerce or the ITC, U.S. Customs and Border Protection (CBP) rulings or determinations, industry usage, dictionaries, and any other relevant record evidence, in determining a scope ruling.[22]  However, to the extent that secondary interpretive sources conflict with primary interpretive sources under 19 CFR 351.225(k)(1)(i), the primary interpretive sources will normally control.[23]

Where the descriptions of the merchandise in the sources described in 19 CFR 351.225(k)(1) are not dispositive, Commerce will consider the five additional factors set forth at 19 CFR 351.225(k)(2)(i).  These factors are:  (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed.  In the event of a conflict between these factors, the physical characteristics of the merchandise will normally be allotted greater weight than other factors.[24]  Commerce's scope rulings are made on a case-by-case basis, and may be applied on a producer-specific, exporter-specific, or importer-specific basis, or some combination thereof, or to all products from the same country with the same relevant physical characteristics as the product at issue, on a country-wide basis, regardless of the producer, exporter, or importer of the products.[25]

---

[21] *See* 19 CFR 351.225(k)(1)(i).
[22] *See* 19 CFR 351.225(k)(1)(ii).
[23] *Id*.
[24] *See* 19 CFR 351.225(k)(2)(ii)
[25] *See* 19 CFR 351.225(m)(1).

### b. Scope Analysis

In the *Remand Order*, the CIT held that "'{e}ntered' as used in scope language necessarily means 'entered into the United States'… Thus, without a specific reference to entry into a third country or third countries more generally, the plain meaning of the scope language means 'entered' into the United States."[26]  Additionally, the CIT concluded that the Commerce's scope ruling was unsupported by substantial evidence as the plain meaning of the scope language of the *Orders* are ambiguous with respect to:  1) when components are included within the scope; 2) when third country operations exclude components from the scope; and 3) the definition of what are considered assembled or unassembled subassemblies."[27]  Particularly, the *Orders* are unclear as to whether "processing" includes welding and fabrication, which Commerce concluded to be processing without analysis.[28]  Finally, the CIT determined that because the plain meaning of the scope does not support Commerce's premise that components are "unassembled subassemblies" then Commerce must reconsider or further explain its determination to consider THACO's entire chassis as subject merchandise.[29]

Pursuant to the CIT's order, we have reconsidered whether THACO's finished chassis containing Chinese components, imported by Pitts, fall within the scope language using the CIT's definition of "entered" and reexamined evidence on the scope inquiry record concerning components, subassemblies, and third country processing.  For the reasons explained below, we continue to find that the descriptions of the product in Pitts' scope application, THACO's supplemental responses, and the *Orders'* scope language are dispositive as to whether Pitts' imported Vietnamese chassis containing Chinese components falls within the scope of the

---

[26] *See Remand Order* at 12.
[27] *Id*. at 17.
[28] *Id*. at 20.
[29] *Id*. at 26-27.

*Orders*, in accordance with 19 CFR 351.225(k)(1).  As a result, for this redetermination, we find it unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2).

"Entered" Into the United States

Reevaluating the plain scope language pursuant to the CIT's holding that the word, "entered," may only mean "entered into the United States" unless specifically stated otherwise, Commerce finds that THACO's imports of Chinese chassis components from China to Vietnam do not constitute subject merchandise.  THACO imported a significant number of chassis components, including all the essential components for running gear subassemblies and landing gear subassemblies (*i.e.,* upper coupler, landing gear, suspension, axles, wheel end, wheels tires, brake system, and electrical system),[30] from China in separate and independent shipments for the purpose of constructing chassis subassemblies and subsequently, finished chassis.[31]  The scope of the *Orders* states, "{i}ndividual components entered and sold by themselves are not subject to the *Orders*, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise."  Consistent with the *Remand Order*, upon importation into Vietnam, THACO's imported Chinese chassis components do not constitute subject merchandise because they have not "entered" into the United States.

Third Country Processing

Commerce has reevaluated THACO's third country processing of Chinese chassis components in Vietnam and, for the reasons explained below, continues to find that THACO's assembly of Chinese chassis components into finished running gear assemblies and finished

---

[30] *See* CIE's Letter, "Post-Initiation Comments on Pitts Enterprises, Inc.'s Scope Ruling Application," dated April 14, 2023 at Exhibit 1 (CIE Post Initiation Comments).
[31] *See* Pitts' Letter, "Supplemental Questionnaire Response," dated April 6, 2023 (SQR1) at Exhibit 1; *see also* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibits III.5 and III.6.

landing gear assemblies, do not remove these two subassemblies from the scope of the *Orders* when they are entered into the United States attached to Vietnamese-origin Chassis frames.

To produce its finished chassis in Vietnam, THACO produces the chassis frame subassembly in Vietnam from raw steel. Then THACO assembles the major components of the running gear subassembly and landing gear subassemblies from Chinese-origin chassis components (*i.e.*, the landing gear legs and other landing gear components, axles, springs, lower and upper hangers, braking chamber, wheels, tires, and locking pins).[32] Subsequently, the running gear assembly and landing gear assembly, comprised of Chinese chassis components, are connected to THACO's Vietnamese-origin chassis frame.

