**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |  |
|---|---|---|
| PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL, | ) ) ) ) | |
| Plaintiff, | ) ) | Court No. 24-00030 |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL'S
COMMENTS ON THE U.S. DEPARTMNET OF COMMERCE'S
REMAND REDETERMINATION**

Emily Lawson
Edmund W. Sim
Frank H. Morgan, III
APPLETON LUFF
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
lawson@appletonluff.com
(206) 357-8522
***
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.
dba Dorsey Intermodal*

March 19, 2026

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 4

III.    ARGUMENT......................................................................................................... 6

        A.      Commerce Has Arrived at a New Interpretation of the *Orders* that Is
                Unsupported and Not in Accordance with Law ....................................... 7

                1.      Plain Scope Language Does Not Support Commerce's Interpretation that
                        "Unfinished Subassemblies" Are Subject and Even if, Arguendo, they Are,
                        Commerce Has Not Defined "Unfinished Subassemblies" ......................... 7

                        a.      No "Unfinished Subassemblies" Scope Language Exists................ 8

                        b.      Subject Subassemblies Are "Assemblies" By Definition
                                Composed of the Collection of Parts of an Assembly.................... 10

                2.      The Plain Scope Language Does Not Support Commerce's
                        Determination that Processing Brings Out-of-Scope Components
                        into the Orders ........................................................................................ 12

                3.      "Chassis" Means Chinese Chassis, it Does Not Mean any
                        Chassis and the Court Must Correct Commerce's Contrary
                        Interpretation ........................................................................................... 14

                4.      Remand Is Required for Commerce to Explain Whether its
                        Determination Is Based on Chinese Components Entering with
                        a Finished Chassis .................................................................................. 16

        B.      Commerce Has Not Responded to the Court's Instruction to Resolve the
                Ambiguities the Court Identified .......................................................... 17

                1.      Commerce Has Not Defined Unassembled Subassemblies and
                        its Use of Unfinished Subassemblies Is Not Supported by
                        Substantial Evidence and Not in Accordance with Law ........................... 17

                        a.      Commerce's New Characterization of Unfinished
                                Subassemblies Conflicts with its Own Finding.......................... 17

b.     Commerce Never Defined "Unassembled Subassemblies", as the Court Required, and Instead Retroactively Re-Labeled Components as "Unfinished Subassemblies"............................... 18

c.     Because Commerce Never Defined "Unassembled Subassemblies" its Determination is Unsupported and Contrary to Law.............................................................. 23

2.     Commerce's Remand Redetermination that Fabrication and Welding Are "Other Processes" Is Not Based on Substantial Evidence or in Accordance with Law......................................... 24

a.     The Scope Intentionally Omitted Welding and Fabrication Because those Manufacturing Activities Are What Distinguish the U.S. Producers from the Chinese Industry............ 24

b.     Commerce Cannot Justify Its Interpretation of "Process" by Post Hoc Reliance on a Separate Agency's Non-Technical Reference to Welding............................................. 28

c.     Commerce Has Ignored the Realities of the Marketplace that THACO Is Manufacturing – Not Merely Assembling or Processing – Chassis in Vietnam .......................... 30

3.     Sold by Themselves................................................................... 39

IV.     CONCLUSION.................................................................................... 40

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bell Supply Co., LLC v. United States*,
  888 F. 3d 1228 (Fed. Cir. 2018)..................................................................................... 19

*Duferco Steel, Inc. v. United States*,
  296 F.3d 1087 (Fed. Cir. 2002)...................................................................................... 10

*Learning Resources, Inc. v. Trump*,
  Slip Op. 17 (U.S. Feb. 20, 2026) .................................................................................. 26

*Pitts Enterprises, Inc. dba Dorsey Intermodal v. United States,*
  Court No. 24-00030, Slip Op. 25-133 (Ct. Int'l Trade Oct. 8, 2025) .............................. *passim*

*Schlumberger Tech. Corp. v. United States*,
  845 F.3d 1158 (Fed. Cir. 2017) ..................................................................................... 26

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United* States,
  146 F. Supp. 3d 1331 (Ct. Int'l Trade 2016) ................................................................. 25

**STATUTES**

19 U.S.C. § 1677(25) ........................................................................................................ 2

**REGULATIONS**

19 C.F.R. § 351.225 ........................................................................................................ 10

19 C.F.R. § 351.225(k)(1)(i)(B)........................................................................................ 16

19 C.F.R. § 351.225(k)(1)(ii)............................................................................................ 28

19 C.F.R. § 351.225(1)(2)(iii)(B)....................................................................................... 29

19 C.F.R. § 351.225(1)(3)(iii)(B) ...................................................................................... 29

**ADMINISTRATIVE AUTHORITIES**

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
  Antidumping Duty Order,
  86 Fed. Reg. 36093 (Dep't Commerce Jul. 8, 2021) ..................................................... *passim*

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*
  *Countervailing Duty Order and Amended Final Affirmative*
  *Countervailing Duty Determination,*
  88 Fed. Reg. 24844 (Dep't Commerce May 10, 2021) ................................................. *passim*

*Certain Brake Drums from the People's Republic of China and the Republic of Türkiye:*
  *Antidumping Duty Order,*
  90 Fed. Reg. 38730 (Dep't of Commerce Aug. 12, 2025)........................................ 19

*Certain Mobile Access Equipment and Subassemblies Thereof From the*
*People's Republic of China:*
  *Countervailing Duty Order and Amended Final Affirmative*
  *Countervailing Duty Determination,*
  86 Fed. Reg. 70439 (Dep't of Commerce, Dec. 10, 2021) ...................................... 29

*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China:*
  *Antidumping Duty Order,*
  84 Fed. Reg. 45138 (Dep't Commerce July 14, 2023) ............................................ 29

*Large Diameter Welded Pipe from Greece:*
  *Antidumping Duty Order,*
  84 Fed. Reg. 18769 (Dep't Commerce May 10, 2019)............................................ 29

*Pitts Enterprises, Inc. Dba Dorsey Intermodal v. United States,*
  Court No. 24-0030, Slip Op. 25-133 (CIT October 8, 2025),
  *Certain Chassis and Subassemblies Thereof from the People's Republic of China*,
  Final Results of Redetermination Pursuant to Court Remand
  (Dep't Commerce Feb. 10. 2026)..................................................................... *passim*

*Notice of Scope Rulings,*
  74 Fed. Reg. 43680 (Dep't Commerce Aug. 27, 2009)........................................ 19

iv

## I.    INTRODUCTION

This matter returns to the Court following the U.S. Department of Commerce's ("Commerce") Remand Redetermination (Appx81840-Appx8197[1]), in which Commerce reversed its original scope ruling on chassis and adopted a new scope definition claiming all Pitts' entries into the United States constituted subject merchandise. At issue on remand is the scope of the antidumping and countervailing duty orders on certain chassis and subassemblies thereof from China, specifically, Commerce's determination that the finished Vietnamese chassis are not in-scope while asserting that two subassemblies integrated within the chassis are subject merchandise.[2] Also, at issue is whether Commerce adhered to this Court's express directives on remand.

At the outset, this Court made clear that "the Orders are written for the purpose of imposing trade remedies on merchandise entered into the United States". Appx0012. The word "entered" in Paragraphs 4 and 6 of the *Orders* "means 'entered into the United States.'" *Id*.

Despite the Court's finding that the scope contained multiple ambiguities, Appx0017-0023, on remand, Commerce continued to find the plain scope language alone dispositive of

---

[1]    Per *Joint Appendix Preparation in § 1581(c) Cases Assigned to Judge Vaden*, all record citations of the underlying scope inquiry and remand proceeding are to Bates-numbered appendix pages. *See* Joint Appendix (ECF Nos. 33, 34). Consistently, the pre-remand opinion, *Pitts Enterprises, Inc. dba Dorsey Intermodal v. United States*, Court No. 24-00030, Slip Op. 25-133 (Ct. Int'l Trade Oct. 8, 2025) (ECF No. 47), is identified by "Appx0001-00028".

