**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, | Court No. 24-00030 <br><br> Public Version <br> BPI Removed on Pages 10 and 15 |

---

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S COMMENTS ON REMAND RESULTS**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:
SAPNA SHARMA
Senior Counsel
U.S. Department of Commerce
Office of the Chief Counsel For Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
(202) 909-9632
sapna.sharma@trade.gov

CATHERINE M. YANG
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington D.C. 20044
(202) 514-4336
catherine.m.yang@usdoj.gov

February 20, 2026

Attorneys for Defendant

## TABLE OF CONTENTS

BACKGROUND ......................................................................................................................1

    I.     The Antidumping And Countervailing Duty Orders....................................................1

    II.    Administrative Proceedings And Remand Order........................................................3

    III.   Commerce's Remand Proceedings ..........................................................................4

ARGUMENT.........................................................................................................................7

    I.     Standard of Review...................................................................................................7

    II.    The Court Should Sustain Commerce's Remand Determination .............................7

        A.  Commerce Adopted The Court's Meaning of "Entered" ...................................7

        B.  Commerce Reasonably Determined That Chinese-Origin Landing Gear And
            Running Gear Subassemblies Are within The Scope of The *Orders* ..................8

        C.  Commerce Reasonably Determined That The Third-Country Processing in
            Vietnam Does Not Exclude The Subassemblies from The Scope of
            The *Orders* .......................................................................................................17

            1.  Commerce Correctly Considered Third-Country Processing After Finding
               The Subassemblies within Scope.................................................................17

            2.  Commerce Reasonably Determined That Third-Country Welding and
               Fabrication Does Not Remove The Subassemblies from The Scope .........18

CONCLUSION.....................................................................................................................27

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Am. Silicon Tecs. v. United States,*
   261 F.3d 1371 (Fed. Cir. 2001) ............................................................................ 7

*Asia Wheel Co. v. United States,*
   762 F. Supp. 3d 1289 (Ct. Int'l Trade 2025) ......................................................... 14

*Bell Supply Co. v. United States,*
   888 F.3d 1222 (Fed. Cir. 2018) ............................................................................ 17

*Bethlehem Steel Corp. v. United States,*
   223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ........................................................... 7

*Consol. Edison Co. v. NLRB,*
   305 U.S. 197 (1938) .............................................................................................. 7

*Downhole Pipe & Equip., L.P. v. United States,*
   776 F.3d 1369 (Fed. Cir. 2015) ....................................................................... 7, 16

*Globe Metallurgical, Inc. v. United States,*
   865 F. Supp. 2d 1269 (Ct. Int'l Trade 2012) ..................................................... 16, 24

*MacLean-Fogg Co. v. United States,*
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................................... 7

*NEXTEEL Co. v. United States,*
   461 F. Supp. 1336 (Ct. Int'l Trade 2020) .............................................................. 26

*Novosteel SA v. United States,*
   284 F.3d 1261 (Fed. Cir. 2002) ............................................................................ 25

*NSK Ltd. v. United States,*
   245 F. Supp. 2d 1335 (Ct. Int'l Trade 2003) .......................................................... 19

*Peer Bearing Co.-Changshan v. United States,*
   587 F. Supp. 2d 1319 (Ct. Int'l Trade 2008) .......................................................... 24

*Pitts Enters. v. United States,*
   803 F. Supp. 3d 1315 (Ct. Int'l Trade 2025) ................................................... *passim*

*QVD Food Co. v. United States,*
   658 F.3d 1318 (Fed. Cir. 2011) ............................................................................ 22

*SMA Surfaces, Inc. v. United States*,
   658 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ............................................................... 26

*SMA Surfaces, Inc. v. United States*,
   617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023) ............................................................... 14

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) .................................................................................... 17

*Taizhou United Imp. & Exp. Co. v. United States*,
   560 F. Supp. 3d 1316 (Ct. Int'l Trade 2022) ............................................................... 15

*Tianjin Wanhua Co. v. United States*,
   179 F. Supp. 3d 1062 (Ct. Int'l Trade 2016) ............................................................... 17

*Vicentin S.A.I.C. v. United States*,
   404 F. Supp. 3d 1323 (Ct. Int'l Trade 2019) ............................................................... 19

*Win-Tex Prods., Inc. v. United States*,
   843 F. Supp. 709 (Ct. Int'l Trade 1994) ...................................................................... 13

**Statutes**

19 U.S.C. § 1516a(b) ......................................................................................................... 7

**Administrative Determinations**

*Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping
   Duty Order*,
   86 Fed Reg. 36,093 (Dep't of Commerce July 8, 2021) ...................................... *passim*

*Certain Chassis and Subassemblies Thereof from the Peoples' Republic of China:
   Countervailing Duty Order*,
   86 Fed. Reg. 24,844 (Dep't of Commerce May 10, 2021) .................................... *passim*

*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China*,
   88 Fed. Reg. 45138 (Dep't of Commerce July 14, 2023) ............................................ 25

*Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of
   China*,
   86 Fed. Reg. 70439 (Dep't of Commerce Dec. 10, 2021) ........................................... 24

*Large Diameter Welded Pipe from Greece*,
   84 Fed. Reg. 18769 (Dep't of Commerce May 2, 2019) .............................................. 25

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| PITTS ENTERPRISES, INC. ) DBA DORSEY INTERMODAL, ) | |
| ) | Court No. 24-00030 |
| Plaintiff, ) | |
| ) | Public Version |
| v. ) | BPI Removed on Pages 10 and 15 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S COMMENTS ON REMAND RESULTS**

Defendant, the United States, respectfully submits this response to the comments filed by

plaintiff Pitts Enterprises, Inc. DBA Dorsey Intermodal (Pitts), ECF No. 57 (Pl. Cmts.),

concerning the U.S. Department of Commerce's (Commerce) final remand redetermination filed

in accordance with this Court's decision and order in *Pitts Enters. v. United States*, 803 F. Supp.

3d 1315 (Ct. Int'l Trade 2025) (*Remand Order*).  *See* Final Results of Redetermination Pursuant

to Court Remand, dated February 10, 2026, ECF Nos. 51 and 52 (Redetermination).  Because

Commerce's Redetermination complies with the Court's remand order and is supported by

substantial evidence and otherwise in accordance with law, the Court should sustain the remand

results and enter judgment for the United States.

