

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, NY 10278-0001

CHAMBERS OF
Claire R. Kelly
Judge

July 20, 2026

Emily Lawson, Esq.
Appleton Luff
1700 Seventh Avenue
Suite 2100
Seattle, WA 98101
Email:        lawson@appletonluff.com

Edmund Walter Sim, Esq.
Frank H. Morgan, III, Esq.
Kelly Alice Slater, Esq.
Appleton Luff Pte Ltd.
1025 Connecticut Avenue
Suite 1000
Washington, DC 20036
Email:        sim@appletonluff.com
              morgan@appletonluff.com
              slater@appletonluff.com

Sasha Wu, Esq.
Appleton Luff Pte Ltd.
99 S. Almaden Blvd.
Suite 600
San Jose, CA 95113
Email: wu@appletonluff.com

Catherine M. Yang, Esq.
Patricia M. McCarthy, Esq.
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 2004
Email:        catherine.m.yang@usdoj.gov
              patricia.mccarthy@usdoj.gov

Joseph Grossman-Trawick, Esq.
Sapna Sharma, Esq.
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20230
Email:       jgrossman-trawick@kslaw.com
             sapna.sharma@trade.gov

   Re: *Pitts Enterprises, Inc. v. United States*
     Court No. 24-00030

Dear Counsel:

   As you know, oral argument in this case will be held on Tuesday, August 18, 2026 at 11 AM in Courtroom 1 at the United States Court of International Trade. The parties should be prepared to discuss the following questions. The parties may raise additional matters if they wish.

## Third Country Processing

### For Plaintiff:

1. The scope language in the relevant orders states:

> Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope.

Certain Chassis and Subassemblies Thereof from the People's Republic of China: Countervailing Duty Order, 86 Fed. Reg. 24,844, 24,845 (Dep't of Commerce May 10, 2021) ("CVD Order"); Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order, 86 Fed. Reg. 36,093, 36,094 (Dep't of Commerce July 8, 2021) ("AD Order") (collectively, the "Orders").

You argue welding is "different in kind" from the processes named in the Orders. Pl. Cmts. on Remand Results at 25, Mar. 19, 2026, ECF No. 57 ("Pl. Cmts"). The scope language includes "assembly" and "any other processing." AD Order at 36,094; CVD Order at 24,845. What (k)(1) sources support your

view that welding is different in kind from any of the specifically listed operations, "assembly" or "any other processing?"

2.      You also state, "Commerce has ignored the realities of the marketplace" by interpreting "assembly" and "processing" to include welding.  Pl. Cmts. at 30.  You argue THACO "must weld, paint and attach the landing gear subassembly to the chassis frame," and these activities "taken as a whole" show THACO does more than "inconsequential" processing of the "parts."  Id. at 34.  If painting and assembly are already included within the scope language, why does welding make a difference and what are the marketplace realities Commerce fails to consider?  What (k)(1) sources support your interpretation?

3.      You argue Commerce's interpretation of the Orders "opens the door for offshore competitors to target U.S. producers with EAPA [the Enforce and Protect Act] allegations."  Id. at 34–35.  How would the interpretation that the Orders include welding as a form of "assembly" or "other processing" increase EAPA allegations against U.S. producers?  Are you not simply saying welding should remove a product from the scope?

**For Defendant:**

1.      Plaintiff argues the scope language intentionally omitted welding and fabrication from the ordered language.  Pl. Cmts. at 24.  The Petition explains "[t]he predominant portion of the production process is related to producing the subassemblies themselves, including fabricating and manufacturing." Petition for the Imposition of Antidumping and Countervailing Duties for Certain Chassis and Subassemblies Thereof from the People's Republic of China at 18, APPX 1117 (July 30, 2020) ("Petition").  The Petition also explains that chassis producers "weld the various steel components together."  Id. at 10, APPX 1109.  Commerce argues welding and fabrication are processes within the meaning of the scope language.  Redetermination Pursuant to Court Remand at 13–14, Feb. 10, 2026, ECF No. 52 ("Remand Results").

        a.      Doesn't the Petition suggest welding and fabrication are akin to manufacturing, not processing?

        b.       The Remand suggests that even manufacturing is a process that would not remove a product from the scope of the Orders.  Remand Results at 15. What k(1) sources support this view?

        c.      Commerce learned from the Petition that welding and fabrication are performed during production.  See, e.g., Petition at 10, 18, APPX 1109, 1117.  If Commerce considered welding and fabrication to be processes

within the meaning of the scope language, wouldn't those terms be explicitly included in the language?

