Slip Op. 26-121

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Before: Claire R. Kelly, Judge**<br><br>**Court No. 24-00030** |

**OPINION AND ORDER**

[Remanding the United States Department of Commerce's Final Results of Redetermination finding that unfinished landing gear and running gear subassemblies are within the scope of the Orders covering certain chassis and subassemblies from the People's Republic of China.]

Dated: October 7, 2026

Emily Lawson, Edmund Walter Sim, Frank H. Morgan, III, Kelly Alice Slater, and Shasha Wu, Appleton Luff Pte Ltd., of Washington, Washington, D.C., and California, for Plaintiff Pitts Enterprises, Inc. dba Dorsey Intermodal.

Catherine M. Yang, Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington D.C., for Defendant United States. On the brief were Brett A. Shumate, Assistant Attorney General, and Patricia M. McCarthy, Director and Claudia Burke, Deputy Director. Of Counsel was Sapna Sharma, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge: Before the Court is the U.S. Department of Commerce's ("Commerce") remand determination pursuant to the Court's remand order, see Pitts Enterprises, Inc. v. United States, 803 F. Supp. 3d 1315 (Ct. Int'l Trade 2025) ("Pitts I"), regarding Commerce's scope ruling on the extent to which certain Chinese chassis

components are covered by the plain meaning of the language of certain antidumping and countervailing duty orders. See Final Results of Redetermination Pursuant to Court Remand, Feb. 10, 2026, ECF Nos. 51, 52 ("Remand Results"); Final Scope Ruling, (Jan. 10, 2024) ("Final Scope Ruling") APPX 2623, AD P.R. 19, CVD P.R. 13; Certain Chassis and Subassemblies Thereof from the Peoples' Republic of China: Countervailing Duty Order, 86 Fed. Reg. 24,844 (Dep't of Commerce May 10, 2021) ("CVD Order"); Certain Chassis and Subassemblies Thereof from the People's Republic of China: Antidumping Duty Order, 86 Fed. Reg. 36,093 (Dep't of Commerce July 8, 2021) ("AD Order"), (collectively, the "Orders"). On remand, Commerce determines (1) that the assembly of Chinese chassis components into finished running gear assemblies and finished landing gear assemblies does not remove the subassemblies from the scope of the Orders, and (2) that THACO imported "unfinished landing gear and running gear subassemblies" rather than individual components, which are subject to the Orders. See Remand Results at 11–12, 20. Plaintiff, Pitts Enterprises, Inc. dba Dorsey Intermodal ("Pitts" or "Plaintiff"), contends that Commerce's explanation for its remand determination is contrary to the plain language of the Orders; specifically, Commerce's interpretation of the scope of the Orders impermissibly expands the scope of the Orders to include certain non-subject components. See Plaintiff's Comments on Remand Results, Mar. 19, 2026, ECF No. 57, at 2–3 ("Pl. Cmts.").

**BACKGROUND**

The Court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Commerce, see Pitts I, 803 F. Supp. 3d 1315, and recounts only those facts relevant to the Court's review of the Remand Results. The underlying Orders, published on May 10, 2021, and July 8, 2021, cover certain chassis and subassemblies from China. See Orders. The Orders provide, in pertinent part:

> The merchandise covered by this order consists of chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled . . . .
>
> Subject merchandise includes, but is not limited to, the following subassemblies: Chassis frames, or sections of chassis frames, including kingpin assemblies, bolsters consisting of transverse beams with locking or support mechanisms, goosenecks, drop assemblies, extension mechanisms and/or rear impact guards; Running gear assemblies or axle assemblies for connection to the chassis frame, whether fixed in nature or capable of sliding fore and aft or lifting up and lowering down, which may or may not include suspension(s) (mechanical or pneumatic), wheel end components, slack adjusters, axles, brake chambers, locking pins, and tires and wheels; Landing gear assemblies, for connection to the chassis frame, capable of supporting the chassis when it is not engaged to a tractor; Assemblies that connect to the chassis frame or a section of the chassis frame, such as, but not limited to, pintle hooks or B-trains (which include a fifth wheel), which are capable of connecting a chassis to a converter dolly or another chassis.
>
> Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of this order.
>
> Subject merchandise also includes chassis, whether finished or unfinished, entered with or for further assembly with components such as, but not limited to: Hub and drum assemblies, brake assemblies (either drum or disc), axles, brake chambers, suspensions and