Record evidence indicates that THACO imported almost all components for the running gear subassemblies, which includes the axle assemblies, and landing gear subassemblies from China and only fabricated or imported a few components from other countries for these subassemblies.[33] The imported Chinese components that comprise the running gear subassembly are axles, wheels, tires, leaf springs, suspensions, locking pins, and brake systems.[34] The imported Chinese components that comprise the landing gear subassembly are landing gear legs, shoes, crank handle, and cross shaft.[35] Additionally, THACO imported from China other chassis components that were used to construct other subassemblies in its finished chassis (*i.e.,* kingpins, electric wiring, twist locks, gladhands, air tanks, wiring harness, tire inflation system, and other minor components).[36] While THACO did not purchase any fully assembled subassemblies or

---

[32] *See* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibit III.6.
[33] *See* Pitts' Letter, "Second Supplemental Questionnaire Response," dated July 14, 2023 (SQR2), at 11 (THACO fabricates the landing gear brackets in the landing gear assembly and imports its spring components for its running gear assembly from Canada).
[34] *See* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibits III.5 and III.6.
[35] *Id*.
[36] *See* Pitts' Letter, "Comments in Response to CIMC Intermodal Equipment LLC, dba CIE Manufacturing Comments on Pitts Enterprises, Inc.'s Supplemental Questionnaire Response," dated April 24, 2023, at Exhibit 1;

chassis from China,[37] Commerce determines that THACO's third-country processing in Vietnam of imported Chinese components (*e.g.*, landing gear legs, shoes, crank handle, cross shaft, axles, wheels, tires, suspensions, locking pins, and brake systems) into assembled subassemblies and then into a finished chassis does not preclude these subassemblies from qualifying as subject merchandise.

The plain language of the scope states that "{p}rocessing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product **or in a third country does not remove the product from the scope.**"  Commerce agrees with the CIT that this language from the scope means that "all processing… will not remove Chinese components, entered with or for further assembly with a chassis, from the scope."[38]  Record evidence supports this finding:  in the CBP verification report, CBP officials described the five main chassis production processes occurring at THACO's facility as:  1) processing raw steel and fabrication of sections of chassis frame and workpieces; (2) welding; (3) painting; (4) assembly; and (5) packing.[39]  Throughout CBP's verification report, CBP officials generally referred to the above-stated actions as processing:

> For instance, we witnessed some evidence of the following activities and sub-activities: *processing* of raw steel into parts for the chassis frames and landing gear workpieces (activity 1),… *processing* related to the kingpin and pickup plate (welding), *processing* related to the axle (welding and assembly), *processing* related to landing gear (welding) {*emphasis added*}.[40]

---

*see also* CIE Post-Initiation Comments at Attachment 3; and Pitts Scope Ruling Application at Exhibit 18.4 at Exhibits III.5 (Other minor components imported from China are flexible conduits, sections of chassis frame, steel plates, H shaped steel, U shaped steel, square steel tubes, springs, and C-form steel).
[37] *See* Pitts' Letter, "Comments in Response," dated April 24, 2023, at Exhibit 1.
[38] *See Remand Order* at 20.
[39] *See* Pitts' Letter, "Comments in Response to CIMC Intermodal Equipment LLC, dba CIE Manufacturing Comments on Pitts Enterprises, Inc.'s Supplemental Questionnaire Response," dated April 24, 2023 (Pitts SQR1 Comments), at Exhibit 1.
[40] *Id*.

While welding is not listed as a type of "processing" under the scope of the *Orders*, it is a manufacturing process and is repeatedly referred to as such in CBP's verification report.[41]  We find that welding is a type of "other processing" that "does not remove the product from the scope."  Therefore, welding and assembly of running gear and axle subassembly components and landing gear subassembly components does not remove these finished subassemblies from the scope of the *Orders* because the scope covers the assembly of Chinese chassis components into unfinished chassis (*i.e.*, subassemblies) in third countries.

<u>Non-Chinese Origin Components</u>

Additionally, with regards to THACO's fabrication of chassis components into subassemblies, the plain language of the scope states that "{i}nclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope."  For example, THACO imported from China the major components (axles, suspensions, tires, wheels, and brakes) of a running gear subassembly and assembled these components into a finished subassembly in Vietnam and attached the running gear subassembly to a Vietnam-produced chassis frame.  Attaching the finished running gear subassembly to a non-subject chassis frame does not remove the Chinese-origin running gear subassembly from the *Orders*.  While CBP's verification report states that THACO fabricated "sections of chassis frame and workpieces" from raw steel, record evidence indicates that almost all chassis components explicitly named in the scope language, like axles, suspensions, landing gear legs, kingpins, twist locks, locking pins, wheels, tires, components of brake system, and components of the electrical system, were imported from China along with numerous "other chassis components and materials."[42]  In contrast, THACO's purchases of chassis components from Vietnam and other

---

[41] *Id*.
[42] *See* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibit III.5.

non-China countries contained mostly purchases of "other components or materials," tools, "auxiliary materials," and labor protective gear.[43]  Therefore, purchases from non-China countries mostly consist of indirect materials related to the production of chassis and chassis components not outlined in the scope while purchases from China included the aforementioned materials and components but also included chassis components outlined in the scope of the *Orders*.  Specifically, THACO reported that its landing gear subassembly was produced using components imported from China with its own fabricated brackets and its running gear and axle subassemblies were produced completely using components from China.[44]

THACO's further manufacturing and assembly of Chinese chassis components into subassemblies does not remove the completed Chinese-origin subassembly from the scope of the *Orders* nor are these Chinese subassemblies removed from the scope of the *Orders* when they are attached to THACO's Vietnamese-origin chassis frame.