[2]    *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Antidumping Duty Order*, 86 Fed. Reg. 36093 (Dep't of Commerce Jul. 8, 2021) ("*AD Order*") and *Certain Chassis and Subassemblies Thereof From the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 24844 (Dep't of Commerce May 10, 2021) ("*CVD Order*") (collectively "*Orders*").

coverage. Appx81949-81950. In accord with this Court's directive, Commerce applied "entered" to mean "entered into the United States" and correctly determined that the Pitts' finished Vietnamese chassis – the merchandise entered into the United States – are not covered by the Chinese chassis scope order. Appx81949, Appx81956.[3] Antidumping ("AD") and countervailing duties ("CVD") thus, do not apply to the entered value of the finished chassis. *Id.*

Despite Commerce correctly focusing on the condition of the finished Vietnamese chassis upon entry into the United States and its finding they are not subject to the China chassis scope orders, Commerce introduced a new scope definition to find that two subassemblies, both manufactured in Vietnam and integrated in the finished Vietnamese chassis, are subject. The two covered subassemblies, according to Commerce, are the: 1) running gear and 2) landing gear. Appx81941, Appx81947.

Commerce's determination on remand is contrary to plain scope language and is not supported by substantial evidence. As demonstrated below, Commerce erred by refusing to accept the consequence of the Court's holding that "entered" in Paragraphs 4 and 6 of the *Orders* means "entered into the United States." Commerce correctly acknowledged that THACO's[4] imports of Chinese components into Vietnam were not subject merchandise (Appx81956) – a determination that should have ended the scope analysis with a finding that the finished Vietnamese chassis entries are not subject. Instead of reaching the finding that logically followed from the Court's holding, Commerce improperly introduced a new scope interpretation, asserting that those nonsubject components are covered because they are merely processed into

---

[3]    Only products within the scope of the AD and CVD investigations orders are termed "subject merchandise." 19 U.S.C. § 1677(25).

[4]    The finished Vietnamese chassis manufacturer is Thaco Special Vehicles Manufacturing Limited Company ("THACO"). *See* Appx80063-80064, Appx80707.

subassemblies in Vietnam or are, themselves, "unfinished subassemblies" and thereby covered. Appx81957-Appx81961.[5] Commerce's newly discovered scope interpretation – not until the final remand redetermination - skirts the Court's holding, ignores the undisputed transformation of the components into a different article of commerce in a third country, and impermissibly expands the scope of the *Orders* on remand.

No reasonable reading of the scope supports Commerce's decision to apply the *Orders* to the finished Vietnamese chassis entries by treating concededly nonsubject Chinese components as rendering the manufactured subassemblies subject merchandise, or by claiming an entirely new, textually unsupported category of subject merchandise, so-called "unfinished subassemblies" to bring non-scope merchandise within the scope orders.

Against this backdrop, plaintiff submits that the Court must confront a fundamental inconsistency in Commerce's position. If Commerce, as it claims, truly applied the scope as proposed by petitioner (Appx81945, Appx81961), then why would Pitts – a U.S. chassis manufacturer and petitioner in the original investigations – support crafting a scope definition that captured its own imports? At the time, Pitts was importing finished chassis from THACO, even before the petition was filed (Appx80255-80256, Appx80258). It defies commercial logic to suggest that Pitts would seek protection from its own imports – continue importing that same merchandise after the *Orders* were issued, thereby placing its own business at risk. The clear

---

[5]    As discussed in Section III.A.4, Commerce has reached two seemingly inconsistent findings. In the Analysis section, Commerce acknowledges the Chinese components are nonsubject. *See* Appx81950. But in the Comments section, Commerce says the components are unfinished subassemblies. *See* Appx81959. Components cannot be both nonsubject components and subject unfinished subassemblies at the same time and remand to Commerce is required to explain this inconsistency.

answer is – it would not and Pitts' interpretation is affirmed by the scope language and the investigation record.

## II.    BACKGROUND

Pitts set forth the full background in its initial brief (ECF No. 24), the key point of which is that from the beginning of the AD/CVD investigations through the final scope ruling, Commerce consistently treated the Chinese components that THACO imported into Vietnam as components. Based upon Commerce's original final scope ruling, this Court recognized the component status of THACO's imports in Vietnam. The Court 1) held that the plain meaning of "entered" is "entered into the United States," and 2) directed Commerce to resolve scope ambiguities, including when components fall within the scope, how third-country processing affects components, and what constitutes distinct subassemblies, assembled or unassembled. Appx0017, Appx0027. This Court found that the plain meaning of the *Orders* does not support Commerce's conclusion the Chinese components – the axle and landing gear legs – are "unassembled subassemblies" because they are eventually incorporated into a chassis, post-import, in Vietnam. Appx0023.

On December 30, 2025, Commerce issued a draft remand redetermination for comments, and therein stated:

> Consistent with the *Remand Order*, upon importation into Vietnam, THACO's imported Chinese chassis components do not constitute subject merchandise because they have not "entered" into the United States.
> …
> Commerce has reevaluated THACO's third country processing of Chinese chassis components in Vietnam and, for the reasons explained below, continues to find that THACO's assembly of Chinese chassis components into finished running gear assemblies and finished landing gear assemblies, do not remove these two

4

> subassemblies from the scope of the *Orders* when they are entered into the United
> States attached to Vietnamese-origin Chassis frames.

*See* Appx2647, Appx2647 unchanged in Remand Redetermination. Appx81950.

On January 6, 2026, Pitts filed comments. Appx2654-2980. Pitts agreed with Commerce's finding both the Chinese components, including the component axles and landing gear legs imported into Vietnam and the finished Vietnamese chassis are not in-scope because they are not entered into the United States. Appx2654, Appx2656.

On February 10, 2026 Commerce issued the Remand Redetermination filed with the Court. Appx81840-81971. ECF Nos. 51, 52. Commerce offered the same explanation verbatim in the Remand Redetermination as in the draft. Compare Appx2643-Appx2653 (Draft Remand Redetermination, Section IV. Analysis) with Appx81947-81956 (Remand Redetermination, Section IV. Analysis ). On remand, Commerce adopted the plain meaning of the word "entered" and found that the Vietnamese finished chassis entered into the United States are not subject merchandise so that the AD and CVD could not be applied to the entered value of the finished Vietnamese chassis. Appx81947, Appx81955-81956. Likewise, on remand, Commerce stated that the Chinese components, including axles and landing gear legs, imported into Vietnam are not subject merchandise because they have not entered the United States. Appx81950.

Commerce reached two inconsistent findings with respect to the running gear and landing gear subassemblies in the Remand Redetermination. On the one hand, Commerce found that the two subassemblies integrated in the finished chassis fall within the scope based on the third country processing scope language. Appx81950-81953. On the other hand, in response to Pitts' Draft Remand Redetermination comments, Commerce for the first time in this scope proceeding

relabeled the imported axle and landing gear leg imports into Vietnam as "unfinished" subassemblies rather than components. Appx81959.

## III.    ARGUMENT

### A.    Commerce Has Arrived at a New Interpretation of the *Orders* that Is Unsupported and Not in Accordance with Law

Commerce's original scope ruling interpreted "entered" within the meaning of Paragraphs 4 and 6 of the *Orders* to include THACO's imports into Vietnam. Appx2623-2636. The Court held that the word "entered" in Paragraphs 4 and 6 of the scope means "entered into the United States" and ordered Commerce to adopt that meaning on remand. Appx0016-0017. The remand determination acknowledges that the Court's holding means Paragraphs 4 and 6 do not apply to THACO's imports of Chinese components into Vietnam and that these are not subject merchandise. Appx81950. This should have ended Commerce's analysis with a finding the components are nonsubject imported into Vietnam so the finished chassis Pitts entered into the United States could not be subject to the *Orders*.[6] Instead, Commerce offered two inconsistent lines of reasoning to support its slightly repackaged original scope ruling: 1) THACO imported "unfinished subassemblies" into Vietnam (addressed in Section III.A.1 below), Appx81959, and 2) THACO merely "processes" the nonsubject Chinese components into subassemblies in Vietnam, and this does not remove them from the *Orders* (addressed in Section III.A.2. below). Appx2649-2650. According to Commerce's interpretation, the Chinese components/subassemblies/unfinished subassemblies are subject because they enter the United

---

[6]    As discussed in Section III.A.2. below, merchandise that is not subject cannot become subject due to processing in a third country.