**BACKGROUND**

**I.      The Antidumping And Countervailing Duty Orders**

In 2021, Commerce published the antidumping duty and countervailing duty orders

covering chassis and subassemblies from China.  *See Certain Chassis and Subassemblies*

1

*Thereof from the People's Republic of China: Antidumping Duty Order*, 86 Fed Reg. 36,093

(Dep't of Commerce July 8, 2021); *Certain Chassis and Subassemblies Thereof from the*

*Peoples' Republic of China: Countervailing Duty Order*, 86 Fed. Reg. 24,844 (Dep't of

Commerce May 10, 2021) (collectively, *Orders*).  The *Orders* state, in pertinent part:

> The merchandise covered by the *Orders* consists of chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled, whether coated or uncoated, regardless of the number of axles, for carriage of containers, or other payloads (including self supporting payloads) for road, marine roll-on/roll-off (RORO) and/or rail transport. Chassis are typically, but are not limited to, rectangular framed trailers with a suspension and axle system, wheels and tires, brakes, a lighting and electrical system, a coupling for towing behind a truck tractor, and a locking system or systems to secure the shipping container or containers to the chassis using twistlocks, slide pins or similar attachment devices to engage the corner fittings on the container or other payload.
>
> Subject merchandise includes, but is not limited to, the following subassemblies:
> •      Chassis frames, or sections of chassis frames, including kingpin assemblies, bolsters consisting of transverse beams with locking or support mechanisms, goosenecks, drop assemblies, extension mechanisms and/or rear impact guards;
> •      Running gear assemblies or axle assemblies for connection to the chassis frame, whether fixed in nature or capable of sliding fore and aft or lifting up and lowering down, which may or may not include suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels;
> •      Landing gear assemblies, for connection to the chassis frame, capable of supporting the chassis when it is not engaged to a tractor; and
> •      Assemblies that connect to the chassis frame or a section of the chassis frame, such as, but not limited to, pintle hooks or B-trains (which include a fifth wheel), which are capable of connecting a chassis to a converter dolly or another chassis.
>
> Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of these Orders.
>
> Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.

Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.

Individual components entered and sold by themselves are not subject to the Orders, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of several different types of subassemblies. Within each subassembly there are numerous components that comprise a given subassembly.

## II.    Administrative Proceedings And Remand Order

On March 15, 2023, Commerce initiated a scope inquiry to determine whether certain finished chassis produced by Pitts' Vietnamese supplier, Truong Hai Auto Corporation Special Vehicles Manufacturing Limited Company (THACO), containing what Pitts described as Chinese-origin axle and landing gear components, are outside the scope of the *Orders*. *See Remand Order* at 1319. On January 10, 2024, Commerce issued its final scope ruling finding that, based on the plain language of the *Orders*, the finished chassis constituted subject merchandise within the scope of the *Orders*, on the grounds that the finished chassis contained Chinese-origin components that had been entered with or for further assembly with a finished or unfinished chassis. *Id.*

Pitts challenged Commerce's ruling and on October 8, 2025, this Court issued its *Remand Order* holding that Commerce's scope determination was not in accordance with law and was not supported by substantial evidence. *Id.* at 1330. Specifically, this Court ordered that on remand Commerce must adopt the plain meaning of the word "entered" in paragraphs 4 and 6 of the *Orders* to mean "entered into the United States." *Id.* Further, the Court held that the scope language is ambiguous with regard to 1) when components are included within the scope of the *Orders*, 2) when third-country operations remove otherwise in-scope merchandise from the

3

scope of the *Orders*, and 3) the meaning of "subassemblies … whether … assembled or unassembled" as it relates to individual components. *Id.* at 1325-27.  The Court ordered Commerce to "resolve the noted ambiguities, and then apply the scope language" to the merchandise under consideration. *Id.* at 1330.  The Court additionally found that Commerce's decision to impose AD and CVD duties on the entire value of the imported chassis was not adequately explained and ordered Commerce to "reconsider or further explain its determination." *Id.* at 1329-30.

### III.    Commerce's Remand Proceedings

On remand, Commerce issued a draft redetermination, to which Pitts filed comments. Appx2637-53 (draft results), Appx2654-86 (Pitts comments).  Commerce issued its final redetermination on February 10, 2026, in which it addressed each of Pitts' six comments. Redetermination at 1-32; *see also* Appx81940-71.

Commerce's redetermination reevaluated the plain scope language pursuant to the Court's holding that the word "entered" in paragraphs 4 and 6 may only mean "entered into the United States" unless specifically stated otherwise.  Redetermination at 11.  Applying that meaning, Commerce determined that imports of individual Chinese chassis components from China to Vietnam are not subject merchandise within the scope of the *Orders*, because those individual components have not "entered" into the United States.  *Id.*

Commerce then turned to the ambiguities in the scope language that the Court ordered it to resolve and, in its reevaluation, considered the scope language, the product description in Pitts' scope ruling request, and supplemental responses from Pitts and THACO in the scope inquiry record.  *Id.* at 8.  Commerce concluded that THACO's finished chassis falls within the scope of the *Orders* only in part: the "Chinese running gear subassemblies and landing gear

4

subassemblies contained within {the} finished chassis … fall within the *Orders'* description of in-scope merchandise as chassis subassemblies, and, therefore are covered by the scope of the *Orders.*" *Id.* at 2; *see also id.* at 32.  "{T}he remainder of the finished chassis does not fall within the description of in-scope merchandise." *Id.* at 8.

Commerce first determined that what Pitts characterized as "individual axles" and "landing gear components" imported from China to Vietnam were not "individual components," but instead were unfinished axle (running gear) and landing gear subassemblies comprising axles and landing gear legs <u>with</u> numerous additional main components already attached or imported together for attachment.  *Id.* at 20-24.  Commerce pointed to information from Pitts and THACO showing that the imported landing gear legs and axles comprised numerous components already included: "THACO's imported axle from China includes multiple listed component pieces already attached to the axle … or for later attachment," and "THACO's landing gear legs also include components other than the landing gear legs." *Id.* at 20-21.  The specifications for the axles and landing gears demonstrated the same, as did photos that Pitts presented in its scope application. *Id.* at 21-22.  These additional components already attached or imported together with the landing gear legs and axles were, in Pitts' own telling, "main components in landing gear and running gear subassemblies." *Id.* at 23-24.  Commerce also explained that THACO had described the landing gear legs and axles as Chinese-origin chassis assemblies and subassemblies. *Id.* at 21-22; *see also id.* at 11-13.  Thus, Commerce concluded that the landing gear legs and axles are subassemblies and within the scope of the *Orders*. *Id.*