2.    Commerce relies on Customs and Border Protection's ("Customs") verification report from an EAPA action to support its conclusion that welding is "processing" under the scope language of the <u>Orders</u>, and therefore, the welding of components in Vietnam does not take the merchandise outside of the <u>Orders</u>' scope. <u>Remand Results</u> at 13 (citing Customs and Border Protection On-Site Verification Report for EAPA Case, APPX 81187–81194 [Public APPX 2178–2193]). Although 19 C.F.R. § 351.225(k)(1)(ii) allows Commerce to consider Customs rulings or determinations and other secondary interpretative sources in determining whether a product is covered by the scope of the order at issue, the primary interpretive sources under k(1)(i) "will normally govern whether a product is covered by the scope of the order at issue." 19 C.F.R. § 351.225(k)(1)(ii).

   a.    Is the verification report from the EAPA action a (k)(1)(i) or (k)(1)(ii) source?

   b.    If the verification report is a (k)(1)(ii) source, is it the only interpretive source available? Can Commerce identify any other information in the investigation record to support the interpretation of the word "processing?"

   c.    The verification report language on which Commerce relies indicates Customs witnessed "(1) processing raw steel and fabrication of sections of chassis frame and workpieces; (2) welding; (3) painting; (4) assembly; and (5) packing" at the THACO facility. <u>Remand Results</u> at 13 (citing Customs and Border Protection On-Site Verification Report for EAPA Case, APPX 81187–81194 [Public APPX 2178–2193]). Assuming Commerce appropriately relied on the verification report, how does the fact that Customs reported witnessing these actions at the THACO facility aid in interpreting the word "processing" within the scope language?

3.    Commerce explains "[w]hile welding is not explicitly mentioned in the scope and Pitts argues that welding is a 'transformative' activity, the plain scope language captures all forms of processing, whether minor, major, or 'transformative,' to prevent unfinished chassis from being removed from the scope through third country activities." <u>Remand Results</u> at 27.

a.    What (k)(1) sources support the interpretation that "any other processing" includes "transformative" processing?

b.    Does Commerce's interpretation mean "fabrication" is encompassed by "any other processing?"    If so, is "fabrication"    transformative processing?  What (k)(1) sources support Commerce's interpretation?

c.    Commerce indicates welding is a "manufacturing process" of "a type of 'other processing'" within the scope of the Orders.  Remand Results at 14.   If Commerce considers "any other processing" to encompass a manufacturing process, could there be an instance where a manufacturing process would take the subject merchandise out of the scope of the Orders?

## Subassemblies

## For Plaintiff:

1.    Paragraph 1 of the Orders provides:

> The merchandise covered by this order consists of chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled . . . .

AD Order at 36,094; CVD Order at 24,845.  You argue the Orders cover only "Chinese Chassis," and they do not cover any chassis that may contain some Chinese-origin parts.  Pl. Cmts at 14–16.  It is unclear what you are arguing. The Remand Results state only the "Chinese-origin running gear and landing gear subassemblies contained within the . . . finished chassis" fall within the scope, not the entire chassis.  Remand Results at 2, 11.

Why doesn't the phrase "and subassemblies thereof," indicate that subassemblies are subject to the Orders?

Further, Paragraph 3 of the Orders provides "[i]mportation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of this order."  AD Order at 36,094; CVD Order at 24,845. Are you arguing subassemblies are not covered by the scope language?  Are you arguing a subassembly is no longer a "chassis" or covered by the scope language when attached to a chassis frame?  What (k)(1) sources support your interpretation of the language?

2.    In your comments, you argue that Paragraph 5 of the scope language says, "processing in-scope merchandise in a third country 'does not remove the

product from the scope,'" but that language does not mean "[m]erchandise falling outside the scope before third-country processing can[] become in-scope upon entry into the United States." See Pl. Cmts. at 13–14. Why would a subassembly manufactured in China fall "outside the scope," even before it enters Vietnam?

**For Defendant:**

1.   The Court remanded Commerce's determination for further explanation in part because the Orders' reference to "unassembled subassemblies" was unclear, and the Orders do not address "whether an unassembled subassembly must be imported with all of its parts together, or whether it is enough that the parts will ultimately become part of a chassis." Pitts Enterprises, Inc. v. United States, 803 F. Supp. 3d 1315, 1327–28 (Ct. Int'l Trade 2025). In the Remand Results, Commerce indicates that here, the "main components in landing gear and running gear assemblies" arrived at THACO from China "already attached or imported together." Remand Results at 23–24. Do multiple components constitute "unassembled subassemblies" when they are attached to or imported together with the main components? What (k)(1) interpretive sources support this interpretation?

2.   Commerce identifies subassemblies comprised of Chinese components that are "processed" in Vietnam; i.e., the running gear subassembly and the landing gear subassembly. Commerce also states "THACO imported from China other chassis components that were used to construct other subassemblies in its finished chassis (i.e., kingpins, electric wiring, twist locks, gladhands, air tanks, wiring harness, tire inflation system, and other minor components)." Remand Results at 12.

     a.   Are the "other" components "sold by themselves" within the meaning of the Orders? What differentiates these components from other components Commerce alleges are "subassemblies?" What are the (k)(1) sources that support the interpretation that some components are sold by themselves and others form "subassemblies?"

     b.   Does Commerce contend that only the chassis frame is excluded from the Orders? See id. at 11–12.

3.   On remand, Commerce explains the landing gear and axles imported from China were "unfinished chassis axle/running gear and landing gear subassemblies" and are therefore subject merchandise. Remand Results at 20. Is an "unassembled" subassembly equivalent to an "unfinished" subassembly? How does the term "unfinished subassembly" provide more interpretive

guidance than "unassembled subassembly?"  What (k)(1) sources support the interpretation that "unfinished subassemblies" are encompassed by the scope?

Sincerely,

/s/ Claire R. Kelly
Claire R. Kelly, Judge