> suspension components, wheel end components, landing gear legs, spoke or disc wheels, tires, brake control systems, electrical harnesses and lighting systems.
>
> Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting, coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.
>
> Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of several different types of subassemblies. Within each subassembly there are numerous components that comprise a given subassembly.

Orders, Appendix ¶¶ 1–6.

Commerce selected Qingdao Special Vehicles CO., Ltd. (QCVC) and Dongguan CIMC Vehicle Co., Ltd. (DCVC), ("CIMC") as mandatory respondents. See Certain Chassis and Subassemblies Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination, 86 Fed. Reg. 15,186 (Dep't of Commerce Mar. 22, 2021); Certain Chassis and Subassemblies Thereof from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 26,694 (Dep't of Commerce May 17, 2021). Pitts sought a scope ruling from Commerce to clarify whether chassis imported from Vietnam containing Chinese-origin axle components and landing gear leg components fall outside the scope of the Orders. See Pitts Scope Application (Feb. 13, 2023) at 1, APPX 80040, P.R. 13, C.R. 3. In its Final Scope Ruling, Commerce determined the

subject imported chassis from Vietnam containing Chinese-origin axle and landing gear components are included in the scope of the Orders.[1] See Final Scope Ruling at 1, APPX 2623. In Pitts I, Pitts argued Commerce unlawfully expanded the scope of the Orders by (1) ignoring the plain scope language; (2) conducting an unlawful (k)(1) analysis; and (3) failing to provide a circumvention or substantial transformation analysis. See Pitts I, 803 F. Supp. 3d at 1320. Pitts also argued that Commerce "made its scope determination retroactively" and "imposed duties on the entire value of the finished merchandise," in effect, imposing AD and CVD orders "on merchandise from a non-subject country." Id.

In Pitts I, the Court remanded Commerce's determination, directing Commerce to adopt the plain meaning of the word "entered" in the Orders to mean "entered into the United States." Id. at 1330. Further, Pitts I held that the Orders were "ambiguous as to when components are included within the scope because the phrase 'sold by themselves,' is ambiguous." Id. at 1325 (citing Orders ¶ 6). The Orders make clear that components are subject merchandise where they are "entered with or for further assembly with a finished or unfinished chassis," but not subject merchandise when they are "sold by themselves." Id. at 1326 (citing the Orders ¶ 6). The Court also held that the meaning of "subassemblies" was ambiguous because the language of the Orders explains that subassemblies are comprised of components, but

---

[1] THACO produces the chassis frame from raw steel in Vietnam. See Remand Results at 12.

"make no mention of when a component or group of components is more than just a component, but rather an unassembled subassembly." Id. at 1327 (citing Orders ¶¶ 2, 6).

Commerce filed its Remand Results on February 10, 2026. See Remand Results. On remand, Commerce reconsiders its conclusion in accordance with the Court's order that the plain scope language "entered" means "entered into the United States," and as a result, determines that upon importation into Vietnam, "Chinese chassis components do not constitute subject merchandise because they have not 'entered' into the United States." Id. at 11. Additionally, consistent with the Court's decision in Pitts I, Commerce concedes the "imports of Chinese chassis components from China to Vietnam do not constitute subject merchandise." Id.