Additionally, according to the plain scope language, the inclusion of THACO's Vietnamese-fabricated components that were not identified in the scope language (*e.g.*, the landing gear brackets) to the imported Chinese components that were identified in the scope language (the landing gear legs and other landing gear components) also does not remove the landing gear subassemblies from the scope.  Most components that comprise the landing gear and running gear subassemblies produced by THACO are Chinese origin and therefore, are subject merchandise once constructed into subassemblies.[45]  The plain scope language allows for

---

[43] *Id.*

[44] *Id.* at Exhibit III.6; *see also* THACOs' Letter, "Second Supplemental Questionnaire Response," dated July 14, 2023, at 11-14

[45] *See* SQR1 at Exhibit 1-Supp and SQR2 at 11 ("{T}he comprehensive combination of components making up the running gear subassembly; also with axle, tire, wheel (rim), chamber (brake), and 3-leaf spring components… are Chinese… We also note that THACO sources spring components, an individual component in a running gear subassembly, from a Canadian producer."); *see also* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibit III.6 (demonstrating that the landing gear brackets are fabricated by THACO but all other components of the landing gear subassembly like the landing gear legs, crank handle, shoes, and cross shaft are imported from China).

subject merchandise to include subassemblies that have been further processed in third countries and include minor non-Chinese origin components. A landing gear subassembly is described in the scope application as "{a} landing gear leg…, shoes, a crank handle, and a rotating cross shaft and is installed on a chassis frame to produce a finished chassis."[46] Commerce determines that THACO's Vietnamese-origin fabricated landing gear brackets to be minor components that would not exclude the landing gear subassembly from the scope because brackets are used for the connection and assembly of the subassembly to the chassis frame and do not impart functional characteristics to the landing gear subassembly like the components listed above. Therefore, the inclusion of minor non-China origin components and the attachment of the running gear and landing gear subassemblies to THACO's Vietnamese-origin chassis frame does not exclude these subassemblies from the scope.

Based upon our reevaluation of the plain scope language and the scope application, we find that only the landing gear and running gear subassemblies within Pitts' imported finished chassis from Vietnam is subject to the scope of the *Orders*, and therefore, only the value of the landing gear and running gear subassemblies within these finished chassis are subject to the AD and CVD duties outlined in these *Orders*. The remainder of the finished chassis is not subject to the scope of the *Orders*, and no duties, with respect to these *Orders*, will be collected from the value of the remaining sections of the finished chassis.

### c. Conclusion

For this draft remand, we determine that the product that entered the United States is a finished Vietnamese chassis containing Chinese running gear subassemblies and landing gear subassemblies. Record evidence demonstrates that at least two subassemblies, the landing gear

---

[46] *See* Pitts Scope Ruling Application at 7.

and running gear subassemblies, contained within THACO's finished chassis are Chinese in

origin.  While THACO imported chassis components from China separately and did not import

any fully assembled subassemblies or chassis from China, THACO's third country processing of

Chinese chassis components into chassis subassemblies constitutes third country processing,

which does not exclude the subassemblies from the scope of the *Orders*.  Moreover, we find that

even if these subassemblies are combined with non-Chinese origin subassemblies to produce a

finished chassis, the inclusion of a few non-Chinese origin components and subassemblies does

not exclude the Chinese subassemblies from the scope of the *Orders*.  Therefore, because the

product entering the United States is finished chassis from Vietnam containing Chinese-origin

running gear and landing gear subassemblies, we find that the Chinese-origin subassemblies are

within the scope of the *Orders*, pursuant to 19 CFR 351.225(k)(1).  Accordingly, only the

Chinese-origin running gear and landing gear subassemblies within Pitts' imported finished

chassis from Vietnam are subject to the AD and CVD duties outlined in the *Orders*.

## V.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On December 30, 2025, we release our Draft Remand Results to interested parties.[47]  On

January 6, 2026, we received timely comments from Pitts,[48] which we address below.

**Comment 1:  Whether the Draft Redetermination Expands the Scope of the *Orders***

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts.  For further details, *see*
Pitts Remand Comments at 11-12.

> {Commerce's} Draft Redetermination unlawfully expands the scope of the *Orders*
> by applying them to subassemblies within the finished chassis imported from
> Vietnam despite determining that these Vietnamese chassis themselves are not in
> scope.  The plain scope language covers "certain chassis and subassemblies thereof
> from China."   By its ordinary meaning, "thereof" means "of the thing just

---

[47] *See* Draft Remand Results.
[48] *See* Pitts Remand Comments.

mentioned." Thus, "subassemblies thereof" refers to subassemblies of the previously named Chinese chassis and cannot be subassemblies generally, and certainly not subassemblies of the Vietnamese chassis. The modifier "from China" applies to both chassis and their subassemblies, confirming that the scope is limited to Chinese-origin chassis merchandise.