6

States with a finished Vietnamese chassis (addressed in Section III.A.3. below).[7] In other words,

Commerce's interpretation of Paragraphs 4 and 6 of the *Orders* captures Chinese components

when they enter the United States even when THACO undisputedly transformed them into a

different article of commerce in a third country.[8] Commerce's reasoning is flawed in several

respects, as discussed below.

**1.      Plain Scope Language Does Not Support Commerce's Interpretation that "Unfinished Subassemblies" Are Subject and Even if, Arguendo, they Are, Commerce Has Not Defined "Unfinished Subassemblies"**

In the Remand Redetermination Commerce for the first time introduces and applies a

non-scope term – "unfinished subassemblies" – to THACO's imports of individual Chinese

components and finds those imports are merely processed into running gear/axle assemblies in

Vietnam. Appx81959. According to Commerce, "{w}hile an individual chassis component

imported from China to Vietnam is not subject merchandise, we find that both the landing gear

legs and axles…imported from China were not individual components, but instead, were

unfinished chassis axle/running gear and landing gear subassemblies with multiple components

---

[7]    As discussed in Section III.B.3., Commerce repackaged its original determination without defining "sold by themselves" as the Court instructed. Commerce further obscures the analysis by failing to specify whether subject merchandise consists of Chinese components, subassemblies, or unfinished subassemblies. *Compare* Appx81955-81956 (labeling subject merchandise as subassemblies or components) *with* Appx81959 (labeling subject merchandise as unfinished subassemblies). This omission violates AD/CVD law, which requires Commerce to identify the subject merchandise entering the United States. *See* Appx0009 (citation omitted). The Remand Redetermination also improperly expands "chassis" to include non-Chinese chassis, defying plain scope language and petitioner's intent. *See* Section III.A.3.

[8]    Even though Commerce does not specify what the subject merchandise is, it appears to concede – as it must – that the components do not enter the United States as components but rather as a finished chassis. *See*, *e.g.*, Appx81953 (components assembled into a running gear assembly and attached to a chassis frame).

already attached or for later attachment." *Id*. Commerce has no textual basis for finding THACO's imports of Chinese components ever were or became subject.

### a.    No "Unfinished Subassemblies" Scope Language Exists

Contrary to Commerce's conclusion, the scope language makes clear that the term "unfinished" modifies "chassis" and not subassemblies. The scope order does not define or contemplate a product category of subject unfinished assemblies. Initially, the introductory clause, in Paragraph 1 defines subject merchandise as: "The merchandise covered by this order consists of chassis and subassemblies thereof, *whether finished or unfinished*, whether assembled or unassembled…. *AD Order* at 36094 and *CVD Order* at 24845 (emphasis added). While the term "assembled or unassembled" may apply to both chassis and subassemblies the scope phrase "whether finished or unfinished" modifies chassis alone. Subsequent scope language provides no support for Commerce's interpretation.

Immediately following the introductory clause, the scope order in Paragraph 2 lists the four covered subassemblies, including the running gear/axle assemblies and landing gear assemblies at issue. The scope does not define these assemblies as "unfinished".

Importantly, scope language expressly utilizes the term "unfinished" and repeatedly ties that term to chassis. The scope distinguishes between the status of the subject subassemblies (assembled or unassembled) and the status of the chassis (finished or unfinished). By plain scope language, the term "unfinished" describes chassis, not subassemblies. For instance, Paragraph 3 of the scope order provides that: "Importation of any of these subassemblies, whether assembled or unassembled, *constitutes an unfinished chassis* for purposes of this order." *Id*. (emphasis added). The scope language does not also state that the entry of any of these subassemblies, *whether*

8

*finished or unfinished*, constitutes an unfinished chassis. The entry of a subassembly (assembled or unassembled) is what makes a subassembly an unfinished chassis.

The remaining text consistently applies "unfinished" exclusively to chassis. Paragraph 4 states that subject merchandise is "*chassis, whether finished or unfinished*, entered with or for further assembly with components…" *Id*. Paragraph 5 states the "{p}rocessing *of finished and unfinished chassis*" and the inclusion of components in the in-scope country, China, or a third country "not identified as comprising the *finished or unfinished chassis* does not remove the product from the scope." *Id*.

Paragraph 6 provides for covered components when "entered with or for further assembly with a *finished or unfinished chassis*," again, establishing the only object defined by reference to "unfinished" in the scope is chassis. *Id*. Paragraph 8 concludes by listing applicable scope Harmonized Tariff Schedule of the United States ("HTSUS") subheadings: "The *finished and unfinished chassis* subject to this order are typically classified in…." *Id*. The scope language again establishes the only subject merchandise defined by "unfinished" is chassis. In short, the only object defined by reference to "unfinished" in the scope is the chassis itself.

The plain language and scope structure demonstrate the scope uses "assembled or unassembled" when defining subject subassemblies, without ever introducing the term "unfinished" subassemblies. The scope term "unfinished" modifies and is reserved for subject chassis, and not subassemblies. Particularly, the scope contains no reference whatsoever to "unfinished axle running gear and landing gear subassemblies" – the merchandise Commerce ruled covered. Appx81959.

Commerce may not expand an order to cover additional products unless the order itself includes language that specifically encompasses them or can reasonably be interpreted to do so –

9

conditions that are not met here. *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed Cir. 2002). The term "unfinished subassemblies" appears nowhere in the scope text. Commerce's own regulation, 19 C.F.R. § 351.225 assumes Commerce is interpreting existing scope language, not supplying new language. Here, Commerce's "unfinished subassemblies" finding represents an expansion, not a scope interpretation. The scope language explicitly confirms that unfinished subassemblies are not a separate category of subject subassemblies.

### b.    Subject Subassemblies Are "Assemblies" By Definition Composed of the Collection of Parts of an Assembly

Commerce's position cannot be reconciled with the text of the *Orders*. The scope expressly defines running gear/axle and landing gear subassemblies as "assemblies," yet Commerce asserts those same items may be treated as "unfinished" subassemblies. Appx81959. That interpretation is implausible on its face. The *Orders* state that "subject merchandise includes … running gear assemblies or axle assemblies … and landing gear assemblies." *AD Order* at 36094; *CVD Order* at 24845. In ordinary usage, an "assembly" is a collection of parts that have already been put together – not a partial or incomplete grouping of components. *See* Merriam-Webster's Dictionary ("assemblies"), https://www.merriam-webster.com/dictionary/assemblies (last visited Mar. 19, 2026).[9]

This Court has already recognized as much, explaining that "within each subassembly there are numerous components that comprise a given subassembly," and noting that the *Orders* specifically identify the components that make up running gear/axle assemblies – such as suspensions, wheel-end components, slack adjusters, axles, brake chambers, locking pins, and

---

[9]    In considering the plain meaning of scope terms this Court has consulted dictionary definitions. Appx0017-0020.

tires and wheels. Appx0022. Landing gear assemblies likewise consist of multiple interconnected components. *Id.* Critically, the Court held that "the plain meaning of the language of the Orders does not clearly provide that an instance of fewer than all the necessary components for a subassembly constitutes an unassembled subassembly." Appx0022. Thus, the *Orders* do not support treating something expressly defined as an "assembly" as though it were merely an incomplete version of itself.

Commerce's remand approach does not cure this defect. As this Court held, the *Orders* are ambiguous with respect to the meaning of subassemblies and do not clearly provide that importing fewer than all the necessary components for a subassembly constitutes an "unassembled subassembly." Appx0021-0022. Relabeling the same imports as "unfinished" subassemblies – after previously characterizing them as "unassembled subassemblies" – does not resolve the ambiguity the Court identified. It merely repackages the same flawed premise. The Court directed Commerce to resolve the meaning of "subassemblies", but Commerce instead sidesteps that instruction. Because the *Orders* define the relevant items as assemblies, Commerce cannot simultaneously treat them as "unfinished" without contradicting the ordinary meaning of the term and the text of the *Orders*.

Even if the scope supported Commerce's interpretation that "unfinished subassemblies" are subject, Commerce's redetermination still does not respond to the Court's instruction to explain the meaning of "unassembled subassemblies" because Commerce illogically equates "unfinished" with "partial" when those terms are not synonymous or even mutually exclusive. A product may be unfinished because it remains in process, partial because it

11

lacks components, or both at once. By conflating these separate ideas, Commerce departs from the text and ordinary meaning of the scope language.