Commerce further determined that THACO's welding and fabrication in a third country (Vietnam) does not remove the landing gear and running gear subassemblies from the scope of the *Orders*.  Commerce explained that record evidence supported a finding that "welding and

5

assembly" of an unfinished chassis in Vietnam falls within the type of "processing" referenced in the scope of the *Orders*, and that the inclusion of some other non-scope components does not otherwise remove the landing gear and running gear subassemblies from the scope. *Id.* at 12-16, 27-28. With respect to fabrication, Commerce noted that "almost all" the components of these subassemblies were fabricated in and imported from China, whereas THACO "only fabricated or imported a few components from other countries for these subassemblies." *Id.* at 12, 14-15. For instance, THACO reported that "its running gear and axle subassemblies were produced completely using components from China." *Id.* at 15. Commerce also identified record evidence that THACO "assembles" finished landing gear and running gear subassemblies by attaching additional components to Chinese-origin subassemblies, including through welding. *Id.* at 12-14, 26-28. Commerce further explained that "processing" broadly "captures all forms of processing, whether minor, major, or 'transformative,'" and that welding "is a manufacturing process" and—like "assembly"—another "method of joining, adding, or including components to a finished or unfinished chassis." *Id.* at 27-28. Commerce cited to a Customs and Border Protection (Customs) verification report describing THACO's third-country fabrication, welding, and assembly as processing, and also relied on information from THACO and Pitts regarding "the welding activity that THACO conducts." *Id.* at 28.

Finally, Commerce reconsidered its decision to apply duties to the entire value of the imported chassis. Based on its determination that only the landing gear subassemblies and running gear subassemblies within Pitts' imported chassis from Vietnam are subject merchandise within the scope of the *Orders*, Commerce concluded that only the value of these two Chinese-origin subassemblies within the finished chassis are subject to duties. *Id.* at 16. "{N}o duties, with respect to these *Orders*, will be collected from the value of the remaining sections of the

6

finished chassis." *Id.*

## ARGUMENT

### I.    Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the Court will sustain Commerce's redeterminations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Tecs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001). The substantial evidence standard does not permit the Court to weigh or reweigh the evidence. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1378 (Fed. Cir. 2015).

### II.    The Court Should Sustain Commerce's Remand Determination

Commerce's determination that certain Chinese-origin subassemblies (the landing gear and running gear subassemblies imported by THACO) attached to Vietnamese-origin chassis frames are within the scope of the *Orders* and are subject to duties accords with the Court's remand order, and is based on substantial evidence and in accordance with law.

#### A.    Commerce Adopted The Court's Meaning of "Entered"

As an initial matter, Commerce complied with the Court's order to "adopt the plain meaning of the word 'entered' in the Orders, namely 'entered into the United States." *Pitts,*

803 F. Supp. 3d at 1325; Redetermination at 11.  Paragraph 4 of the *Orders* states that "{s}ubject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as …"  Paragraph 6 states that "{i}ndividual components entered and sold by themselves are not subject to the order …"  Commerce applied the meaning articulated by the Court and concluded that "{i}ndividual components" imported by THACO from China to Vietnam "do not constitute subject merchandise because they have not 'entered' into the United States."  Redetermination at 11.

Pitts incorrectly argues that Commerce "refus{ed} to accept the consequence of the Court's holding" regarding the meaning of "entered" in paragraphs 4 and 6.  Pl. Cmts. 2; *see also id.* at 6, 12 n.10, 13, 16.  In Pitts' view, once individual Chinese-origin components are determined out of scope, no part of the finished chassis can be in-scope.  *Id.*  That interpretation reads paragraphs 4 and 6 to the exclusion of every other paragraph of the *Orders*.  But the *Orders* do not only address components.  Paragraph 1 states that subject merchandise "consists of chassis and subassemblies thereof …."  Paragraph 2 says that subject merchandise includes "the following subassemblies: … Running gear assemblies … Landing gear assemblies."  Paragraph 3 provides that importation of "any of these subassemblies … constitutes an unfinished chassis."  Paragraph 5 discusses "unfinished chassis," which—per paragraph 3— includes the subassemblies in paragraph 2.  Stated differently, paragraphs 4 and 6 (and the Court's remand order regarding those paragraphs) address *components* that enter the United States.  They do not displace all the other paragraphs of the *Orders* that address what other merchandise constitutes subject merchandise.

**B.      Commerce Reasonably Determined That Chinese-Origin Landing Gear And Running Gear Subassemblies Are within The Scope of The *Orders***

In accordance with the Court's remand order, Commerce addressed when components are

included within the scope of the *Orders* and clarified the definition of what are considered assembled or unassembled subassemblies. Specifically, Commerce adopted the Court's meaning of "entered" in paragraphs 4 and 6 regarding components, and, with respect to the remainder of the *Orders*, determined that components are included within the scope when they constitute "unfinished chassis axle/running gear and landing gear subassemblies" with multiple "main components … already attached or imported together." Redetermination at 20-24. Commerce therefore found that the Chinese-origin landing gear and running gear items THACO imports into Vietnam are not individual components, but rather subassemblies. *Id.*

Substantial evidence supports this determination. Commerce explained that during the investigation, petitioners (including Pitts) stated that "where two or more components are sold together as a part of a subassembly, whether assembled or unassembled, such parts are in-scope merchandise." *Id*. at 22 (emphasis added); Appx1501. The agency also highlighted that Pitts had named the additional components attached to or imported with the landing gear legs and axles as being the "main components in landing gear and running gear subassemblies." Redetermination at 23-24; Appx1045 ("{A}n axle is a central rod or shaft," and that central rod "is an individual component of a running gear subassembly … which is also made up of the components, tires, hub and drum assemblies, suspensions, brake chambers," etc.; and describing a landing gear subassembly as comprising the leg, "shoes, a crank handle, and a rotating cross shaft").

Pitts' descriptions to Customs during that agency's *Enforcement and Protection Act* investigation likewise indicated that its imported chassis comprised Chinese-origin landing gear assemblies and running gear assemblies. Redetermination at 21; P.R. Doc. 36, Ex. 1. And Commerce explained that THACO's product brochures indicated that "the axle-running gear

9

assembly and landing gear assembly are Chinese-origin chassis subassemblies."

Redetermination at 21; Appx80519-20 (showing that the "landing gear" comprised [

], and that the "axles" comprised [

]), Appx80521-30 (showing similarly for other

chassis models).