Nonetheless, on remand, Commerce finds the Chinese-origin landing gear legs and running gear axles are not individual components but "unfinished …subassemblies" that fall within the scope of the Order. Id. at 20–24. Commerce also re-evaluates third-country processing of Chinese chassis in Vietnam, and finds that "welding" is a type of "processing" encompassed by the scope language, and therefore, "welding and assembly of running gear and axle subassembly components and landing gear subassembly components does not remove these finished subassemblies from the scope of the Orders." Id. at 13–14. Finally, Commerce on remand determines that only the landing gear and running gear subassemblies will be subject to duties under the Orders, rather than the entire finished chassis. See id.

at 16. On March 19, 2026, Plaintiff filed its Comments on the Remand Results. See Pl. Cmts. On April 20, 2026, Defendant filed its reply to Plaintiff's Comments on the Remand Results. See Defendant's Response to Plaintiff's Comments on Remand Results, Apr. 20, 2026, ECF Nos. 58, 59 ("Def. Resp."). On August 18, 2026, the Court heard oral arguments. ECF No. 69, Aug. 18, 2026.

**JURISDICTION AND STANDARD OF REVIEW**

This Court exercises jurisdiction pursuant to Section 516A of the Tariff Act of 1930,[2] as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2018) and 28 U.S.C. § 1581(c) (2018), which grant the Court authority to review actions contesting determinations by the administrating authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an AD or CVD order. See 19 U.S.C. § 1516a(a)(2)(B)(vi); 28 U.S.C. § 1581(c) (2018). The Court "will uphold Commerce's scope determinations unless they are unsupported by substantial evidence or otherwise not in accordance with law." Magnum Magnetics Corp. v. United States, 167 F.4th 1187, 1192 (Fed. Cir. 2026) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 1192 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 217 (1938)). Commerce's redetermination following a court remand is "reviewed for compliance with the court's

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

remand order." Xinjiamei Furniture (Zhangzhou) Co., Ltd., v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (internal quotations omitted).

**DISCUSSION**

On remand, Commerce concludes that "THACO's finished chassis containing Chinese-origin components fall within the description of in-scope merchandise, in part, as THACO's finished chassis contains Chinese running gear subassemblies and landing gear subassemblies that fall within the scope of the Orders."[3] Remand Results at 8. Commerce reasons that the Chinese components shipped to Vietnam are "unfinished…subassemblies" and thus are in-scope merchandise when sent to Vietnam. See id. at 20, 24. Further, Commerce concludes that the welding and fabrication operations performed in Vietnam are mere processing that does not remove these "unfinished subassemblies" from the scope when they enter the United States. See id. at 13–14. Pitts argues the merchandise entered into the United States is a finished Vietnamese chassis and therefore Commerce's determination that the Orders cover "unfinished subassemblies"[4] sent from China to Vietnam and attached

---

[3] In its remand, the Court instructed Commerce to adopt the meaning of the word "entered" to mean "entered into the United States." See Pitts I, 803 F. Supp. 3d at 1322–1323, 1330.

[4] Both in its Draft Redetermination and its Final Redetermination, Commerce refers to the Chinese merchandise sent to Vietnam as "Chinese components." See Draft Results of Redetermination Pursuant to Court Remand, (Dec. 30, 2025) ("Draft Redetermination") at 17, APPX 2637–2653; Remand Results at 17 ("While THACO imported chassis components from China separately and did not import any fully

(footnote continued)

to a Vietnamese chassis is unsupported by substantial evidence and contrary to the language in the Orders. See Pl. Cmts. at 2, 6–12. Moreover, according to Pitts, the term "processing" in the scope language excludes welding and fabrication and, even if the scope language included "unfinished subassemblies," Commerce's conclusion that the "unfinished subassemblies" sent to Vietnam are subject merchandise is unsupported by this record. See id. at 12–14.

Where Commerce issues an order to remedy dumping or subsidization by imposing an antidumping or a countervailing duty, the order must "include[ ] a description of the subject merchandise, in such detail as the administrating authority deems necessary." 19 U.S.C. §§ 1673e(a)(2), 1671e(a)(2); see also 19 C.F.R. § 351.202(b)(6).[5] That description is written in general terms and applies to goods that enter the United States because orders "are written for the purpose of imposing trade remedies on merchandise entered into the United States." Pitts I, 803 F. Supp.