Commerce's Draft Redetermination fails to establish that the *Orders* reach subassemblies that are not connected to Chinese chassis. Instead, it impermissibly interprets the scope to include subassemblies integrated into Vietnamese chassis, even though those Vietnamese chassis are outside the scope. This interpretation disregards the plain language of the *Orders*. Accordingly, the scope phrase at issue covers only Chinese chassis and their subassemblies. It cannot be read to encompass subassemblies that are not part of a subject Chinese chassis. {Commerce's} contrary conclusion is inconsistent with plain scope language. {Commerce} must apply the scope language specifically to the merchandise entered, the finished chassis from Vietnam, and confirm that the Vietnamese chassis and their integrated subassemblies are not in scope.

**Commerce's Position:**

We continue to find that the Draft Remand Results properly interpreted the scope of the *Orders* to include Chinese-origin subassemblies attached to Vietnamese-origin chassis frames and did not expand the scope of the *Orders*. Pitts argues that the use of the phrase, "certain chassis and subassemblies thereof from China," in the scope of the *Orders* indicates that only subassemblies that are connected to Chinese chassis frames are subject merchandise because the word, "thereof," is defined as "of the thing mentioned," and therefore, "subassemblies thereof" refer to subassemblies of Chinese chassis.[49] We find this argument unavailing. The phrase "certain chassis and subassemblies thereof from China" conveys that certain chassis and chassis subassemblies from China are covered by the scope of the *Orders*. Specifically, finished chassis from China and chassis subassemblies from China are both subject merchandise. In the Draft Remand Results, we determined that the landing gear and running gear subassemblies used to construct THACO's finished chassis were Chinese-origin subassemblies and, therefore, were

---

[49] *See* Pitts Remand Comments at 12.

subject merchandise.[50]  This is not an expansion of the scope but the proper interpretation of the plain language.  If the scope was meant to only apply duties to subassemblies that are attached to Chinese chassis, as Pitts suggests, then the additional phrase, "subassemblies thereof," would be superfluous because the finished chassis would be from China so the subassemblies comprising the finished chassis would already be covered.  "Subassemblies thereof" is included in the scope language to cover Chinese-origin subassemblies that are imported separate from a Chinese-origin chassis.  Here, THACO is purchasing Chinese-origin running gear/axle assemblies and landing gear assemblies and attaching them to a Vietnamese chassis frame.  Subsequently, Pitts is importing Chinese-origin axle/running gear and landing gear subassemblies attached to a Vietnamese chassis frame.  The Vietnamese chassis frame is not subject merchandise, but the Chinese-origin subassemblies are subject merchandise.  As discussed in Comment 2, the record is clear that THACO purchased subject axle/running gear assemblies and landing gear assemblies, that are within a plain meaning of the scope and that were for attachment to a Vietnamese-origin chassis frame.  This interpretation does not expand the scope to include non-Chinese subassemblies or chassis, as Pitts suggests, but appropriately applies the plain meaning of the scope language to chassis subassemblies from China.

**Comment 2:   Whether Third Country Scope Language Brings Merchandise In-Scope**

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts (internal citations omitted).  For further details, *see* Pitts Remand Comments at 13-17.

> {Commerce's} Draft Redetermination misapplies the third country processing scope language and impermissibly expands the scope of the *Orders*.  While {Commerce} correctly determined that Chinese components imported into Vietnam are not in-scope because they are not "entered" into the United States, and that the finished Vietnamese chassis imported into the United States are also non-

---

[50] *See* Draft Remand Results at 16-17.

scope merchandise, it erroneously concluded that two subassemblies of the finished chassis, the running gear and landing gear, are subject merchandise. This conclusion relies on an incorrect interpretation of the third country processing provision.

The scope language in Paragraph 5 of the *Orders* states that processing of finished or unfinished chassis and components in a third country does not remove an in-scope product from the scope. This provision preserves coverage of merchandise already within the scope, even after additional processing in a third country prior to entry in the United States. It does not, however, transform out-of-scope components into subject merchandise through processing. The framework for analyzing the scope in such scenarios is, instead, subject to separate procedures explicitly provided for under the law. By applying this language to Chinese components that were never in scope, {Commerce} has impermissibly expanded the *Orders* beyond the plain terms.

**Commerce's Position:**

Upon further review of the record, Commerce is clarifying its determination in the Draft Remand Results. While an individual chassis component imported from China to Vietnam is not subject merchandise, we find that both the landing gear legs and axles that THACO imported from China were not individual components, but instead, were unfinished chassis axle/running gear and landing gear subassemblies with multiple components already attached or for later attachment. Therefore, we find that these unfinished landing gear and running gear subassemblies were subject merchandise when THACO imported them from China into Vietnam and remained subject merchandise as THACO further manufactured and assembled the unfinished subassemblies into completed subassemblies and attached them to Vietnamese chassis frame.