The scope's own terminology confirms the distinction. "Finished" means "entirely done; brought to a completed state," *See* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/finished (last visited Mar. 19, 2026) and "unfinished" simply means "not finished." Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/unfinished (last visited Mar. 19, 2026). Those terms describe the state of processing of a chassis or subassembly. By contrast, "partial," refers to something that is less than the whole – *i.e.,* missing constituent parts – not an assembly itself. *See* Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/partial (last visited Mar. 19, 2026). Thus, whether an item is finished or unfinished says nothing about whether it is complete in its component makeup. Commerce's interpretation improperly reads a "missing parts" concept into a term that speaks only to completion of processing.

### 2. The Plain Scope Language Does Not Support Commerce's Determination that Processing Brings Out-of-Scope Components into the *Orders*

Commerce's Remand Redetermination remains largely unchanged, merely shifting its focus from finished assembled chassis to finished subassemblies. *Compare* Appx2629 *with* Appx81952.[10] Commerce continues to erroneously apply Paragraph 5 as bringing nonsubject merchandise into the scope. However, its application to nonsubject Chinese components lacks

---

[10] As discussed in Section III.B.1.b, Commerce's focus must be on the merchandise that enters the United States. Pitts argued to no avail that Commerce's interpretation was mistaken. *See* Appx2654-2980.

substantial evidence and legal merit; the plain language of Paragraph 5 cannot expand the scope to include out-of-scope merchandise. The Court must correct Commerce's interpretation.

The Court did not reach Commerce's interpretation on whether Paragraph 5 operates as Commerce believes. Commerce quoted a statement the Court made in the specific context of explaining why Commerce needed to articulate, with analysis, whether welding and fabrication were "processing" within the meaning of the *Orders*. Appx0020. All the Court said was that Paragraph 5 applied to processing of any kind and whether fabrication and welding were processing remained to be seen. *Id*. Commerce's interpretation goes a step further by finding THACO's processing of nonsubject Chinese components "does not remove" them from the scope such that when what Commerce still considers to be Chinese components enter the United States with a finished chassis, they are covered by the scope. Appx81952-81954. Effectively, Commerce reads the scope phrase "does not remove" as authority to bring nonsubject merchandise within the *Orders*. The plain meaning does not support Commerce's interpretation.

Paragraph 5 provides only that processing *in-scope merchandise* in a third country "does not remove the product from the scope."[11] Paragraph 5 does not bring out-of-scope merchandise, such as the Chinese components, into the scope.[12] Nowhere in the scope is there language that

---

[11]    Merchandise must be in-scope to be removed from it. Paragraph 5 provides that further processing does not exclude a product from the scope. Because components are sometimes subject merchandise (Appx0019), "components" must refer to subject components to maintain logical consistency with terms like "finished and unfinished chassis."

[12]    Pitts disputes Commerce's characterization of THACO's activities as processing in Section III.B.2. But for purposes of this argument, whether or not fabrication and welding are processes is irrelevant because even if they are, Commerce has misinterpreted Paragraph 5.

supports Commerce's position that the processing of nonsubject Chinese components in Vietnam makes them subject merchandise.

Commerce's interpretation also contradicts established agency practice in third country processing cases. Pitts explained that Commerce has made clear that the threshold inquiry is whether the merchandise exported from the in-scope country to a third country is covered by the order in the first instance. If it is not, the inquiry ends. Merchandise falling outside the scope before third-country processing cannot become in-scope upon entry into the United States. *See* Appx2670-2675; *see also* Appx81963.

In short, the plain language of the *Orders* and agency practice both refute Commerce's interpretation that the nonsubject Chinese components that THACO imported into Vietnam are covered.

### 3.  "Chassis" Means Chinese Chassis, it Does Not Mean any Chassis and the Court Must Correct Commerce's Contrary Interpretation

Commerce's Remand Redetermination considerably expands the scope of the *Orders* by interpreting "chassis" as any chassis. According to Commerce, "{a}ttaching the finished running gear subassembly to a nonsubject chassis frame does not remove the Chinese-origin running gear subassembly from the *Orders*." Appx81953. Pitts argued Commerce's Draft Remand Redetermination improperly interpreted the scope term "chassis" because that term, as used throughout the entire scope, necessarily means Chinese chassis. Appx2665-2666. Commerce rejected this interpretation because it would render the phrase "subassemblies thereof" superfluous. Appx81958. Commerce's reading is at odds with the plain meaning and relevant interpretive sources.

The plain scope language and the (k)(1) factors demonstrate, "finished and unfinished *chassis*' means "*Chinese/subject* finished and unfinished *chassis*." The necessity of this

14

interpretation is evident from the first sentence of the scope which defines "finished and unfinished *chassis*" as covered merchandise. *AD Order* at 36094 and *CVD Order* at 24845 (emphasis added). Paragraph 3 specifies that importation of the subassemblies named in Paragraph 2 is an unfinished *chassis*, which the first sentence defines as subject merchandise. Paragraph 4 states "{s}ubject merchandise also includes *chassis*, whether finished or unfinished . . . ." Paragraph 5 addresses the processing of *in-scope products* (*i.e.,* subject merchandise), including finished and unfinished *chassis*. Although Paragraph 6 omits the term "subject merchandise," it uses "finished or unfinished chassis" consistently with the remainder of the scope. Finally, the last paragraph describes the typical HTSUS subheadings of the "finished and unfinished *chassis* subject to these *Orders*{.}" Accordingly, the plain meaning leaves no question that "chassis" is used to mean "subject" (*i.e.*, Chinese) throughout the entire scope, interpreting the term differently in different paragraphs would be illogical. Appx0016.

Commerce's contrary reading, if accepted, would violate the tenet of AD/CVD law this Court recognized, that "the language of the order . . . 'must specify both the class or kind of merchandise and the particular country from which the merchandise originates." Appx0009. If Commerce were right and "chassis" means any chassis, the *Orders* would extend to chassis from any country containing one or more Chinese components.

Commerce defends its interpretation based on the argument that the phrase "'{s}ubassemblies thereof' is included in the scope language to cover Chinese-origin subassemblies that are imported separate from a Chinese-origin chassis" and that Pitts' reading renders the phrase superfluous. Appx81958. Commerce provides no textual support for this conclusion and it is flatly contradicted by the plain scope language and petitioner's statements during the original investigation and at the outset of the underlying scope proceeding. Paragraph

15

2 expressly states that subject merchandise includes subassemblies. Contrary to Commerce's reading, "subassemblies thereof" means subassemblies of Chinese chassis.

Even if the meaning of "chassis" as "Chinese/subject chassis" were not clear from the text, petitioner's intent leaves no doubt Pitts' reading – not Commerce's – is correct. Petitioner informed Commerce at least three times that Chinese components were not covered independently and were only covered when they enter with a Chinese chassis. Petitioner explained this before Commerce initiated the investigation, *see* Appx1490. Petitioner repeated its position a second and third time during the underlying scope proceeding. *See* Appx2152, Appx 2532.

In short, the plain scope language and the clear intent of petitioner define chassis as "Chinese/subject chassis," which is critical to Commerce's interpretation of how the petition described the merchandise pursuant to 19 C.F.R. § 351.225(k)(1)(i)(A).[13] Yet Commerce ignores this evidence based on its flawed interpretation of the plain meaning of the scope. Therefore, the Court must remand to Commerce to apply the plain meaning of chassis to be a subject chassis.

### 4. Remand Is Required for Commerce to Explain Whether its Determination Is Based on Chinese Components Entering with a Finished Chassis

Whether Commerce considers the subject merchandise to be the Chinese components, Chinese subassemblies, or unfinished Chinese subassemblies is unclear because Commerce's Remand Redetermination is unclear and internally inconsistent. On the one hand, Commerce appears to find that the Chinese components are "processed" into running gear and landing gear subassemblies. Appx81955. On the other hand, Commerce states that the subject merchandise

---

[13]    Petitioner's statement is relevant to the inquiry pursuant to 19 C.F.R. § 351.225(k)(1)(i)(B).

are unfinished subassemblies. Appx81959. A remand is necessary, at minimum, for Commerce to resolve which it is because the agency's current decisional path is unclear.