Commerce also noted that the photos and specifications of "axles" and "landing gear

legs" that Pitts presented in its scope application show that those materials "arrive at its factory

with {multiple} components already attached or for later attachment." Redetermination at 21-

22. The photos "display{} the axles with the hub and drum assembly attached when it is opened

from the shipping container" and "the landing gear legs with shoes already attached while

strapped onto a pallet." *Id.* at 21 n.58; Appx1050-51. The specifications show that the axles

come with [                                ] attached; that one model of the landing gear comes with

[                                ]; and that another model of the landing gear also comes with the

[              ]. Redetermination at 21 n.56; Appx80538-45. The bill of materials further

reflects that the "imported axle from China includes multiple listed component pieces already

attached to the axle [

] or for later attachment [

]." Redetermination at 21; Appx81161. Similarly, the imported "landing gear legs also

include components other than the landing gear legs, such as [

]." *Id.* Commerce noted that these multiple additional components already attached to

and included with the "axles" and "landing gear legs" were "the main components necessary to

construct a landing gear and running gear subassembly." Redetermination at 23 & n.64;

Appx1045.

Thus, Commerce reasonably determined that the Chinese-origin running gear and landing gear materials imported by THACO into Vietnam were not "components" but rather running gear and landing gear subassemblies within the scope of the *Orders*. Paragraph 1 of the *Orders* explicitly includes subassemblies, "<u>whether finished or unfinished, whether assembled or unassembled</u>" (emphasis added). Paragraph 2 expressly describes "subassemblies" (whether finished or unfinished, whether assembled or unassembled) as including "Running gear assemblies or axle assemblies" and "Landing gear assemblies."

Pitts offers four overall arguments contesting Commerce's determination. The Court should reject each one.

1.      Pitts first argues that the term "unfinished" in the *Orders* "modifies chassis alone" and does not modify subassemblies. Pl. Cmts. 8-10. Pitts' interpretation of the scope language does not withstand scrutiny. The relevant language in the scope of the *Orders* states:

> The merchandise covered by the Orders consists of chassis and subassemblies thereof, <u>whether finished or unfinished, whether assembled or unassembled</u>, whether coated or uncoated, regardless of the number of axles, for carriage of containers, or other payloads (including self supporting payloads) for road, marine roll-on/roll-off (RORO) and/or rail transport.

(Emphasis added). The first sentence sets forth the merchandise covered ("chassis and subassemblies thereof"), followed by a series of descriptors that apply to that merchandise: finished or unfinished, assembled or unassembled, coated or uncoated, etc. Pitts' argument that "finished or unfinished" applies only to chassis, but that all the remaining descriptors apply to both chassis and subassemblies, defies grammatical sense. Nothing in the sentence sets the descriptor "finished or unfinished" apart from the remaining descriptors as applying only to chassis. Had the *Orders* meant for "finished or unfinished" to modify only chassis, they would have said so, *e.g.*, "The merchandise covered by the Orders consists of chassis<u>, whether finished</u>

11

or unfinished, and chassis and subassemblies thereof, {all remaining descriptors}" (emphasis

reflecting the interpretation Pitts advances).  But they do not; the *Orders* make clear that all the

descriptors in paragraph 1 modify chassis and subassemblies.

Pitts attempts to sidestep the plain language of paragraph 1 by pointing to other places,

such as paragraph 3, where the *Orders* refer to an "unfinished" chassis and to subassemblies

being "assembled or unassembled."  Pl. Cmts. 8-10.  All that establishes is that an assembled or

unassembled subassembly in paragraph 2 constitutes an unfinished chassis (because the

subassembly is not a finished chassis).  It does not exclude subassemblies from themselves being

finished or unfinished.  On the contrary, paragraph 1 of the *Orders* expressly states that

subassemblies can be "finished or unfinished."[1]

2.       Pitts also cherry-picks language to try to present an "inconsistency" in

Commerce's determination that the landing gear and running gear materials are subassemblies

rather than components.  Pl. Cmts. 3 n.5, 6, 16, 35 n.24 (citing to Appx2649-50 and Appx81952-

55).  But the citations Pitts relies on are to the draft remand analysis included in the final remand

results.  For the final remand determination, Commerce clarified in response to Pitts' comments

that its final finding is that the landing gear and running gear materials that THACO imported

from China are not individual components, but rather unfinished subassemblies with multiple

main components already attached or imported together.  Redetermination at 20-24 ("Commerce

---

[1] Although hard to follow, to the extent Pitts also contends (at Pl. Cmts. 10-11) that running gear and axle assemblies cannot be subassemblies, that argument is belied by paragraph 2, which states that "the following subassemblies" (emphasis added) are subject merchandise: "Running gear assemblies or axle assemblies" and "Landing gear assemblies" "for connection to the chassis frame."  There is no question that these assemblies THACO imports are for connection to the chassis frame, thus obviating Pitts' throwaway assertion that Commerce has ignored scope language.  Pl. Cmts. 37 n.25; *see also* Appx80596, Appx80092-93 (Commerce stating that merchandise that "does not connect to a chassis frame would be considered outside the scope of these investigations").

is clarifying its determination in the Draft Remand Results."). Commerce's redetermination must be read as a whole, and a clarification in the final remand supersedes an ambiguity in the draft remand. *See Win-Tex Prods., Inc. v. United States*, 843 F. Supp. 709, 712 (Ct. Int'l Trade 1994) (holding that the Court only reviews final results). There is no inconsistency in finding that unfinished subassemblies were imported into Vietnam and then assembled and finished there. The scope language explicitly contemplates that subject merchandise includes subassemblies "whether finished or unfinished, whether assembled or unassembled," and that third-country processing does not remove such merchandise from the scope of the *Orders*.

3.      Pitts next argues that the *Orders* cover only "Chinese chassis" and "subassemblies of Chinese chassis," not Chinese subassemblies of a Vietnamese chassis. Pl. Cmts. 14-16. Pitts' reasoning—echoing its above arguments that the *Orders* refer to "finished and unfinished" chassis—fails for the same reasons discussed above, as well as for additional reasons.