---

assembled subassemblies or chassis from China, THACO's third country processing of Chinese chassis components into chassis subassemblies constitutes third country processing, which does not exclude the subassemblies from the scope of the Orders."). In its response to Plaintiff's comments, however, Commerce clarifies its Draft Redetermination to find that THACO does not import components but "unfinished chassis axle/running gear and landing gear subassemblies." See Remand Results at 20, 24.

[5] Commerce issues scope determinations as part of its administration of antidumping and countervailing duty laws under Title VII of the Tariff Act of 1930. 19 U.S.C. § 1671 et. seq. If Commerce finds that merchandise is being sold in the United States at less than fair value, or the foreign manufacturer of the merchandise benefitted from specific subsidies, and the International Trade Commission determines that there is an injury to domestic industry because of such practices, Commerce will issue an order imposing a duty to remedy the dumping or subsidization. 19 U.S.C. §§ 1671, 1673.

3d at 1321, 1322–23 (citing 19 U.S.C. § 1671(e)); see also Bell Supply Co., LLC v. United States, 888 F.3d 1222, 1228 (Fed. Cir. 2018).

Where there is a question as to whether a certain product is covered by the scope of an AD or CVD order, an interested party may request a scope ruling from Commerce to clarify whether certain merchandise is subject to the order. See 19 C.F.R. § 351.225(a). In conducting a scope inquiry, Commerce considers the plain language of the order and may make its determination on the basis of the language alone if "the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k)(1).

In determining whether the language of the scope is dispositive, Commerce may rely on Section 351.225(k)(1)'s enumerated interpretive sources: (1) descriptions of merchandise contained in the petition; (2) descriptions of merchandise contained in the initial investigation; or (3) previous or concurrent determinations by Commerce, including prior scope rulings or other orders with the same language. See 19 C.F.R. § 351.225(k)(1)(i); see also Magnum Magnetics, 167 F.4th at 1193 (explaining that Commerce has discretion to use the (k)(1) sources in its scope analysis). Commerce may also consult "secondary interpretive sources" which contain descriptions of the merchandise, such as "Customs rulings or determinations, industry usage, dictionaries, and any other relevant record evidence." 19 C.F.R. § 351.225(k)(1)(ii). If the (k)(1) factors are not dispositive, Commerce will turn to the (k)(2) factors. See 19 C.F.R. § 351.225(k)(2)(i)(A)–(E).

Where merchandise entering into the United States is potentially included in the scope of an order because it originated in the subject country but has been assembled or completed in a third country, Commerce, and the court, must assess whether the merchandise "entered into the United States" is subject to the order. Pitts I, 803 F. Supp. 3d at 1322–23; see also Bell Supply Co., 888 F.3d at 1228. Even where orders anticipate processing in a third country, the presence of a provision for third country operations cannot expand the scope of the orders. See Bell Supply Co., 888 F.3d at 1228 (explaining that the absence of language mandating direct importation cannot expand the scope of the orders). Nonetheless, merchandise undergoing third country operations may still be considered subject merchandise either by means of a substantial transformation analysis or a circumvention inquiry.[6] See id. at 1228–31.

[6] Commerce uses a substantial transformation analysis to determine the country of origin of imported merchandise. See Bell Supply Co., 888 F.3d at 1228. Substantial transformation occurs where manufacturing or processing transforms the merchandise into a new product thereby losing its original identity. See id. at 1228 (quoting Bestfoods v. United States, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). In determining whether there has been a substantial transformation, Commerce considers factors such as "(1) the class or kind of merchandise; (2) the nature and sophistication of processing in the country of exportation; (3) the product properties, essential component of the merchandise, and intended end-use; (4) the cost of production/value added; and (5) level of investment." Id. at 1228–29. Alternatively, Commerce conducts a circumvention inquiry to determine whether merchandise produced in a foreign country subject to an antidumping or countervailing duty order is "assembled or completed in a third country not subject to the order." Id. at 1229. Commerce includes such merchandise within the scope of the original order if: "(1)