The merchandise described in Pitts' Scope Application, individual axles and landing gear leg components, are axle assemblies and landing gear assemblies subject to the *Orders*. In Pitts' Scope Application, Pitts describes the components that comprise a running gear subassembly to include an axle as well as "tires, hub and drum assemblies, suspensions, brake chambers, and

other components…"[51]  Similarly, Pitts describes the components that comprise a landing gear

subassembly to include landing gear legs as well as "shoes, a crank handle, and a rotating cross

shaft…"[52]  Upon further examination of THACO's bill of materials, we find that THACO's

imported axle from China includes multiple listed component pieces already attached to the axle

([                                                                                    ])

or for later attachment ([                                                   ]).[53]

THACO's landing gear legs also include components other than the landing gear legs, such as

[                                              ].[54]  Additionally, THACO's product brochures indicated

the axle/running gear assembly and landing gear assembly are Chinese-origin chassis

subassemblies.[55]  The specifications provided for the axles and landing gears indicate these are

axle assemblies (axle, slack adjusters, hub and drum, and brakes) and landing gear assemblies

(landing gear legs, shoes, mounts, sand shoes, cross shaft, crank hanger, and crank handle)

because they are imported into Vietnam from China with the numerous components attached or

for latter attachment.[56]  Lastly, Pitts submitted to CBP during the Enforcement and Protection

Act (EAPA) investigation that its imported chassis were comprised of Chinese-origin landing

gear assemblies and running gear assemblies (Chinese-origin axles, wheel ends, suspensions,

wheels, tires, and brake systems).[57]  This is further evidenced by the photos of the "axles" and

"landing gear legs" that Pitts presented in its scope application.[58]  THACO's allegedly imported

---

[51] *See* Pitts Scope Ruling Application at 7.
[52] *Id*.
[53] *See* Pitts SQR1 at Exhibit 4-Supp.
[54] *Id*.
[55] *See* Pitts Scope Ruling Application at Exhibit 3.
[56] *Id*. at Exhibits 6 and 7.
[57] *See* CIE's Letter, "Post-Initiation Comments on Pitts Enterprises, Inc.'s Scope Ruling Application," dated April 14, 2023, at Exhibit 1.
[58] *See* Pitts Scope Ruling Application at 12-13.  The picture of the "axles" displays the axles with the hub and drum assembly attached when it is opened from the shipping container.  The picture of the "landing gear legs" displays the landing gear legs with the shoes already attached while strapped onto a pallet.

individual "axles" and "landing gear legs" arrive at its factory with the aforementioned components already attached or for latter attachment.[59]  Thus, Pitts' scope application and arguments that its chassis only contain excluded individual component axles or landing gear legs from China are without merit.[60]

During the investigation, the petitioners (which included Pitts) stated, "where two or more components are sold together as part of a subassembly, whether assembled or unassembled, such parts are in-scope merchandise."[61]  The petitioners also clearly explained that "landing gear assemblies, which are typically comprised of shoes, legs, a crank handle, and a rotating cross shaft, are subject merchandise where entered together with more than one of these components."[62]  Therefore, we find that THACO's imports of "axles" and "landing gear legs" were not imports of individual components but instead were imports of unfinished axle/running gear and landing gear subassemblies.  Accordingly, THACO's imports of chassis axle/running gear assemblies and landing gear assembles, whether assembled or unassembled for connection to a chassis frame, do not meet the scope's exclusionary language as individual components and are not removed from the scope despite third country processing.

**Comment 3:   Whether Subassemblies Comprised of Non-Scope Components are In-Scope**

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts.  For further details, *see* Pitts Remand Comments at 17-22.

{Commerce's} interpretation also conflicts with the legal framework for scope order determinations and its own prior determinations. In the original AD and CVD investigations, {Commerce} stated that the scope order third country processing language applies only to subject merchandise.  Also, {Commerce} explained in the

---

[59] *Id*. at Exhibits 15 and 18.5 at Exhibit E.
[60] *Id*. at 1.
[61] *See* Pitts Scope Ruling Application at Exhibit 11.
[62] *Id*.

investigations covering *Certain Corrosion-Resistant Steel Products from the People's Republic of China, India, Italy, and the Republic of Korea*,[63] similar third country processing scope language was added to ensure that the subject corrosion-resistant steel remained in scope after processing in a third country. This modification was prompted by a CIT decision, *Bell Supply Co. v. United States*, 83 F. Supp. 3d 1311 (CIT 2015), which addressed whether subject unfinished oil country tubular goods ("OCTG") from China remained subject after finishing in a third country. The scope language preserved coverage of in-scope products, it did not create new coverage for previously non-scope merchandise.

Here, Chinese components imported into Vietnam are not subject merchandise under the plain meaning of "entered." The running gear and landing gear subassemblies manufactured in Vietnam from those not subject components cannot meet the scope definition. Applying third-country processing language to include these subassemblies improperly expands the *Orders* and violates the legal standard for scope determinations. For these reasons, {Commerce} must revise its Draft Redetermination and in the final redetermination find that the running gear and landing gear subassemblies are not within the scope of the *Orders*.

**Commerce's Position:**

Based on the analysis in Comment 2 above, we find this argument to be moot. THACO imports unfinished landing gear and running gear subassemblies---and not merely individual "Chinese components" excluded from the scope---from China for further manufacturing into completed subassemblies for attachment to a finished chassis. Pitts outlined the main components necessary to construct a landing gear and running gear subassembly.[64] THACO demonstrated that its imported landing gear legs and axles are, in fact, landing gear legs and axles with additional components, named by Pitts as being main components in landing gear and

---

[63] *See* Pitts Remand Comments at Exhibit 3 (citing to Memorandum, "*Scope Comments Decision Memorandum for the Final Determinations*," dated May 24, 2016 (*Certain Corrosion-Resistant Steel Products from the People's Republic of China, India, Italy, and the Republic of Korea*)).