> **B.** **Commerce Has Not Responded to the Court's Instructions to Resolve the Ambiguities the Court Identified**

The Court held "Commerce's determination that the plain meaning of the language of the *Orders* reaches components of Chinese origin that are imported in a completed chassis from Vietnam is unsupported by substantial evidence." Appx0017. The Court instructed Commerce to resolve at least three ambiguities that the Court identified: 1) when components are "sold by themselves" 2) why welding and fabrication are processes, and 3) what is the meaning of unassembled subassembly. Appx0018-0023. Pitts begins with the most egregious – Commerce's failure to define an "unassembled subassembly." Instead of following the Court's instruction, Commerce invented an entirely new and undefined concept for the first time in the Remand Redetermination that Commerce calls "unfinished subassemblies." Next, Pitts establishes Commerce's reasoning about welding and fabrication as "other processes" within the meaning of Paragraph 5 is not supported by the record. Last, Pitts addresses Commerce's failure to define "sold by themselves." A remand is required on all three unresolved points.

> **1.** **Commerce Has Not Defined Unassembled Subassemblies and its Use of Unfinished Subassemblies Is Not Supported by Substantial Evidence and Not in Accordance with Law**

> > ***a.*** ***Commerce's New Characterization of Unfinished Subassemblies Conflicts with its Own Findings***

In the Remand Redetermination Commerce asserts that "THACO is purchasing Chinese-origin running gear/axle assemblies and landing gear assemblies and attaching them to a Vietnamese chassis frame," (Appx81958), and these assemblies are Chinese-origin subject merchandise entered in the Vietnamese finished chassis. As discussed above, this assertion cannot be reconciled with Commerce's repeated, contrary findings. For instance, Commerce

expressly recognized that "THACO imported a significant number of chassis components…
from China in separate and independent shipments for the purpose of constructing chassis
subassemblies and subsequently, finished chassis," and that these imports into Vietnam "were not
subject merchandise" because they had not "entered" the United States. Appx81950-81952.

Having found that THACO imported individual non-scope Chinese components into
Vietnam, and not finished or unfinished chassis, Commerce cannot simultaneously recharacterize
those same articles as running gear/axle and landing gear subassemblies without contradicting its
own factual determination. Appx81958. Because Commerce's conflicting statements cannot be
reconciled, remand is required.

> **b.    Commerce Never Defined "Unassembled Subassemblies", as the
> Court Required, and Instead Retroactively Re-Labeled
> Components as "Unfinished Subassemblies"**

In the Remand Redetermination, Commerce claims for the first time that the axles and
landing gear legs imported by THACO into Vietnam were not individual components but instead
constituted "unfinished axle/running gear and landing gear subassemblies" respectively, *i.e.*,
components with other, multiple components already attached – or components for later
attachment in Vietnam. Appx81959, Appx81961. On that premise, Commerce determined these
"unfinished subassemblies" were, therefore, subject merchandise when imported into Vietnam
and remained so when integrated into the finished chassis entered into the United States. *Id*.

That revisionist finding is not supported by the record and, more fundamentally, fails to
respond to the Court's remand directive. Rather than defining what constitutes an "unassembled

18

subassembly," Commerce simply re-characterized the imports into Vietnam as "unfinished subassemblies" without articulating any scope-based definition. *See* Appx81959-81961.

As a threshold matter, Commerce's determination attempts to justify its conclusion that the imports into Vietnam "do not meet the scope's exclusionary language as individual components and are not removed from the scope." Appx81961. But Commerce never explains why the exclusionary language in Paragraph 6 – covering "individual components entered" – applies in the first instance. The imports into Vietnam are not subject merchandise because they have not "entered" into the United States. Appx81956. Nor can the merchandise be treated as unfinished subassemblies under the *Orders* because they are brought into the United States as finished chassis. *See Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018).[14]

The threshold scope question is whether the merchandise, at the time it is imported into Vietnam, constitutes merchandise that is in-scope exported from China. Commerce's conclusion

---

[14] Commerce's dismissal of administrability as an issue is also faulty for this reason. Commerce relies on prior instances where, it claims, it applied AD to subsections of products. *See* Appx81968 *citing Notice of Scope Rulings*, 74 Fed. Reg. 43680 (Dep't of Commerce Aug. 27, 2009) ("Cased Pencils") and *Certain Brake Drums from the People's Republic of China and the Republic of Türkiye: Antidumping Duty Orders*, 90 Fed. Reg. 38730 (Dep't of Commerce August 12, 2025) (*"Brake Drums"*). Neither case, however, purports to involve third-country manufacturing that transformed the subsection into a new article of commerce, nor supports applying AD/CVD to an integrated subsection within the finished, nonsubject merchandise. Commerce's approach thus conflicts with the requirement to assess the finished product as entered into the United States. *Bell Supply*, 888 F.3d at 1228. The determinations are also distinguishable on their terms. In *Cased Pencils*, Commerce applied AD only to subject pencils within a kit also containing separate non-scope items (*e.g.*, the pencil sharpener), not to integrated components forming nonsubject merchandise. In *Brake Drums*, the scope order expressly covered brake drums both "imported… with … or if joined with nonsubject merchandise". 90 Fed. Reg. at 38733. The *Orders* here contain no such language.

19

that the products are "unfinished subassemblies" does not establish they do, and its interpretation of the *Orders* lacks support. Commerce's claim of scope coverage rests entirely on labeling the imported axles and landing gear legs as "unfinished subassemblies" – a term that does not appear in the scope (*see* Section III.A.1. *supra*). According to Commerce, these items are in-scope because they include certain components already attached or are intended "for later attachment" in Vietnam. Appx81959. But the scope language does not define subject merchandise so broadly. It does not treat any item consisting of two or more components as an "unfinished subassembly," nor does it morph components into subassemblies simply because they are ultimately incorporated into a chassis.

To the contrary, this Court has already rejected that reasoning, holding that the *Orders* do not permit treating components as "unassembled subassemblies" based solely on their eventual post-importation incorporation into finished chassis. Appx0023. Nothing in the scope text allows Commerce to revive that same rationale under the label "unfinished subassemblies." Appx0023. Labels aside, Commerce's determination still rests on the eventual incorporation of nonsubject Chinese components rather than showing that, at the time of importation into Vietnam, the merchandise possessed the characteristics required to be a subject subassembly.

Here, Commerce points to Pitts' Scope Application pictures of the axles and landing gear legs to assert that the axles were imported with hub and drum assemblies attached and that the landing gear legs included attached shoes, and therefore qualify as subject "unfinished subassemblies" when imported into Vietnam. Appx81960. (n.58). But that assertion cannot be squared with Pitts' express explanation in the very same submission: these items are precisely the types of components considered during the original investigations, when Commerce accepted the

petitioner's scope – along with its subsequent clarification – that individual components fall outside the scope. *See* Appx80078, Appx80089, Appx80657-80666.

Importing two or more components together – such as an axle with a hub and drum assembly or landing gear legs with shoes attached – does not bring those items within the scope of the *Orders*. Notably, the Court's holding that "entered" means entered in the United States renders Paragraphs 4 and 6 inapplicable. Additional scope language also undermines Commerce's position. The scope consistently distinguishes between individual components, such as axles and landing gear legs, and subassemblies, separately identifying running gear/axle assemblies and landing gear assemblies as distinct in-scope items. This structure makes clear that a component does not become a covered subassembly merely because it is imported with other parts or is later assembled into one. Commerce fails to reconcile this distinction. Instead, it assumes that the presence of some component parts identified in a subassembly is sufficient to classify the merchandise as an "unfinished subassembly". The scope contains no such language.