The very first sentence of the scope language states: "The merchandise covered by this order consists of chassis <u>and subassemblies thereof</u>, whether finished or unfinished, whether assembled or unassembled, …" (emphasis added). As Commerce explained, this phrase "conveys that certain chassis and chassis subassemblies from China are covered by the scope of the *Orders*." Redetermination at 18. This accords with the plain scope language. "Thereof" means "of that or it," and so the plain meaning of "chassis and subassemblies thereof" is "chassis and chassis subassemblies." Thereof, Meriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/thereof. The scope therefore covers "chassis from China" and "chassis subassemblies from China." Redetermination at 18-19. Here, Chinese-origin running gear and landing gear subassemblies are being imported and attached to a Vietnamese chassis frame. *Id.* at 19. "The Vietnamese chassis frame is not subject merchandise, but the Chinese-origin

subassemblies are subject merchandise." *Id.*

Pitts' alternative interpretation would read out the phrase "subassemblies thereof" from paragraph 1 of the *Orders*. Commerce explained: "If the scope was meant to only apply duties to subassemblies that are attached to a Chinese chassis, as Pitts suggests, then the additional phrase, 'subassemblies thereof,' would be superfluous because the finished chassis would be from China so the subassemblies comprising the finished chassis would already be covered." *Id.* at 19. "An interpretation that renders a term in the scope language meaningless and mere surplusage, is not reasonable." *Asia Wheel Co. v. United States*, 762 F. Supp. 3d 1289, 1303 (Ct. Int'l Trade 2025) (cleaned up). Pitts attempts to avoid that surplusage by arguing that "{p}aragraph 2 expressly states that subject merchandise includes subassemblies," Pl. Cmts. 15-16, but that reasoning only confirms the problems with Pitts' interpretation. Paragraph 2 defines certain subassemblies as subject merchandise. If the *Orders* covered only Chinese chassis, then the entirety of paragraph 2 would have no role to play because, under Pitts' approach, all subassemblies of a Chinese chassis already are in-scope. Such an interpretation would fail to "give{} effect to every word"—including paragraph 2 and "subassemblies thereof" in paragraph 1—in the *Orders*, rendering it unreasonable. *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023).

Pitts' reference to petitioners' intent provides no support for its argument that the *Orders* cover only Chinese chassis and subassemblies of Chinese chassis. Pl. Cmt. 16. As discussed above, Commerce determined that the "axles" and "running gear legs" imported by THACO are subassemblies, not components. Contrary to Pitts' suggestion that Commerce ignored petitioners' statements during the investigation, Commerce based its determination, in part, on petitioners' statements, including that "where two or more components are sold together as a part

14

of a subassembly, whether assembled or unassembled, such parts are in-scope merchandise." Redetermination at 22; Appx1501.  Indeed, petitioners stated that "Chinese-origin axle assemblies and landing gear assemblies are subject to the scope of the Orders" and referred to those assemblies interchangeably with "subject subassemblies."  Appx2154.

4.      Finally, Pitts contends that Commerce failed to comply with the Court's order to clarify when a group of components constitutes a subassembly.  Pl. Cmts. 7 n.7, 10-12, 17-23, 39.  Commerce provided that clarification.  Commerce reexamined the record evidence and determined that components constitute a landing gear or running gear subassembly (unfinished) when the grouping of "multiple components" reflects the "main components necessary to construct a landing gear and running gear subassembly" and are "already attached or imported together" for attachment.  Redetermination at 20-24.  As Commerce explained, "almost all" the components for the landing gear and running gear subassemblies were imported and purchased from China.  *Id.* at 12, 27 (emphasis added); Appx81282-83, Appx1651-1704.  Commerce's clarification addresses the Court's remand order and is consistent with the *Orders*.  *See also Taizhou United Imp. & Exp. Co. v. United States*, 560 F. Supp. 3d 1316, 1324 (Ct. Int'l Trade 2022) (rejecting plaintiff's "narrow reading of the language in the court's remand order" and looking to "the substance of the Remand Results").

The example of THACO's "axles" illustrates the point.  Commerce noted that the so-called "axles" are actually "axles with the hub and drum assembly attached" imported together with, among many other components, [                              ] "for later attachment."  Redetermination at 21 & n.58; Appx1050.  "Axles," "hub and drum assemblies," "spoke or disc wheels," "tires," and "brake control systems" are expressly identified as

15

"components" in the *Orders*.[2]  Importing an item that already attaches these individual components and imports them (along with many others) together for attachment, when such components are the main components to the subassembly, is what Commerce determined makes a group of components a "subassembly" within the scope of the *Orders*.  Redetermination at 20-24.

Pitts' remaining arguments on this issue contest the conclusions it thinks Commerce should have drawn from the record evidence.  Pl. Cmts. 20-23, 35.  Pitts' disagreement with Commerce's weighing of the evidence cannot disturb Commerce's finding.  *Downhole Pipe*, 776 F.3d at 1378 (rejecting effort to reweigh the evidence); *Globe Metallurgical, Inc. v. United States*, 865 F. Supp. 2d 1269, 1276 (Ct. Int'l Trade 2012) (the substantial evidence standard of review "contemplates {that} more than one reasonable outcome is possible on a given administrative record").  Commerce carefully considered and addressed Pitts' arguments. Redetermination at 17-32.  Commerce explained, for example, that it examined the petitioners' statements during the investigation and found especially weighty the statements that "where two or more components are sold together as a part of a subassembly, whether assembled or unassembled, such parts are in-scope merchandise." *Id.* at 22; Appx1501.  And Pitts' assertion that the petitioners intended differently, Pl. Cmts. 35, does not hold water.  The statement Pitts cites reflects the petitioners' intent that "subassembly components <u>imported in separate, individual shipments</u>" should not be treated as subject merchandise.  Appx2532-33 (emphasis added).  Commerce's determination here—that subassemblies include a grouping of multiple, main components "<u>already attached or imported together</u>," Redetermination at 20-24 (emphasis

---

[2] By contrast, the *Orders* do not list landing gear and axle assemblies or subassemblies as "components," as Pitts incorrectly suggests.  Pl. Cmts. 21.  The *Orders* expressly list landing gear and axle assemblies as "subassemblies" that are subject merchandise.

added), is entirely consistent with the petitioner's intent to keep "separate, individual shipments" of components out of scope.[3]

Accordingly, the Court should sustain Commerce's determination that the Chinese-origin landing gear and running gear items here are not merely component parts, but rather, subassemblies and therefore within the scope of the *Orders*.

### C.    Commerce Reasonably Determined That The Third-Country Processing in Vietnam Does Not Exclude The Subassemblies from The Scope of The *Orders*

In accordance with the Court's remand order, Commerce addressed when third-country processing excludes otherwise in-scope merchandise from the scope, and whether the word "processing" includes welding and fabrication. Commerce reexamined the record evidence and determined that "processing" may include welding and fabrication, and that THACO's processing in Vietnam of the running gear and landing gear subassemblies does not exclude those subassemblies from the scope of the *Orders*. Redetermination at 12-14, 26-28. The Court should sustain this determination as well.