(footnote continued)

Here, Commerce's remand determination fails for two reasons. First, Commerce's position that the Orders can be interpreted to reach "unfinished…subassemblies" runs counter to the plain language of the Orders. See Remand Results at 20, 24. There are eight instances in the scope language where the word "unfinished" is used, and each individually, and read together, make clear that the adjective "unfinished" modifies chassis, not subassembly:

1. The merchandise covered by this order is chassis and subassemblies thereof, whether finished or unfinished, whether assembled or unassembled, . . . (Orders, Appendix ¶ 1)
2. Importation of any of these subassemblies, whether assembled or unassembled, constitutes an unfinished chassis for purposes of this order. (Orders, Appendix ¶ 3)
3. Subject merchandise also includes chassis, whether finished or unfinished,. . . (Orders, Appendix ¶ 4)
4. Processing of finished and unfinished chassis and components such as . . . (Orders, Appendix ¶ 5)
5. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope. (Orders, Appendix ¶ 5)
6. A finished chassis is ultimately comprised of several different types of subassemblies. (Orders, Appendix ¶ 6)
7. The finished and unfinished chassis subject to this order are typically classified in the Harmonized Tariff Schedule of the United States (HTSUS) at subheadings: 8716.39.0090 and 8716.90.5060. (Orders, Appendix ¶ 8)
8. Imports of finished and unfinished chassis may also enter under HTSUS subheading 8716.90.5010. (Orders, Appendix ¶ 8)

---

'the process of assembly or completion in the foreign country … is minor or insignificant,' (2) the value added in the country subject to the AD and CVD order is a significant portion of the total value of the merchandise, and (3) 'action is appropriate under [Section 1677j(b)(1)] to prevent evasion of such finding.'" See id. at 1229 (citing 19 U.S.C. § 1677j(b)(1)(C)–(E)).

Orders, Appendix ¶¶ 1, 3–6, 8. In only three of the instances above is the word "subassemblies" even mentioned. The first instance is in the introductory paragraph of the Orders discussing "chassis, and subassemblies thereof." See id. Appendix ¶ 1. The second instance is to make clear that a subassembly is an unfinished chassis. See id. Appendix ¶ 3. The final instance notes a finished chassis is comprised of many different types of subassemblies. See id. Appendix ¶ 6. There can be no question there are numerous ways a chassis may be unfinished, and indeed, an unassembled subassembly is an unfinished chassis, see id. Appendix ¶ 3, but the Orders do not provide for "unfinished subassemblies." [7]

Second, even if the scope language provided for unfinished subassemblies, and Commerce could consider the "finished subassembly" attached to a finished chassis as distinct from the finished chassis, the welding and fabrication performed in Vietnam would remove those subassemblies from the scope of the Orders. The Orders provide:

> Processing of finished and unfinished chassis and components such as trimming, cutting, grinding, notching, punching, drilling, painting,

[7] Pitts argues Commerce incorrectly equates "unfinished" with "partial" when determining "unfinished subassemblies" are subject to the Orders. See Pl. Cmts. at 11–12. Pitts notes that the Court held "'the plain meaning of the language of the Orders does not clearly provide that an instance of fewer than all the necessary components for a subassembly constitutes an unassembled subassembly.'" Id. at 11 (citing Pitts I, 803 F. Supp. 3d at 1327-28). Pitts asserts the Orders cannot be interpreted to cover "unfinished subassemblies" and even if they could, an "unfinished subassembly" is distinct from a partial subassembly. See id. at 11–12. Pitts argues shipments of components with less than all necessary components could not be an unfinished subassembly. See id. at 11. Because the Orders do not provide for unfinished subassemblies the Court does not need to reach this argument.