[64] *See* Pitts Scope Ruling Application at 7. Specifically, Pitts explained that "{a}n axle is an individual component of a running gear subassembly for a finished chassis (a subassembly which is also made up of the components, tires, hub and drum assemblies, suspensions, brake chambers, and other components and installed on a chassis frame to produce a finished chassis product) and may also be an individual component used in other types of trailers. A landing gear leg is an individual component of a landing gear subassembly for a finished chassis (a subassembly which is also made up of the components, shoes, a crank handle, and a rotating cross shaft installed on a chassis frame to produce a finished chassis product) and may also be an individual component used in other types of trailers.

running gear subassemblies,[65] already attached or imported together.  Therefore, we find that THACO is importing unfinished landing gear and running gear subassemblies for further processing at its facilities in Vietnam.

The plain scope language states that "{s}ubject merchandise includes, but is not limited to… running gear assemblies or axle assemblies… {and} landing gear assemblies" with "{i}mportation of any of these subassemblies, whether assembled or unassembled, constitut{ing} an unfinished chassis for purposes of these *Orders*."  Further, "{p}rocessing of finished and unfinished chassis and components… in a third country does not remove the product from the scope.  Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope."  Therefore, the unfinished landing gear and running gear subassemblies that THACO imported from China are subject merchandise, and THACO's further processing of these subassemblies and inclusion of other components does not remove these subassemblies from the scope.  Accordingly, we find this scope ruling to be consistent with the scope determinations cited by Pitts, like the *Aluminum Sheet from China* and *Wooden Cabinets and Vanities from China* final scope rulings,[66] in that the plain scope language preserves the subject country of origin for existing in-scope merchandise that was further processed in a third country before export to the United States.

---

[65] *Id*.

[66] *See* Pitts Remand Comments at Exhibits 6 and 7 (citing Memorandum, "Notification of the Final Scope Determination and Response to Covered Merchandise Referral," dated January 21, 2022 (*Aluminum Sheet from China*); and Memorandums, "Final Scope Ruling on Certain Wooden Cabinets that Are Further Processed in Malaysia," and "Final Scope Ruling on Certain Wooden Cabinets that Are Further Processed in the Socialist Republic of Vietnam," both dated July 10, 2024 (*Wooden Cabinets and Vanities from China*)).

**Comment 4:   Whether the Draft Redetermination Confers Origin to Merchandise Outside the *Orders***

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts (internal citations omitted).  For further details, *see* Pitts Remand Comments at 22-24.

> {Commerce's} Draft Redetermination unlawfully expands the scope of the *Orders* by misapplying third country processing language to confer origin on subassemblies that {Commerce} itself determined are comprised of non-scope components.  The AD and CVD orders apply only to a specific "class or kind of foreign merchandise" from a designated country, and scope origin must be expressly defined in the order's language, and is separate and distinct from third country processing language. {Sections 701(a) and 731(1) of the Tariff Act of 1930 (the Act), as amended}. Third-country processing provisions do not establish origin and using them for that purpose impermissibly enlarges the *Orders*.

> The only lawful mechanism for reaching non-scope products completed or assembled in a third country is circumvention under {Section 781(b) of the Act}.  Indeed, the courts have confirmed that {Commerce's} authority is limited to (1) a reasonable interpretation of the order's scope language and (2) the circumvention statute, and not expansive scope reinterpretation. {Commerce} cannot interpret the third country processing language in a way that overrides established case law ruling against interpretations that alter the terms of an order.  By failing to follow the required legal framework, {Commerce's} approach constitutes an unlawful expansion of the scope.

**Commerce's Position:**

As stated in Comment 2, we find that THACO's imports of axles and landing gear legs from China are not individual components excluded from the scope but are unfinished landing gear and running gear subassemblies because the axles and landing gear legs were imported together with multiple other components attached or imported with other components for later attachment.  Therefore, the scope's third country language does not confer origin to the THACO's imported merchandise because THACO's imported merchandise were already subject to the scope once it left China for third country processing in Vietnam.  As stated above, in this case, the third country processing language preserves the already subject unfinished landing gear

and running gear subassemblies from being removed from the scope by THACO's further

processing and inclusion of other components. Therefore, this scope ruling does not confer

origin to merchandise that is outside the scope of the *Orders*.

**Comment 5: Whether Welding Should be Considered as "Other Processing"**

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts. For further details, *see* Pitts Remand Comments at 24-30.

> The third country scope language preserves coverage of merchandise already within the scope, even after minor processing in a third country. It does not transform out-of-scope components into subject merchandise through manufacturing steps in a third country. Nonetheless, welding, is too significant of a manufacturing activity for it not to have been specifically listed and, instead relegated to "other processing" in the scope order. Welding is a core manufacturing step that transforms components into subassemblies. Treating welding as equivalent to the named processes in the scope order, *i.e.*, trimming, cutting, or painting *etc*., ignores how it permanently bonds two materials at the molecular level and importantly contradicts the record scope primary interpretive sources {Commerce} is to consider under 19 CFR 351.225(k)(1)(i).

> The petition and the description of subject merchandise from the initial investigation underscore welding's unique importance, describing it as a primary source of value added and technical expertise in chassis production. Petitioners, which Pitts was a member, themselves highlighted welding as a transformative process, distinguishing it from incidental finishing steps. Welding is materially different from the processing activities explicitly named in the scope language, and its omission from that list is significant. If Petitioners intended welding to be included, it would have been expressly stated. {Commerce's} reliance on U.S. Customs and Border Protection's {(CBP)}broad characterization of chassis production steps as "processing," and its attempt to define welding, a critical manufacturing operation, as equivalent to minor finishing activities, is legally unsound and disregards the realities of chassis manufacturing.