While the scope order lists specific examples of components (Paragraph 4), it clearly states this list is not exhaustive by using the phrase "such as, but not limited to." *AD Order* at 36094 and *CVD Order* at 24845. The *Orders* define "components" to include "assemblies", including "hub and drum assemblies", "brake assemblies", or entire suspensions made of multiple parts, and treats these assemblies as individual components. *Id*. Therefore, the scope describes an axle or landing gear leg, even with components attached (and even if it is, itself, an assembly) as a component and not a covered subassembly – just as other components named in the scope are, themselves, assemblies. Commerce never reconciles its position with the fact that Paragraphs 4 and 6 are inapplicable or the additional scope text. Because the scope acknowledges that assemblies can be "components" under the *Orders*, Commerce cannot deem

every multi-piece component import an "unfinished subassembly" without first articulating, based on scope language, what separates components from subassemblies.

Commerce likewise fails to explain how the petitioner's comments from the original investigation, stating that "'where two or more components are sold together as part of a subassembly'", support Commerce's conclusion that the merchandise at issue are "unfinished subassemblies." Appx81961. As a (k)(1)(i) source, those comments cannot override the plain meaning of the scope text. Fundamentally, petitioner's statement presupposes the existence of a subassembly, whether assembled or unassembled – that is, a defined grouping of parts that already constitute a subassembly.

Commerce states that Pitts, in the Scope Application, describes the components that comprise an axle/running gear and landing gear subassembly (Appx8195-81960)(n. 51-52). Commerce does not also explain that the product description Pitts referenced was the *Orders'* language itself and the product description in the ITC Final in the initial investigations to distinguish components in the axle/running gear and landing gear assembles from subject subassemblies. Appx80057. Regardless, Commerce did not provide a definition of an "unassembled subassembly."

Commerce next relies on THACO's bill of materials, asserting that the Chinese-origin axles included attached components or parts intended for later attachment in Vietnam. Appx81960. That reading is incorrect because the bill of materials indicates that one component is "N/A", not applicable. Appx81161. Commerce relies also on the sample axle and landing gear marketing material provided in Pitts' Scope Application, Exhibits 6 and 7, to claim the imported components are assemblies. Appx80017. And Commerce relies on THACO finished chassis product brochure and statements in the EAPA investigation to assert the running gear and landing

22

gear subassemblies are China-origin, but not that the components are unfinished subassemblies. Appx81960. Commerce's explanation still does not establish that the imported items into Vietnam were "unfinished subassemblies", nor does it define what is an unassembled subassembly.

Commerce's labored explanation to establish the axles and landing gear leg imports are unfinished subassemblies leans large on the existence of components for later attachment. Commerce's reliance on the fact that components are for later attachment, but the scope language does not define an "unassembled subassembly" by reference to eventual incorporation. The determination ignores that this Court expressly rejected Commerce's earlier reliance on eventual incorporation into a chassis as a basis for scope coverage.

### c. Because Commerce Never Defined "Unassembled Subassemblies" its Determination is Unsupported and Contrary to Law

Commerce avoided a textual analysis and adopted a factual shortcut whereby Commerce declared multiple components that were either attached or were for later attachment "unfinished subassemblies," even though the merchandise was imported as individual components. As provided above, that is not a definition grounded in the *Orders*. It is a post-*Orders* relabeling that conflicts with the Court's instruction to clarify the meaning of "unassembled subassembly," and contradicts Commerce's own findings that THACO imported individual components into Vietnam that never "entered" the United States are not subject merchandise. *See* Appx81950; Appx0023.

This Court has already found that the plain meaning of the *Orders* does not support Commerce's conclusion that Chinese components, the axles and landing gear legs, are "unassembled subassemblies" merely because they are eventually incorporated into a chassis in

Vietnam. Appx0023. On this record, Commerce's determination is not supported by substantial evidence and is not in accordance with law.

### 2. Commerce's Remand Redetermination that Fabrication and Welding Are "Other Processes" Is Not Based on Substantial Evidence or in Accordance with Law

In the original scope ruling, Commerce summarily dismissed the need for a country of origin or other analysis because the agency characterized fabrication and welding as "other processing" within the plain meaning of Paragraph 5 of the scope language. Appx2628. The Court rejected Commerce's position because the agency failed to explain why fabrication and welding were processes. Appx0020-0021. Commerce's Remand Redetermination is unsupported for the three reasons described below.

### a. The Scope Intentionally Omitted Welding and Fabrication Because those Manufacturing Activities Are What Distinguish the U.S. Producers from the Chinese Industry

Pitts argued to Commerce on remand that the petitioner and, by extension Commerce, intentionally omitted welding (and fabrication), meaning Commerce cannot now consider those manufacturing steps to be "other processing." Appx81965. Commerce failed to consider the implications of Pitts' argument: omitting "welding" and "fabrication" from the express scope language proves that the parties intended to treat welding and fabrication differently than the processes listed in Paragraph 5. Commerce has therefore "'entirely failed to consider an important aspect of the problem,' {footnote omitted} i.e., the actual nature of the products it is considering" in a scope inquiry. *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 146 F. Supp. 3d 1331, 1352 n. 148 (Ct. Int'l Trade 2016) (citation omitted). Instead, Commerce asserted, without support, that the "plain scope language captures all forms of processing, whether minor, major, or 'transformative,' to prevent unfinished chassis from being removed from the scope through third country activities." Appx81966. Even if the Court were to excuse

24

Commerce for failing to address Pitts' argument regarding the intentional omission of welding, Commerce still does not reconcile how a process can be transformative enough to convert nonsubject Chinese components into subject Chinese finished subassemblies, yet somehow leave the welded components unchanged for purposes of country of origin or circumvention. Put differently, Commerce reads Paragraph 5 to mean a Chinese component is forever subject to the *Orders* – no matter how transformative the third country process.

For the Court to sustain Commerce, the agency had to establish that welding is an "other process" given the ambiguities of the scope language and, specifically, within the meaning of Paragraph 5. Commerce has not done so, and the Court has already rejected Commerce's position that the plain meaning is dispositive. Appx0020. As discussed below, the record evidence – that Commerce disregards based on its view that even a transformative manufacturing activity qualifies as an "other process" – supports Pitts' position that welding does not fall within the meaning of "other process." The common element of all of the processes expressly named in Paragraph 5 is that they do *not* transform subject merchandise into nonsubject merchandise. While the list is not exclusive, it is also true that the omission of something from a list can, as the facts do here, demonstrate the omission was intentional. Even if welding qualifies as a process, it is transformative – a fact Commerce itself acknowledges by finding that the subject Chinese components are transformed into finished subassemblies – and therefore does not belong in the Paragraph 5 list. Appx2994. Welding is "different in kind, not degree"[15] from the named processes.

Furthermore, a word is known by the company it keeps. *See*, *e.g.*, *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1165 (Fed. Cir. 2017) (describing the interpretive principle

---

[15]    *See Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 17 (U.S. Feb. 20, 2026).

of *noscitur a sociis*). Welding is materially different from the "processing" activities set forth in the scope of the *Orders*. On its face, welding is different from the scope's list of processing activities because without welding there cannot be a chassis. For instance, none of the processing activities listed in the scope have detailed requirements for certification – welding does. *See* Appx2905, Appx2908, Appx2915-2939. More fundamentally, welding is unique because it affects the material at the atomic level and creates a permanent bond. Appx2947-2954. There are additional differences. Trimming, cutting, grinding, notching, punching, and drilling involve the removal of material and, thus, are distinct from welding which involves the joining of material. Painting, coating, staining, and finishing affect the surface appearance of the material but they do not alter its molecular structure and while they may be aesthetically important, they are not technically required to have a functional chassis. Finally, assembly involves mechanically putting together various components and is reversible. Consequently, Commerce equating welding with "other processing" is not tenable because welding is fundamentally different than trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, {and} assembly.

For the Court to sustain Commerce on the unresolved ambiguity of whether welding and fabrication are "other processes," the record would have to contain some indication that petitioner or the agency intended "other process" to include a transformative process like welding. The record evidence, however, all points to the contrary. Welding is a manufacturing step that is central – not incidental – to chassis production. No rational agency with knowledge of the industry would dispute that point or inadvertently omit welding from a list of chassis

manufacturing processes. Indeed, the record is replete with testimony about welding's critical role in chassis making.