#### 1.    Commerce Correctly Considered Third-Country Processing After Finding The Subassemblies within Scope

Pitts erroneously argues that Commerce used its "processing" determination to "bring

---

[3] The Court should reject Pitts' footnote purporting to challenge Commerce's determination regarding Pitts' administrability complaint. Pl. Cmts. 19 n.14; *see* Redetermination at 28-32. "{A}rguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *see also Tianjin Wanhua Co. v. United States*, 179 F. Supp. 3d 1062, 1067 (Ct. Int'l Trade 2016). In any case, Pitts' footnote lacks merit. Pitts takes issue with only one aspect of Commerce's administrability determination, attempting to distinguish instances where Commerce previously applied duties to subsections of merchandise entering the United States. Pitts' distinction—that the subsections here have been "transformed" and "integrated"—is irrelevant, where Pitts and THACO are able to provide valuations for the subassemblies, as Commerce already explained. Redetermination at 29-31. Consequently, there is no conflict with *Bell Supply Co. v. United States*, 888 F.3d 1222 (Fed. Cir. 2018), because the finished chassis entering the United States may be assessed as a non-subject Vietnamese chassis, with subject landing gear and running gear subassemblies.

out-of-scope merchandise … into the scope." Pl. Cmts. 6 n.6, 13-14 & n.11, 19.  Commerce did

no such thing.  As detailed above, Commerce first determined that the Chinese-origin landing

gear and running gear materials imported into Vietnam are landing gear and running gear

subassemblies.  Subassemblies, whether finished or unfinished, whether assembled or

unassembled, are covered by the *Orders*.  Having determined that the landing gear and running

gear subassemblies are subject merchandise, Commerce progressed to determine whether any

third-country processing removed that otherwise in-scope merchandise from the scope of the

*Orders*.  That is fully consistent with the *Orders* and this Court's remand order.

### 2. Commerce Reasonably Determined That Third-Country Welding and Fabrication Does Not Remove The Subassemblies from The Scope

To produce finished chassis in Vietnam, the Chinese-origin running gear and landing

gear subassemblies are assembled and then connected to a Vietnam-origin chassis frame.

Redetermination at 12.  This Court in its *Remand Order* held that Commerce had not explained

how the "welding and fabrication" of these subassemblies were the type of "processing"

contemplated by the scope language, and ordered Commerce to "explain how these operations

are processes." *Remand Order* at 1327.  Commerce accordingly reexamined the language of the

*Orders* and the record evidence and provided that explanation.  Redetermination at 12-14, 26-28.

Starting with the relevant language, the scope of the *Orders* states:

> <u>Processing</u> of finished and unfinished chassis and components <u>such as</u> trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or <u>any other processing</u> either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope.

(Emphasis added).  Commerce explained that "the plain scope language captures all forms of

processing, whether minor, major, or 'transformative.'"  Redetermination at 27.  This is because

"processing" and "any other processing" are broad terms.  *Id.*  The verb "process" means (in

18

relevant context) "to subject to a special process or treatment (as in the course of manufacture …)." Process, Meriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ processing.  The noun similarly means "a series of actions that produce something or that lead to a particular result," such as "manufacturing processes." *Id.*  And "any other processing" confirms the intended breadth, not narrowness, of the language.  *E.g.*, *Vicentin S.A.I.C. v. United States*, 404 F. Supp. 3d 1323, 1337 (Ct. Int'l Trade 2019) (holding that the phrase "any other calculation methodology" reflects a "broad ambit"); *NSK Ltd. v. United States*, 245 F. Supp. 2d 1335, 1371-72 (Ct. Int'l Trade 2003) (holding that the phrase "any other reasonable basis" "clearly provides Commerce with a great deal of discretion").

Commerce explained that welding "is a manufacturing process" and that, although welding is not individually listed among the illustrative examples in the *Orders*, the examples of processing activities are "not dispositive but serve{} as an example of potential activities." Redetermination at 27.  Commerce explained that welding falls within both "assembly" and "any other processing" as used in the *Orders*.  *Id.* at 14, 27.  Commerce noted that "assembly of unfinished chassis subassemblies and the connection of them to the chassis frame involves welding." *Id.* at 27.  Commerce further reasoned that because the scope language contemplates that "{i}nclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope," welding may reasonably be considered "another type of processing." *Id.* at 27-28.  This is because welding is "a method of joining, adding, or including components to a finished or unfinished chassis." *Id.* at 28.

Record evidence describing the way these subassemblies were assembled also supports Commerce's interpretation that welding constitutes both "assembly" and "any other processing." Commerce cited to a Customs verification report, where Customs officials described the main

19

chassis production processes that they observed at THACO's facility:  fabrication of chassis frames from raw steel, welding, painting, assembly, and packing.  *Id.* at 13; *see* Appx2179-93. Throughout the report, Customs officials referred to all of these actions as "processing":

> For instance, we witnessed some evidence of the following activities and sub-activities: <u>processing of raw steel into parts</u> for the chassis frames and landing gear workpieces (activity 1),… processing related to the kingpin and pickup plate (welding), <u>processing related to the axle (welding and assembly)</u>, <u>processing related to landing gear (welding)</u>.

Redetermination at 13 (emphasis added); *see* Appx2183.  Commerce also highlighted that record evidence demonstrated that THACO "processes these unfinished subassemblies by welding additional components, mostly purchased from China."  *Id.* at 27; *see* Appx81282-83, Appx1651-1704.  Consequently, Commerce has explained, based on the scope language and record evidence, its determination that welding constitutes both "assembly" and "any other processing."

Commerce additionally addressed the remainder of paragraph 5 of the *Orders* regarding third-country processing, which states that "{i}nclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope." Commerce explained that, pursuant to this scope language, subject merchandise includes "subassemblies that have been further processed in third countries and include minor non-Chinese origin components."  Redetermination at 15-16.  THACO's non-Chinese origin components were minor, Commerce found, because THACO imported "almost all" the parts for the running gear and landing gear subassemblies from China and "only fabricated or imported a few components from other countries for these subassemblies."  *Id.* at 12, 14-16; *see* Appx81282-85, Appx1651-1704.  For instance, the only fabrication THACO performed for the landing gear subassembly was for brackets.  Redetermination at 15.  The remainder of "its

20

landing gear subassembly was produced using components imported from China," and unlike the Chinese-origin components, the "brackets do not impart functional characteristics to the landing gear subassembly." *Id.* at 15-16. And whereas there was some (limited) fabrication with respect to the landing gear subassemblies, Commerce found it significant that THACO's running gear subassemblies "were produced completely using components from China." *Id.* at 15; *see also id.* at 30 (finding Pitts' mixed origin concern moot with respect to the running gear subassembly because that subassembly "is comprised of fully Chinese-origin components"); Appx81282-85, Appx1651-1704.