> coating, staining, finishing, assembly, or any other processing either in the country of manufacture of the in-scope product or in a third country does not remove the product from the scope. Inclusion of other components not identified as comprising the finished or unfinished chassis does not remove the product from the scope.

Orders, Appendix ¶ 5. Thus, the operations specifically listed, along with "any other processing," will not remove subject merchandise from scope. Logically, operations that go beyond processing will remove otherwise subject merchandise from the scope of the Orders. Cf. id. Running gear and landing gear subassemblies undergo welding and fabrication in Vietnam. See Pl. Cmts. at 30–35 (detailing THACO's manufacturing process, as including laser cutting, welding and fabrication of components into a finished Vietnamese chassis); see also Remand Results at 27 (acknowledging THACO's practice of importing unfinished landing gear and running gear assemblies from China and welding them to additional components); Def. Resp. at 26–27 (conceding that Commerce identified THACO fabricating chassis in Vietnam).

Neither welding nor fabrication[8] is a listed processing operation in the scope language, and neither could be considered "any other processing" as that phrase is

---

[8] Defendant argues that Pitts failed to raise an argument in its Comments on Commerce's draft remand that the "results were deficient as they pertained to fabrication." See Def. Resp. at 25. However, the Comments contain numerous references to fabrication in conjunction with welding as a reason why the merchandise should not be considered as any other processing. See Pitts Comments on Draft Results of Redetermination (January 6, 2026) ("Pl. Draft Cmts.") at 24,

(footnote continued)

used in the scope language. The plain language of the Orders reveals that the exemplars listed are all non-transformative operations, e.g., painting, staining, trimming, associated with assembly operations. The Petition makes clear the petitioners' concern was that Chinese producers were performing minor operations on manufactured chassis and subassemblies. See Petition for the Imposition of ADD and CVD Duties (Feb. 18, 2025) ("Petition") at 18, APPX 80129 (noting Chinese chassis producers "merely import the subassemblies as a unit and merely bolts them together upon arrival in the [US]."). The Petitioner's Response to the Supplemental Questionnaire indicates that the Chinese target company of the investigation only assembled subassemblies by bolting them together. See Petitioner's Response to the Supplemental Questions on General Issues Volume I of the Petition (August 7, 2020) ("Pet. Resp. to Supp. Quest.") Ex. I-Supp-3, APPX 2958–2959; see also Revised and Corrected Commission Hearing Transcript (August 20, 2020) ("ITC Transcript") at 16, APPX 2971 (testimony explaining that assembly only companies should not be included in the domestic industry).[9]

---

APPX 2677 (noting "production process in Vietnam, including welding components and parts to fabricate the subassemblies"); Pl. Draft Cmts. at 24–25, APPX 2677–78 ("The [P]etition itself emphasized that: 'The predominant portion of the production process is related to producing the subassemblies themselves, including fabricating and manufacturing.'"); Pl. Draft Cmts. at 30, APPX 2683 (noting the presence of non-Chinese components including brackets fabricated in Vietnam). Thus, Defendant's argument fails.

[9] The Petition alleges the named companies account for "the vast majority of subject

(footnote continued)

The (k)(1) sources reveal that processing does not include "welding" and "fabrication." For example, the Petition explains that "U.S. producers fabricate the steel and other components necessary to create the finished chassis." See Petition at 18, APPX 80129. Likewise, testimony from the ITC Hearing describes the "real element of transformation" as welding. See ITC Transcript at 141, APPX 2972.[10] In its Final Determination, the ITC found "the process to transform components into subassemblies" to be "more significant than the process to assemble subassemblies. . . into full chassis." Chassis and Subassemblies from China, Investigation No. 701-TA-657 (Final) (May 2021) ("ITC Final Determination") at 18, APPX 80178. U.S.

imports," and in particular that CIMC accounts for the "vast majority of U.S. imports of chassis from China." Petition at 12, APPX 80123. Further, the Petition alleges that CIMC "completes minor assembly activities at its U.S. affiliate locations to assemble Chinese imports into finished chassis." Id.