> Record evidence demonstrates that welding is not like the listed processing activities and should not be treated as such. {Commerce's} interpretation not only misapplies the scope language but also impermissibly expands the scope order to include non-subject merchandise. {Commerce} must revise its remand determination in the final redetermination to align with the plain meaning of the scope language and the governing legal framework.

**Commerce's Position:**

In the *Remand Order,* based on the plain language of the scope, the CIT concluded that "all processing… will not remove Chinese components, entered with or for further assembly with a chassis, from the scope."[67] Here, THACO imports unfinished landing gear and running gear subassemblies from China and further processes these unfinished subassemblies by welding additional components, mostly purchased from China,[68] to create finished landing gear and running gear subassemblies. Pitts assumes that by designating welding as "other processing," Commerce is stating that welding is an insignificant or minor production process when Pitts argues that is a "transformative" activity within the chassis manufacturing process. While welding is not explicitly mentioned in the scope and Pitts argues that welding is a "transformative" activity, the plain scope language captures all forms of processing, whether minor, major, or "transformative," to prevent unfinished chassis from being removed from the scope through third country activities. The explicit list of processing activities in the scope, "trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, {and} assembly," is not dispositive but serves as an example of potential activities that does not exclude the merchandise from the scope. Further, assembly of unfinished chassis subassemblies and the connection of them to the chassis frame involves welding, as demonstrated in the CBP verification,[69] and welding constitutes both "assembly" and "other processing," as defined in the scope.

Additionally, the following language of "{i}nclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope"

---

[67] *See Remand Order* at 20.
[68] *See* Pitts Scope Ruling Application at Exhibit 18.4 at Exhibits III.5 and III.6; *see also* SQR2 at 11.
[69] *See* Pitts SQR1 Comments at Exhibit 1.

demonstrates that welding may be considered as another type of processing because it is a method of joining, adding, or including components to a finished or unfinished chassis.  In THACO's presentation of its manufacturing process for the landing gear and running gear subassemblies, the welding activity that THACO conducts when completing the landing gear and running gear subassemblies is merely welding brackets to the axle and landing gear assembly for connection to the chassis frame.[70]  While Pitts argues that welding is a core and transformative activity in the chassis manufacturing process, in this case, with respect to the landing gear and running gear subassemblies, THACO applies welding minimally and instead spends most of its manufacturing process assembling, connecting, and bolting the various chassis components to the unfinished landing gear and running gear subassemblies for connection via bolting to the chassis frame.[71]  Therefore, we continue to find that welding is an "other process" that is captured by the scope's third country processing language that prevents THACO's imported unfinished landing gear and running gear subassemblies from being excluded from the scope.

**Comment 6:  Whether the Draft Redetermination is Administrable**

*Pitts' Comments*

The following is a verbatim summary of arguments submitted by Pitts (internal citations omitted). For further details, *see* Pitts Remand Comments at 30-32.

> {Commerce's} Draft Remand Determination unlawfully applies AD/CVD to the running gear and landing gear subassemblies, disregarding the Court's directive to apply scope language specifically to merchandise "entered" into the United States. The merchandise entered is finished chassis from Vietnam, which {Commerce} itself determined are Vietnamese-origin chassis.  Imposing AD/CVD on two subassemblies within those chassis creates legal and administrative inconsistencies.
>
> First, {Commerce} acknowledges that these subassemblies include non-Chinese components – such as brackets fabricated in Vietnam and parts from other countries – yet treats the entire subassembly as subject merchandise once any Chinese-origin component is present.  This approach ignores mixed origin, applies AD/CVD to

---

[70] *See* Pitts Scope Ruling Application at Exhibit 18.5 at Exhibit E.
[71] *Id.*

full value rather than proportionate Chinese content, and exceeds the *Orders*' coverage, which is limited to a specific "class or kind of foreign merchandise" from designated countries.

Second, the tracing origin of individual components within subassemblies is impractical. Production involves multiple suppliers and fabrication steps across countries, creating significant compliance burdens for {CBP} and importers.

Third, {Commerce} provides no valuation methodology to distinguish Chinese-origin value from non-Chinese components or local fabrication. Applying AD/CVD to the entire subassemblies overstates scope and imposes AD/CVD on non-covered value, contrary to law.

Finally, {Commerce} determined that Pitts' imported chassis are finished Vietnamese chassis, which would be subject to any AD order resulting from the on-going Vietnam chassis investigation. Yet, by continuing to impose AD/CVD under the China chassis order, {Commerce} creates a double remedy – subjecting the same chassis to two separate AD duty deposit requirements. Such duplicative enforcement is unreasonable, unsupported by law, and violates the principle that scope determinations must be clear and administrable.

The Draft Redetermination thus imposes inconsistent enforcement, creates uncertainty for importers, and undermines the Court's directive to apply the plain meaning of "entered" in the United States. {Commerce} must correct this error by applying scope language only to the merchandise entered, the finished chassis, to avoid impermissible expansion of the *Orders*.