In the initial investigation, petitioner repeatedly testified to the unique importance of welding. Petitioner's lead attorney testified that "the largest volume of value added is in the engineering, manpower, and technical expertise that takes place in *fabricating and welding* the steel frames." Appx2971 (emphasis added). Another petitioner witness explained "{t}he real element of transformation that we do is *welding*." Appx2972 (emphasis added). Petitioner's lead counsel reaffirmed the uniqueness of welding, declaring "{t}he key technical expertise is where the welding takes place and that's in China." Appx2976. Taken together, these statements underscore the central importance of welding and fabrication to chassis manufacturing. They leave no reasonable doubt that petitioner – which included Pitts – and, by extension, Commerce, intentionally omitted welding from the Paragraph 5 list of exemplary processes, recognizing that its inclusion would capture manufacturing activities petitioner – most notably Pitts – knew about and deliberately chose not to cover.[16]

Commerce's failure to consider an important aspect of the problem leaves its Remand Redetermination unsupported and not in accordance with law.

> **b.      *Commerce Cannot Justify Its Interpretation of "Process" by Post Hoc Reliance on a Separate Agency's Non-Technical Reference to Welding***

Commerce relies extensively on U.S. Customs and Border Protection ("CBP") references to welding as a "process" in its verification report to support its interpretation that the *Orders*

---

[16]    Pitts announced its partnership with THACO in June 2020 – *before* Pitts and others filed the AD/CVD petitions. Appx80258.

include welding as an "other process." Appx81953.[17] As a (k)(1)(ii) secondary interpretive source, the CBP verification report cannot override primary interpretive sources let alone the plain meaning of the scope text .Commerce, however, cannot abdicate its statutory responsibility to write and interpret the scope of the *Orders* to a separate agency, especially when Commerce is the ultimate arbiter of scope. CBP did not write the scope and is not tasked with interpreting it. It is clear that CBP used the term "processing" only generically, and issued its verification report years after the *Orders* were imposed. CBP's belated and generic reference to "processing," thus, does not sustain Commerce's conclusion that Pitts' chassis have always been within the scope.

It is remarkable that Commerce sidestepped the Court's instruction to "resolve the noted ambiguities" over welding as an "other process," by relying not on its own record from the 2020-2021 investigation in the original AD/CVD investigation but, instead, on CBP's reference to welding as a process in its 2023 EAPA verification report. Appx81953.. The Court should remand first because Commerce has effectively abdicated its responsibility to interpret the *Orders* and explain the same to the Court and because Commerce cannot now claim the scope has meant from the beginning what CBP said two years after petitioner drafted the scope. Appx0011-0012 ("Ultimately, even if an order is ambiguous, a 'ruling that a product is covered by the scope of an order is a determination that the product has always been covered by the order." (citing 19 C.F.R. § 251.225(a) and *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1320–21 (Fed. Cir. 2020))).[18] Petitioners' counsel and Commerce know how to include welding as a part of the scope. For instance, the scope of the AD and CVD orders in *Certain Mobile Access Equipment and*

---

[17]  Commerce is silent on fabrication, stating only that THACO performs little fabrication on axle and landing gear subassemblies. Appx81951, Appx81953-81955.

[18]  Still, Commerce's scope rule recognizes its authority to limit retroactive applications. 19 C.F.R. §§ 351.225(l)(2)(iii)(B), (3)(iii)(B).

*Subassemblies Thereof From the People's Republic of China* contains a materially identical third country processing provision that expressly calls out welding as processing.[19] Likewise, in *Large Diameter Welded Pipe from Greece and Turkey*, the scope explicitly specifies that welding is a process that does not remove in-scope merchandise from the order when conducted in a third country.[20] Even in the context of finishing operations, Commerce unambiguously included welding in the scope of the *Certain Freight Rail Couplers and Parts Thereof from China and Mexico*.[21]

Here, it is a mistake for Commerce to read the scope of the *Orders* to include welding as "other processing," especially when welding is such a vital part of the domestic chassis manufacturing process, as described above, and Commerce has repeatedly included welding in the scope of other orders, thereby leaving no room for confusion over such an important manufacturing activity. Indeed, if welding is merely "other processing" in the context of chassis manufacturing, it is difficult to imagine what manufacturing activity would not be included in that residual scope provision. As currently drafted, the Remand Redetermination's finding that

---

[19] *See, e.g.*, *Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 70439, 70442 (Dep't of Commerce Dec. 10, 2021).

[20] *See, e.g.*, *Large Diameter Welded Pipe from Greece: Antidumping Duty Order*, 84 Fed. Reg. 18769, 18771 (Dep't of Commerce May 10, 2019).

[21] *See, e,g.*, *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Antidumping Duty Order*, 88 Fed. Reg. 45138, 45139 (Dep't of Commerce July 14, 2023).

welding is "other processing" is unsupported and impermissibly expands the scope of the *Orders*.

### c. Commerce Has Ignored the Realities of the Marketplace that THACO Is Manufacturing – Not Merely Assembling or Processing – Chassis in Vietnam

Commerce dismisses THACO's manufacturing activities in Vietnam as inconsequential in what Pitts submits is nothing more than a pretext to justify the agency's original decision without resolving the ambiguities in the record. Indeed, the source of the raw material and not the processing is the only meaningful distinction between Commerce's treatment of the chassis frame and the running gear and landing gear subassemblies. As discussed below, the record evidence demonstrates beyond question that THACO transformed individual components and raw materials into a new and different article of commerce, *i.e.*, a finished Vietnamese chassis.

According to Commerce, THACO's fabrication of components is hardly worthy of attention because THACO only fabricated a small number of minor components. Appx81951.

Pictured below are the components THACO fabricates for the landing gear subassembly which Commerce deemed "minor components." Appx81955.[22]



Appx1567.

Commerce's claim resonates based simply on looking at the end product pictured above. But the scope framework and scope order language require more. However minor the above components may appear, Commerce cannot shirk its responsibility to engage in a meaningful review of the record evidence which shows that THACO employs a significant amount of labor and equipment to fabricate just those four components.

---

[22]  Pitts disputes that these are minor components because, without them, the landing gear legs cannot attach to each other or "to the chassis frame," as required by Paragraph 2 of the scope.

31

To fabricate the brackets and the landing gear bracing pictured above (everything except the linking bar (in yellow)), THACO purchases coiled steel which must first be unwound on an unwinding machine. These steps are pictured below.




Appx1568 (Scope Application, Exhibit 15). Next, the sheets are laser cut and bent as pictured below.





Appx1568.

32

To fabricate the linking bar, THACO purchases coiled steel and then shapes it on its tube rolling line pictured below.



Appx1571.

The piece is then shaped using a laser.



Appx1571.

33

To complete the linking bar, THACO uses a robotic welder to weld the brackets it has fabricated to the linking bar as pictured below.



Appx1572.

In addition to the steps pictured above, THACO still must weld, paint, and attach the landing gear subassembly to the chassis frame. *See* Appx1568-1581. In isolation, any of the above activities could arguably be characterized as processing. Taken as a whole, the above show that Commerce's dismissal of THACO's fabrication of parts for the landing gear as an inconsequential step is not supported and not in accordance with law.

With respect to the running gear subassembly, Commerce labels THACO's activities as "assembly" or "other processing." Appx81966. Within the context of this industry, Commerce's characterization is meaningless because even the U.S. producers manufacture a running gear subassembly using a mixture of welding and processing steps.[23] There simply is no other way to manufacture a running gear subassembly. By reading the scope language as it does, Commerce is interpreting the scope to cover every chassis manufacturer in the world, including in the United States, that sources one or more components from China. Commerce's interpretation, if accepted,

---

23    *See* Appx80232 (ITC staff report noting running gear consists of third-party components which U.S. producers assemble and install on the chassis frame).

opens the door for offshore competitors to target U.S. producers with EAPA allegations. *See also* Appx2685 (defects in administrability).

In addition to the need for a remand to Commerce for the agency to explain how its interpretation would not produce the absurd results described above, Commerce's analysis of the record is not supported. THACO transforms a number of individual components into a finished running gear subassembly using a combination of manufacturing activities including "fabrication, welding, painting, assembly, and packing." Appx81191. Pitts informed Commerce when it filed the scope request that THACO imports various components from China into Vietnam. Appx1044, Appx1544-1581. Specifically, for the running gear subassembly, THACO imports axles, suspensions, tires, wheels, and brakes from China. Appx2650. Commerce places undue weight on those facts given the Court's holding on the plain meaning of entered. Whether THACO imports individual Chinese components or combinations thereof is irrelevant to their status as subject merchandise; because they never enter the United States, Paragraphs 4 and 6 do not apply.