Pitts resists Commerce's determination on three grounds, but its arguments lack merit.

1.      The crux of Pitts' arguments with respect to "processing" is that the welding process in Vietnam was a "transformative manufacturing activity" and, therefore, could not result in a Chinese-origin subassembly remaining subject to the *Orders*. Pl. Cmts. 25-26. In Pitts' view, the "processing" referred to in the *Orders* excludes "transformative" processes, and welding is distinct in its "transformative" nature because "without welding there cannot be a chassis." *Id.*; *see also id.* at 36-39. However, as Commerce explained, "the plain scope language captures all forms of processing, whether minor, major, or 'transformative.'" Redetermination at 27. Moreover, Pitts' interpretation lacks internal consistency. Pitts conceives of "transformation" as some activity "without {which} there cannot be a chassis." Pl. Cmts. 26; *see also id.* at 25 (referring to components being "transformed into finished subassemblies"), 38 (depicting THACO's "manufacturing activities"). But it is equally true that without <u>assembly</u>, there cannot be a chassis, as Pitts acknowledges. *See id.* at 38 (depicting at least four "assembl{y}" steps in THACO's processing). Yet the *Orders* expressly list "assembly" among the examples of "any … processing" that does not remove otherwise in-scope merchandise from

21

the scope of the *Orders*.

Pitts' various attempts to distinguish welding from the listed examples of processing only confirm the internal inconsistencies in its interpretation.  For instance, Pitts argues that assembly "is reversible" and therefore distinct from welding.  Pl. Cmts. 26.  But other examples of processing—such as trimming, cutting, grinding, notching, punching, and drilling—also are not "reversible," yet are listed among the covered types of processing.  And in any event, Pitts points to no record evidence that welding cannot be "reversed" by removing the welding.  Likewise, Pitts contends that processes such as trimming, cutting, and grinding involve removal of material, whereas welding involves the joining of material.  *Id.*  But Pitts offers no explanation for why this matters to understand the meaning of "processing," when another listed example of processing—assembly—involves the joining, rather than removal, of material.  Nor does Pitts provide any explanation as to why the fact that welding has certification requirements is relevant to the question of whether welding constitutes a type of "assembly" or "any other processing" within the meaning of the *Orders*.  *Id.*; *see QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("the burden of creating an adequate record lies with interested parties and not with Commerce").

Pitts also complains that Commerce's interpretation would "cover every chassis manufacturer in the world, including the United States, that sources one or more components from China."  Pl. Cmts. 34.  This mischaracterizes Commerce's determination, which does not ask whether a manufacturer merely "sources one or more components from China."  *Id.*  As discussed above, Commerce first determined whether Chinese-origin landing gear and running gear items imported by THACO into Vietnam are subassemblies rather than individual components.  Only upon its finding that those items are subassemblies did Commerce then

proceed to determine whether welding in Vietnam constitutes "assembly" and "any other processing" that keeps in-scope merchandise within the scope of the *Orders*.

Thus, Pitts' attempt to limit the breadth of the "processing" language, including by reference to the *noscitur a sociis* canon of interpretation, fails. Pl. Cmts. 25-26. That canon only underscores Commerce's conclusion that welding may constitute both "assembly" and "any other processing," as listed in the *Orders*. Redetermination at 27. Indeed, elsewhere, Pitts admits that "a mixture of welding and processing steps" are used to "assemble and install" third-party components on a chassis frame. Pl. Cmts. 34 & n.23. Pitts itself therefore recognizes that there is overlap in what processes are encompassed in "assembling" and "installing" a subassembly on a frame, and that those processes include welding. *See also* Redetermination at 27 (noting record evidence that THACO "processes these unfinished subassemblies by welding additional components, mostly purchased from China").

The record evidence also supports Commerce's rejection of Pitts' "transformative" interpretation. Commerce explained that "the welding activity that THACO conducts when completing the landing gear and running gear subassemblies is merely welding brackets to the axle and landing gear assembly for connection to the chassis frame." *Id.* at 28 (emphasis added); *see* Appx1794-1836. THACO "applies welding minimally and instead spends most of its manufacturing process assembling, connecting, and bolting the various chassis components to the unfinished landing gear and running gear subassemblies for connection via bolting to the chassis frame." *Id.* (emphasis added). This is not a value judgment that welding brackets is inconsequential (Pl. Cmts. 37); it simply reflects Commerce's determination that, rather than being uniquely "transformative," the welding was not even among the most significant of the processes applied to these subassemblies at THACO's facilities. Rather, insofar as a process

23

"transformed" the product, bolting (not welding) was the process used to attach the assembled Chinese-origin subassemblies to the non-subject Vietnamese-origin chassis frame. Redetermination at 28.

2.      Pitts additionally argues that the term "welding" was intentionally excluded from the scope language, that Commerce has expressly described welding as processing in other scope orders, and that the Customs verification report Commerce cites "cannot override primary interpretative sources." Pl. Cmts. 24, 27-29. Pitts' first argument fails (as does its related contention that Commerce failed to address the issue). *Id.* at 24. Commerce considered Pitts' argument that "{i}f Petitioners intended welding to be included, it would have been expressly stated"—Commerce just reached a different determination than Pitts would like. Redetermination at 26-28. Omitting "welding" from the examples listed could just as readily indicate that the petitioners believed "welding" would be covered by the broad terms "assembly" and "any other processing," as Commerce determined on remand. The substantial evidence standard contemplates that "more than one reasonable outcome is possible on a given administrative record." *Globe Metallurgical*, 865 F. Supp. 2d at 1276.