[10] Commerce's determination asserts without support that "the plain scope language captures all forms of processing, whether minor, major, or 'transformative,' to prevent unfinished chassis from being removed from the scope through third country activities." Remand Results at 27. The (k)(1) sources, however, do not support Commerce's interpretation and indeed support the view that any other processing refers to relatively minor operations. See Orders, Appendix ¶ 5 (indicating that welding and fabrication go beyond the scope of the Order's determination of "processing"). Likewise at oral argument, Defendant argues that Pitts, throughout the Petition and subsequent record documents, uses terms like 'processing,' 'welding,' 'fabrication,' and 'assembly' interchangeably. Oral Argument Transcript ("OA Transcript") at [38:50-40:00]. The record belies this claim as the (k)(1) sources repeatedly speak of processing and welding or fabrication distinctly. See e.g., Pitts Cmts in Resp. to CIMC's Comments on Pitts Supplemental Questionnaire Resp., April 24, 2023, Ex. 1, CBP On-Site Verification Report – EAPA Case No. 7711 (March 11, 2021) released April 5, 2023, APPX 81191 (describing the chassis production process as having 5 main activities; (1) processing, (2) welding, (3) painting, (4) assembly, and (5) packing, clearly indicating that welding and processing are distinct).

chassis producers weld and fabricate to manufacture chassis in the United States. See Pet. Resp. to Supp. Quest., APPX 2958–2959; see also ITC Transcript at 141, APPX 2972; ITC Transcript at 279, APPX 2977 (noting the key technical expertise is "where the welding takes place"); Petitioner's Comments on Model Match and Physical Characteristics (September 18, 2020) APPX 2965–2966 (distinguishing welding and bolting). The Petition specifically identifies fabrication as an operation involved in the production of chassis and subassemblies. See Petition at 18, APPX 80129 ("The predominant portion of the production process is related to producing the subassemblies themselves, including fabricating and manufacturing.").

Thus, the language of the Orders cannot be interpreted to mean that welding and fabrication are "any other processing" that would not remove the merchandise from scope. Because Commerce's redetermination depends on its interpretation that welding and fabrication are "any other processing," its redetermination cannot be sustained.[11]

---

[11] Pitts also argues that Commerce's remand determination cannot stand because the scope language must cover subassemblies only if they are attached to a Chinese chassis. See Pl. Cmts. at 14–16. Commerce explains, because "the product entering the United States is finished chassis from Vietnam containing Chinese-origin running gear and landing gear subassemblies, we find that the Chinese-origin subassemblies are within the scope of the Orders, pursuant to 19 CFR 351.225(k)(1)." Remand Results at 17. In particular, Commerce relies upon the scope language stating, "[t]he merchandise covered by this order consists of chassis and subassemblies thereof," to conclude that subassemblies attached to non-Chinese chassis are covered by the scope. See CVD Order, 86 FR 24844-01; AD Order, 86 FR

(footnote continued)

## CONCLUSION

Commerce's redetermination is remanded for reconsideration. Commerce's interpretation of the scope language to include "unfinished subassemblies" is contrary to the plain meaning of the Orders. Further, the phrase "any other processing" in the Orders does not include welding or fabrication.

For the foregoing reasons, it is

**ORDERED** that Commerce's final determination is remanded for further explanation or reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its remand redetermination with the Court within 90 days of this date; and it is further

**ORDERED** that the parties shall have 30 days to file comments on the remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix, including the entire confidential record, within 14 days after the filing of replies to the comments on the remand redetermination; and it is further

---

36,093-01. Because the Court concludes that the language of the Orders cannot support Commerce's interpretation that the Orders extend to "unfinished subassemblies," or that welding and fabrication are "any other processing," the Court need not reach this argument.

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing its remand redetermination.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated: October 7, 2026
New York, New York