**Commerce's Position:**

Pitts outlines four administrability issues with applying duties to the Chinese-origin landing gear and running gear subassemblies attached to its finished chassis. However, we find that this scope determination does not pose administrability concerns for CBP because Commerce has previously applied AD/CVD duties to subsections of products entering the United States and Pitts and THACO have already proven their capability to value the various subassemblies within their imported finished chassis.[72]

---

[72] *See Notice of Scope Rulings*, 74 FR 43680 (August 27, 2009) (*Cased Pencils from China*); *see also Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Antidumping Duty Orders*, 90 FR 38730 (August 12, 2025) (*Brake Drums from China and Türkiye*).

First, Pitts argues that Commerce disregards the mixed origin of the components contained within its landing gear and running gear subassemblies, but Commerce did consider the origin of the non-Chinese components in the Draft Remand Results and determined that the plain language of the scope did not exclude the subassemblies from the scope of the *Orders* despite the inclusion of non-China origin components in the construction of the subassemblies.  As stated in the Draft Remand Results,[73]

> THACO reported that its landing gear subassembly was produced using components imported from China with its own fabricated brackets and its running gear and axle subassemblies were produced <u>completely using components from China</u>… Additionally, according to the plain scope language, the inclusion of THACO's Vietnamese-fabricated components that were not identified in the scope language (*e.g.*, the landing gear brackets) to the imported Chinese components that were identified in the scope language (the landing gear legs and other landing gear components) also does not remove the landing gear subassemblies from the scope.

Therefore, the running gear subassembly is comprised of fully Chinese-origin components so Pitts' concern is moot.  Regarding the landing gear subassembly, Commerce did consider the mixed origin of its components and based on the plain scope language, determined that the non-Chinese components used in constructing these subassemblies did not exclude them from the scope of the *Orders* because the scope clearly states that "{i}nclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope."  Accordingly, CBP does not need to consider the mixed origin of the components contained within the landing gear and running gear subassemblies because the entire subassemblies are Chinese origin regardless of the inclusion of non-Chinese components.

Second, Pitts claims that tracing the origin of individual components within a subassembly is burdensome and that Commerce did not articulate a valuation methodology for the Chinese-origin components, but THACO has already proven that it can track the origin and

---

[73] *See* Draft Remand Results at 15 (emphasis added).

value of its components. In the EAPA proceeding conducted by CBP, THACO submitted tables demonstrating its ability to separate the total value of Chinese origin, Vietnamese origin, and other country origin components from the total cost of each of its product codes sold to the United States.[74] Additionally, throughout the scope ruling proceeding, THACO demonstrated its ability to maintain and submit certificate of origin documents and designate the country of origin for its chassis components.[75] Accordingly, we find that determining the country of origin for the chassis subassemblies would not be overly burdensome on the importer or CBP and that chassis manufacturers would be capable of valuing the Chinese-origin and non-Chinese origin subassemblies.

Finally, Pitts states that Commerce's Draft Remand Results leads to double remedy as Pitts' imported chassis from Vietnam will potentially be subject to both the *Orders* and the Vietnamese chassis investigations, but Pitts misinterprets the Draft Remand Results. In the Draft Remand Results,[76] we state:

> Based upon our reevaluation of the plain scope language and the scope application, we find that only the landing gear and running gear subassemblies within Pitts' imported finished chassis from Vietnam is subject to the scope of the *Orders*, and therefore, only the value of the landing gear and running gear subassemblies within these finished chassis are subject to the AD and CVD duties outlined in these *Orders*. The remainder of the finished chassis is not subject to the scope of the *Orders*, and no duties, with respect to these *Orders*, will be collected from the value of the remaining sections of the finished chassis.

Therefore, no double remedy is being applied to Pitts' imported finished chassis. According to the Draft Remand Results, only the landing gear and running gear subassemblies would be subject to only the *Orders* while the remainder of the chassis may be subject to the Vietnamese

---

[74] *See* CIE Post Initiation Comments at Exhibit 1 and Exhibit 4.
[75] *See* Pitts SQR1 at Exhibit 1-Supp and Pitts SQR2 at Exhibit 1-Supp. 2nd.
[76] *See* Draft Remand Results at 16.

chassis investigation.[77]  Additionally, Commerce has previously applied AD/CVD duties to subsections of merchandise entering the United States.  In a final scope ruling for *Cased Pencils from China*, Commerce determined that the six pencils contained within a drawing kit were subject to the scope of the order while the remaining pencil sharpener, sanding pad, and erasers were not subject merchandise.[78]  Further, in the scope of the orders for *Brake Drums from China and Türkiye*, Commerce stated that "{w}hen a subject drum is imported together with non-subject merchandise, such as, but not limited to, a drum-hub assembly, only the subject drum is covered by the scope."[79]  Therefore, Commerce is both consistent with its own practice and the CIT's order to apply duties to the merchandise entering the United States.

## VI.    FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we find that the Chinese-origin landing gear and running gear subassemblies attached to THACO's finished chassis, imported by Pitts, are within the scope of the *Orders*.  Should the CIT affirm the final results of redetermination, Commerce intends to publish a notice of amended scope determination in the *Federal Register* and issue appropriate instructions to CBP, consistent with the discussion above.



Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[77] *See Certain Chassis and Subassemblies Thereof from the Socialist Republic of Vietnam:  Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 FR 46561 (September 29, 2025).
[78] *See Cased Pencils from China.*
[79] *See Brake Drums from China and Türkiye.*