Commerce consistently treated the axles (pictured below on the left) as components until its Remand Redetermination, at which point Commerce reclassified them as unfinished running gear subassemblies. Appx1545.[24] Petitioner also considered these same axles to be components and informed Commerce that treating "subassembly components imported in separate individual shipments as an unfinished chassis . . . would contradict Petitioner's, respondents', and the Department's understanding of how components are treated under the scope." Appx2533. Pictured below on the right is how the petitioner defined a running gear assembly in the original

---

[24]   As discussed in Section III.A.4, Commerce treats the axles inconsistently in the Remand Redetermination, calling them nonsubject components in the analysis and unfinished subassemblies in the comments.

petition at the start of the AD/CVD investigations. Appx1108 (Petition depiction of running gear assembly).




Running gear assembly:

There is no dispute that THACO imports subassembly components into Vietnam in separate shipments. Appx81950, Appx81956. Nor is there any dispute that the Chinese components THACO imported into Vietnam are not subject merchandise. Appx81950. THACO also imported components for the running gear subassembly from the United States and Canada. Appx2016. According to Commerce, THACO's transformation of individual components into a fully finished and operational running gear subassembly, is mere processing – despite the reality that every chassis manufacturer undertakes these steps. Appx80091 (citing ITC Final at I-14 to I-15). The following describes how the manufacturing activities THACO performs to transform the components into a running gear subassembly.

As imported by THACO into Vietnam, the axle pictured above has no means of being attached to a chassis frame and it is only after THACO welds the suspension hangers (the four

36

black components below) to the frame that it is capable of being connected. Appx80618.[25]

Indeed, it is only after this first manufacturing step that the axle even arguably meets the

specification in paragraph 2 of the scope that "{s}ubject merchandise includes . . . running gear

assemblies or axle assemblies *for connection to* the chassis frame."



Appx1545.

Commerce minimizes the importance of welding the suspension hangers to the axle by saying it

"is merely welding brackets to the axle . . . for connection to the chassis frame." Appx81967. But

if those "mere" welds fail, the entire running gear assembly would break off the chassis. The fact

that the number of welds is few in number cannot minimize their importance to the overall

manufacturing of a finished chassis. Unlike any of the processing steps listed in Paragraph 5,

welding has detailed requirements for certification. *See* Appx2905, Appx2908, Appx2915-2939.

Likewise, welding is unique because it affects the material at the atomic level and creates a

permanent bond. Appx2947-2954.

---

[25]  Commerce ignores scope language requiring subject merchandise to be capable of connecting to a chassis frame (*AD Order* at 36094 and *CVD Order* at 24845), even though it previously distinguished subassemblies from components and stated that items that are not part of, or do not connect to, a chassis frame fall outside the scope. Appx80596; *see also* Appx80092-80093. Commerce once treated this connection as a defining feature of scope coverage. Appx1081. Note that the blue brackets already attached to the axle are not what connect the axle to the chassis.

After THACO welds the suspension hangers to the chassis frame (not pictured) and just like every other chassis manufacturer in the world, THACO begins to assemble the axle subassembly. Appx80626. Over 85 components make up the running gear subassembly and the following description and pictures below provide a high-level overview of the production process. Appx81080-81092 (listing additional components beside the axle). THACO paints the axle and then assembles the suspension springs to the axle which are tightened and checked, (Appx1555) followed by the bracing, consisting of a fixed and adjustable torque arm, (Appx1556) and the spring brake and air hoses. Appx1557.



Appx1548.

As established above, THACO's manufacturing activities transform nonsubject Chinese components that THACO imported into Vietnam into a finished chassis. Only if one abandons common sense and reason, as the Remand Redetermination has done, could THACO's manufacturing of a finished chassis from raw materials and nonsubject components be

38

considered "other processing." Paragraph 5 makes sense only if the processing provision applies solely to products already in-scope, as both the text and petitioner's intent confirms. By removing that limitation, Commerce has expanded the scope to cover chassis manufactured anywhere in the world using Chinese components. Because Commerce has not articulated any measurable standard to follow, everyone is in the dark about what triggers liability. The Court should not allow Commerce's flawed and unsupported interpretation and reasoning to stand.

### 3.     Sold by Themselves

The Court expressly held that the scope language is ambiguous as to when components are included within the *Orders* and specifically identified the phrase "sold by themselves" as requiring clarification. Appx0018. The Court directed Commerce to resolve the ambiguity and articulate a principled standard distinguishing excluded individual components from subject merchandise. Appx0019-0020.

In the Remand Redetermination Commerce bypassed the Court's directive by recharacterizing the Chinese-origin axles and landing gear legs as "unfinished subassemblies."[26] At the same time, Commerce continues to claim that the scope covers the components based on its conclusion that the Chinese components – even when fully manufactured into a finished subassembly permanently attached to a finished Vietnamese chassis – are not removed from the scope of the *Orders*. Appx81950-81951.

Commerce's analysis fails because Commerce is not starting with the merchandise as entered into the United States but is perpetuating the same analytical flaw the Court identified in the original ruling, by treating components as subject merchandise solely because they eventually become part of a chassis. As provided above, the Court expressly rejected that

---

[26]   As discussed in Section III.A.1, there is no support in the scope language for Commerce's interpretation.

reasoning, holding that the *Orders* do not make clear that components lose their excluded status simply because they are later incorporated into a finished product. Yet Commerce again relied on eventual integration into a chassis rather than the conditions of sale or entry, leaving the "sold by themselves" exclusion undefined.

In short, Commerce failed to comply with the Court's remand instructions because it never resolved the ambiguity the Court identified. By declining to define "sold by themselves" and instead advancing a new factual characterization of the merchandise, Commerce did not clarify the scope language as required, but repeats the very error that necessitated remand.

## IV.    CONCLUSION

Pitts respectfully asks the Court to remand for further proceedings for Commerce to resolve the problems identified above in its Remand Redetermination.

Respectfully submitted,


/s/Emily Lawson
Emily Lawson
Edmund Sim
Frank Morgan
APPLETEON LUFF
1700 Seventh Avenue
Suite 2100 Seattle, WA 98101
(206) 357-8522
***
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

*Counsel to Pitts Enterprises, Inc.*
*dba Dorsey Intermodal*

Dated: March 19, 2026

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing contains 9,906 words, as computed by Appleton Luff's word processing system (Word with Microsoft 365) inclusive of headings, footnotes, and quotations exclusive of the table of contents and authorities, and certificate of counsel, and counsel's signature block, and therefore complies with the maximum 10000-word count limitations set forth in 2B(1) of the Standard Chamber Procedures of the U.S. Court of International Trade.

By:    /s/ Emily Lawson
   Emily Lawson

*Counsel to Pitts Enterprises, Inc.*
*dba Dorsey Intermodal*

Dated: March 19, 2026

**ARTIFICIAL INTELLIGENCE DISCLOSURE NOTICE**

Pursuant to Judge Kelly's Order on Artificial Intelligence, the undersigned certifies the following.

1) ChatGPT, Google Gemini, and Microsoft Copilot were used to assist in editing Plaintiff's Comments for clarity, brevity, and grammar. The following specific portions of text have been drafted with the assistance of AI: p. 28, paras. 1-2, p. 35, para. 1, and footnotes 7, 11, 14, and 25.

2) The undersigned certifies that the use of the above programs has not resulted in the disclosure of any confidential or business proprietary information to any unauthorized party.

By:   /s/ Emily Lawson
      Emily Lawson

      *Counsel to Pitts Enterprises, Inc.*
      *dba Dorsey Intermodal*

Dated: March 19, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing Comments on Commerce's Final Remand Determination with the Clerk of the United States Court of International Trade via the Court's Case Management/Electronic Case Files (CM/ECF) system in *Pitts Enterprises, Inc. v. United States*, Court No. 24-00030. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system at that time.

By:    /s/ Frank Morgan
       Frank Morgan

       *Counsel to Pitts Enterprises, Inc.*
       *dba Dorsey Intermodal*

Dated: March 19, 2026