Pitts' reference to other scope orders is also insufficient. Pl. Cmts. 28-29. "{E}ach administrative review is a separate segment of proceedings with its own unique facts." *Peer Bearing Co.-Changshan v. United States*, 587 F. Supp. 2d 1319 (Ct. Int'l Trade 2008). Pointing to scope orders for different products like mobile access equipment, welded pipe, and rail couplers, based on their own individual reviews, says very little about the meaning of "processing" as it pertains to the chassis and subassemblies in the *Orders* at issue here. And Pitts' argument fails under its own logic. None of the orders Pitts cites specifically lists "staining" as a type of processing, even though they all list "painting" and "coating" as examples

24

of processing.  *See* 86 Fed. Reg. 70439, 70442 (Dep't of Commerce Dec. 10, 2021); 84 Fed.

Reg. 18769, 18771 (Dep't of Commerce May 2, 2019); 88 Fed. Reg. 45138, 45139 (Dep't of

Commerce July 14, 2023).  The mere fact that those orders do not expressly list "staining," while

the chassis *Orders* here do, does not necessarily exclude staining from the meaning of

"processing" in those other orders—Commerce would need to make an individualized

determination on those records and the particular scope language.  Indeed, were it otherwise, the

inclusion of "welding" as a form of "finishing" in *Certain Freight Rail Couplers and Parts*

*Thereof From the People's Republic of China*, 88 Fed. Reg. at 45139, would undercut Pitts'

interpretation here, where the *Orders* include "finishing" as a form of "processing."  But rather

than comparing distinct orders, Commerce takes each on its own, and here it reasonably

determined that "welding" falls within the meaning of "processing," including by constituting

"assembly" or "any other processing."

Accordingly, Pitts' assertion that Commerce relied on a Customs verification report to

"override primary interpretative sources" (Pl. Cmts. 27-28) rings hollow.  As detailed above,

Commerce reexamined the language in the *Orders* and the record evidence and, in accordance

with this Court's order, explained its determination that "welding" here falls within the meaning

of "processing"—specifically, "assembly" and "any other processing."  That determination is

reasonable and supported by substantial evidence, and the Court should sustain it.

3.      Pitts mentions in passing that "Commerce is silent on fabrication," Pl. Cmt. 28

n.17, but this warrants little response.  For one, Pitts did not argue during the remand that

Commerce's draft results were deficient as they pertained to fabrication, instead presenting the

dispute as one over whether "welding" constitutes "processing."  *See* Appx2677-83; *see also*

Appx2657-63.  Pitts' undeveloped assertion, to the extent it is even intended as an argument for

this Court to consider, has been waived.  *See Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002); *SMA Surfaces*, *Inc. v. United States*, 658 F. Supp. 3d 1325, 1329 (Ct. Int'l Trade 2023) ("issues adverted to in a perfunctory manner … are deemed waived"); *NEXTEEL Co. v. United States*, 461 F. Supp. 1336, 1344 (Ct. Int'l Trade 2020) (finding waiver where the issue "was well within the scope of issues that {the plaintiff} should have addressed during the administrative proceeding on remand if it wished to litigate them before this court").

In any event, to the extent we can discern an argument, Pitts appears to take issue with Commerce's determination that subject merchandise includes "subassemblies that have been further processed in third countries and include minor non-Chinese origin components." Redetermination at 15-16.  Despite admitting that THACO fabricates only a few items for the landing gear subassembly, Pitts protests that these are not "minor" components because "THACO employs a significant amount of labor and equipment to fabricate just those" materials. Pl. Cmts. 31-34.  That may be correct, but it does not disturb the substantial evidence supporting Commerce's finding.  Commerce explained that the record indicates that little fabrication occurs in Vietnam; rather, THACO processes landing gear and running gear subassemblies in Vietnam by, among other things, "welding additional components, <u>mostly purchased</u> from China" (and therefore not fabricated in Vietnam).  Redetermination at 27-28 (emphasis added).  Commerce also identified record evidence referring to the fabrication of chassis frames from raw steel as just one of five "processing" activities.  *Id.* at 13; *see also id.* at 15 (noting THACO's reports that the only fabrication with respect to the landing gear subassembly was for brackets; that subassembly was otherwise "produced using components imported from China"); Appx2183, Appx1651-1704, Appx81282-85.  That the little fabrication THACO performed may require substantial labor and equipment, as Pitts contends, only highlights the labor and equipment that

26

would have been required to fabricate the Chinese-origin components. Indeed, Pitts does not even attempt to argue that THACO required any labor or equipment at all to fabricate parts for the running gear subassemblies—because the record shows that the running gear subassemblies "were produced completely using components from China." Redetermination at 15; *see* Appx1671-1704, Appx81282-85.

*    *    *

Having reevaluated the scope language and record evidence, Commerce determined that the Chinese-origin running gear and landing gear subassemblies within Pitts' imported finished chassis from Vietnam are subject to the scope of the *Orders*. Commerce further determined, in accordance with the Court's remand order, that only the value of these two subassemblies within the finished chassis are subject to duties, and that no duties are to be collected from the value of the remainder of the finished chassis. Redetermination at 16. Commerce's Redetermination complies with the Court's remand order and is supported by substantial evidence and in accordance with law.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Redetermination and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:                         s/ Catherine M. Yang
SAPNA SHARMA                        CATHERINE M. YANG

27

| | |
|---|---|
| Senior Counsel | Trial Attorney |
| U.S. Department of Commerce | U.S. Department of Justice |
| Office of the Chief Counsel For Trade | Civil Division |
| Enforcement and Compliance | Commercial Litigation Branch |
| 1401 Constitution Avenue, NW | P.O. Box 480, Ben Franklin Station |
| Washington, D.C. 20230 | Washington D.C. 20044 |
| (202) 909-9632 | (202) 514-4336 |
| sapna.sharma@trade.gov | catherine.m.yang@usdoj.gov |

February 20, 2026                    Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(b)(1) of the Standard Chambers Procedures of this Court, that this brief contains 8,000 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Catherine M. Yang
CATHERINE M. YANG

## CERTIFICATE OF SERVICE

I hereby certify that, on April 20, 2026, I caused a copy of the foregoing brief to be served, via CM/ECF and electronic file transfer, on all counsel of record.

/s/ Catherine M. Yang
CATHERINE M. YANG

28

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| PITTS ENTERPRISES, INC. ) | |
| DBA DORSEY INTERMODAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00030 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |

## <u>ORDER</u>

Upon consideration of the remand results filed by the United States Department of

Commerce, it is hereby ORDERED, that:

The Department of Commerce's remand results are SUSTAINED;

and judgment is ENTERED on behalf of the Defendant, the United States.


Dated: _____, 2026          _____

                                                            JUDGE